UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOPDEVZ, LLC, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>    Defendant. | Case No. 20-cv-08324-SVK<br><br>**ORDER ON (1) MOTION TO DISMISS CONSOLIDATED COMPLAINT AND (2) MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**<br><br>Re: Dkt. Nos. 65, 66 |

Plaintiffs, on behalf of a putative class of advertisers, allege that Defendant LinkedIn Corporation overstates the level of actual user engagement with ads placed on the LinkedIn platform in order to charge premium rates to advertisers. *See* Dkt. 55. All Parties have consented to the jurisdiction of a magistrate judge. Dkt. 10, 13; *see also* Dkt. 52.

Now before the Court are LinkedIn's motion to dismiss the Consolidated Complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and LinkedIn's motion to strike the class allegations pursuant to Federal Rules of Civil Procedure 12(b)(1) and 23(d). Dkt. 65, 66. The Court deems these motions suitable for determination without oral argument. Civ. L.R. 7-1(b). For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** LinkedIn's motion to dismiss and **DENIES** LinkedIn's motion to strike.

## I.   BACKGROUND

This discussion of the factual background is based primarily on the allegations of the Consolidated Complaint. Dkt. 55 ("Consolidated Complaint" or "Cons. Comp."). LinkedIn operates on an online platform where users can post resumes, engage in career networking, and find job listings. *Id.* ¶¶ 1, 14. LinkedIn charges advertisers for the opportunity to display advertisements to users on its platform. *Id.* ¶ 1. Types of ads include "Sponsored Content"

(which delivers ads on LinkedIn members' feeds), "Text Ads" (which appear in a sidebar or at the top of the LinkedIn user interface), "Sponsored Messages" (which deliver direct messages to specific contacts), and "Dynamic Ads" (which target specific audiences with personalized content). *Id.* ¶¶ 30, 32.

Digital advertisements on LinkedIn are sold through online auctions, and advertisers use metrics provided by LinkedIn to determine how much to bid for advertisements on the platform and to track the performance of their advertisements. *Id.* ¶¶ 2, 35-37. LinkedIn includes a link to the LinkedIn Ads Agreement at the point of purchase for every ad campaign. *Id.* ¶ 48. Under the Ads Agreement, every advertiser "agree[s] to pay on the basis and at the rate shown when a campaign, order or other purchase was submitted … e.g., price per impression, click" or other pricing options. *Id.* ¶ 50 and Ex. C § 3. LinkedIn does not provide advertisers with access to raw data regarding which users viewed their ads, their level of engagement, or whether the users are real humans or automated bots. *Id.* ¶ 3. Instead, LinkedIn provides various metrics, such as "reach metrics," which purport to measure the number of impressions, views, and clicks. *Id.* ¶ 33. LinkedIn uses its ad metrics to calculate the rate paid by advertisers, depending on what pricing rate selected when they purchased the ad campaign. *Id.* ¶ 52.

In August 2020, LinkedIn discovered that its video ad metrics for Sponsored Content ads may have been inflated because the company counted video views from a user's LinkedIn app even when the user merely scrolled past the video and the video was only playing offscreen. *Id.* ¶ 70; Dkt. 65 ("Motion") at 4. In November 2020, LinkedIn notified the affected advertisers and provided them with makegoods. Cons. Comp. ¶ 70 n.15, 71 n.16; Motion at 4.

On November 25, 2020, Plaintiffs TopDevz, LLC and Noirefy, Inc. filed a class action complaint against LinkedIn in Case No. 5:20-cv-08324. Dkt. 1. On January 21, 2021, Synergy, Inc. filed a class action complaint against LinkedIn in Case No. 5:21-cv-00513.[1] On February 24, 2021, upon stipulation of the Parties, the Court consolidated the two cases and ordered the filing

---

[1] On July 4, 2021, Synergy filed a notice stating that it voluntarily dismisses its claims without prejudice but will remain in the action as an unnamed putative class member "to the extent it falls within the class definition." Dkt. 84.

1  of a Consolidated Complaint. Dkt. 52.

2  The Consolidated Complaint contains causes of action for: (1) violation of the California Unfair Competition Law, Cal. Bus. & Prof. C. § 17200, *et seq.* ("UCL"); (2) fraudulent misrepresentation; (3) fraudulent concealment; (4) negligent misrepresentation; (5) breach of implied duty to perform with reasonable care; (6) breach of implied covenant of good faith and fair dealing; and (7) accounting. Dkt. 55. The Consolidated Complaint defines the class as "[a]ll persons or entities who paid for the placement of advertisements on LinkedIn's platform up to the date of the filing of this action." *Id.* ¶ 132.

## II. MOTION TO DISMISS

### A. LEGAL STANDARD

#### 1. Rule 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001). A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy this heightened pleading standard, the allegations must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotations marks omitted). In other words, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citation omitted).

### 2. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that the complaint's deficiencies cannot be cured by amendment. *Lucas v. Dep't. of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### B. REQUEST FOR JUDICIAL NOTICE

Together with its Motion to Dismiss, LinkedIn filed a Request for Judicial Notice ("RJN") asking the Court to take judicial notice of two documents: (1) a LinkedIn Marketing Solutions post entitled "Forecasted Results in Campaign Manager" (the "Forecasted Results Page"), which is referenced and quoted in the Consolidated Complaint; and (2) LinkedIn Contracting Entity Terms, which are incorporated by reference into the LinkedIn Ads Agreement referenced in, quoted in, and attached to the Consolidated Complaint. Dkt. 67. Plaintiffs do not oppose the RJN.

The Court may judicially notice a fact that "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid.

4

201(b); *United States v. Bernal–Obeso*, 989 F.2d 331, 333 (9th Cir. 1993).

The Consolidated Complaint alleges the contents of the Forecasted Results Page. Cons. Comp. ¶ 45. In addition, the relevance and authenticity of the document is not disputed. Accordingly, the Forecasted Results Page is properly the subject of judicial notice. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). The Court therefore **GRANTS** LinkedIn's request for judicial notice of the Forecasted Results Page.

The Contracting Entity Terms are not cited in the Consolidated Complaint, although they are referenced in the Ads Agreement that is attached to and referred to in the complaint. *See* Cons. Comp. ¶¶ 22, 38, 48, 50, and Ex. 3. LinkedIn refers to the Contracting Entity Terms only in its motion to strike the class allegations. *See* Dkt. 66-1 at 3, 5. As discussed below, the Court declines to strike the class allegations at this pleadings stage of this case, and thus the Court does not consider the contents of the Contracting Entity Terms. The Court therefore **DENIES** LinkedIn's request for judicial notice of that document at this stage of the litigation.

### C. ANALYSIS

LinkedIn's motion to dismiss challenges the following causes of action in the Consolidated Complaint: (1) the UCL claim; (2) the claims for fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation; (3) the claim for breach of the implied covenant of good faith and fair dealing; and (4) the claim for accounting. Dkt. 65-1 ("Motion"). The Court now addresses each argument.

#### 1. UCL

##### a. Standing

LinkedIn argues that Plaintiffs cannot invoke the protections of the UCL because they are companies litigating commercial disputes, not consumers or members of the public that the UCL is meant to protect. Motion at 8-10. Plaintiffs argue they have standing to bring UCL claims because as small businesses, they are not required to allege harm to the public or consumers. Dkt. 75 ("Opp.") at 5-6.

Some courts have held that "where a UCL action is based on contracts not involving either the public in general or individual consumers who are parties to the contract, a corporate plaintiff

5

may not rely on the UCL for the relief it seeks." *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (Cal. Ct. App. 2007); *see also Rosenbluth Internat., Inc. v. Sup. Ct.*, 101 Cal. App. 4th 1073, 1077 (Cal. Ct. App. 2002) ("a UCL action based on a contract is not appropriate where the public in general is not harmed by the defendant's unlawful practices). However, courts have also held that "*Linear Tech.* does not prevent *all* corporate plaintiffs from proceeding under the UCL where the contract-at-issue does not involve either the public or individual consumers, but rather *Linear Tech.* only precludes sophisticated corporations or large corporations from seeking such relief." *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2019 WL 1767206, at *10 (N.D. Cal. Apr. 22, 2019) (internal quotation marks and citations omitted).

The LinkedIn Ads Agreement at issue here does not involve either the general public or individual consumers. Accordingly, whether Plaintiffs may bring a UCL claim depends on whether they are sophisticated or large corporations or are instead small and unsophisticated entities. The Consolidated Complaint states that "[m]ost LinkedIn advertisers are small businesses." Cons. Comp. ¶ 28. It describes each named Plaintiff as a corporation or limited liability company. Cons. Comp. ¶¶ 16-18. Although the Consolidated Complaint contains a conclusory and somewhat ambiguous allegation that one of the named Plaintiffs, TopDevz, is "a small-business team" (*id.* ¶ 102), Plaintiffs do not plead any facts (such as their employee headcounts or other attributes) establishing that they are small and/or unsophisticated entities. *See AdTrader*, 2019 WL 1767206, at *10. The Court also notes that the putative class includes *all* persons or entities who paid for the placement of advertisements on LinkedIn's platform, without limitation as to the size or sophistication of such persons or entities. Cons. Comp. ¶ 132.

Plaintiffs alternatively argue that they have pleaded a connection to public protection. Opp. at 6-7. Some courts have held that "[t]he relative size of the plaintiff companies … is secondary to the analysis of whether, as a result of the alleged unfair or fraudulent business practice, consumers are adversely affected." *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 998-99 (N.D. Cal. 2010). However, Plaintiffs' allegations of harm to the public are vague and conclusory. *See* Cons. Comp. ¶ 11 ("Given LinkedIn's conceded position as the leading online

network for business professionals, LinkedIn's systemically inflated ad metrics and inflated advertising costs have broad impact on the public"); *id.* ("Paying inflated advertising costs on LinkedIn also leaves advertisers with less money to spend on other aspects of their businesses, including the content and quality of their ads (which diminishes LinkedIn users' experience on the platform), and their product and service offerings, which diminishes overall consumer welfare"); ¶ 82 ("LinkedIn's misconduct harmed and continue [sic] to harm advertisers and the public in violation of state policies prohibiting such dishonest conduct"); ¶ 163 ("LinkedIn's unlawful, fraudulent, and unfair business acts harm the public and the economy") ¶ 164 (similar to ¶ 11, discussed above). These allegations lack the necessary factual support. Moreover, because of the vagueness of these allegations, the Court cannot conclude that Plaintiffs have made actionable UCL allegations that extend "beyond the scope of the parties' contractual relationship," as Plaintiffs contend. Opp. at 7.

Accordingly, the UCL claim is **DISMISSED WITH LEAVE TO AMEND** on the ground that Plaintiffs have not pleaded facts showing either that they are small and unsophisticated entities or that LinkedIn's alleged conduct affected the public at large or consumers generally.

### b. Restitution

LinkedIn argues that Plaintiffs' claim for restitution under the UCL is barred because they cannot show that they lack an adequate remedy at law. Motion at 10-11. LinkedIn relies on the recent decision in *Sonner v. Premier Nutrition Corp.*, in which the Ninth Circuit held that "a federal court must apply traditional legal principles before awarding restitution under the UCL and CLRA" and "state law cannot expand or limit a federal court's equitable authority." 971 F.3d 834, 841 (9th Cir. 2020). The Ninth Circuit thus held that "traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and [Consumers Legal Remedies Act] in a diversity action." *Id.* at 844. Accordingly, a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA." *Id.*

Plaintiffs argue that this case is distinguishable from *Sonner* because they seek legal restitution, not equitable restitution. Opp. at 7-9. They argue that because they seek to recover

from LinkedIn's general assets, their restitution claim is legal, whereas an equitable restitution claim would be directed at particular funds. *Id.* Plaintiffs' argument ignores that the challenged claim for restitution is made in in connection with their UCL claim. Cons. Comp. ¶ 166 ("Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs seek injunctive relief to prevent the continued use of LinkedIn's unfair and fraudulent practices and restitution to restore to the class all money LinkedIn acquired by means of its fraudulent and unfair business practices"). "As the California Supreme Court recently confirmed, 'civil causes of action authorized by the UCL and FAL must properly be considered equitable, rather than legal, in nature.'" *Williams v. Apple, Inc.*, No. 19-CV-04700-LHK, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) (citing *Nationwide Biweekly Admin., Inc. v. Sup. Ct.*, 462 P.3d 461, 488 (Cal. 2020)). Thus, Plaintiffs cannot sidestep *Sonner* by characterizing their UCL claim for restitution as legal rather than equitable.

Plaintiffs seek damages under various causes of action. Cons. Comp. ¶¶ 181, 194, 222, 232. "The dispositive issue in *Sonner* was the plaintiff's failure to plead inadequate remedies at law or explain why the remedies she requested in the complaint would be inadequate." *In re California Gasoline Spot Market Antitrust Litig.*, No. 20-cv-03131-JSC, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021). The Consolidated Complaint suffers from the same defect because nowhere in the complaint do Plaintiffs allege that the damages they seek are inadequate or otherwise distinguish their request for restitution from their request for damages. Plaintiffs request an opportunity to amend their pleading to attempt to distinguish *Sonner* on the grounds that their UCL claims seek unique relief beyond their other claims. Opp. at 9-10 (arguing that the UCL claim seeks "*all money* LinkedIn acquired by means of its fraudulent and unfair business practices" whereas the damages claims allege only that "Plaintiffs and Class members paid more for advertising on LinkedIn than they otherwise would have paid" (emphasis in original)). If the Plaintiffs elect to amend their UCL claim in this manner, they should be prepared to address the principle that "nonrestitutionary disgorgement is not available under the UCL." *In re California Gasoline Spot Market Antitrust Litig.*, 2021 WL 1176645, at 8. For the reasons stated, Plaintiffs'

claim for restitution under the UCL is **DISMISSED WITH LEAVE TO AMEND**.[2]

                **c.**      **"Unlawful" prong**

The UCL permits prohibits unlawful, unfair, or fraudulent business acts or practices, and each of the three prongs provides "a separate and distinct theory of liability." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007). Plaintiff's UCL claim alleges that LinkedIn engaged in unlawful, unfair, and fraudulent business acts and practices. Cons. Comp. ¶ 143. LinkedIn argues that Plaintiffs' claim under the "unlawful" prong of the UCL fails because such a claim cannot be premised on a breach of contract. Motion at 12.

The "unlawful" prong of the UCL prohibits "anything that can properly be called a business practice and that at the same time is forbidden by law." *Cel–Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal.4th 163, 180 (1999) (internal quotation marks and citation omitted). By proscribing "any unlawful" business practice, the UCL permits injured consumers to "borrow" violations of other laws and treat them as unlawful competition that is independently actionable. *Id.*

The Consolidated Complaint contains passing references to LinkedIn's alleged "unlawful" conduct but those references are conclusory and do not specifically identify the laws LinkedIn is alleged to have violated. *See, e.g.,* Cons. Comp. at ¶¶ 9, 12, 143, 157, and 163. Plaintiff's UCL claim under the "unlawful" prong is premised at least in part on LinkedIn's violation of its contractual duties toward Plaintiffs. *See id.* ¶ 157 ("LinkedIn's systemic breaches of its contracts with advertisers, including its breach of … the implied duty to perform with reasonable care and the implied covenant of good faith and fair dealing, also constitute an unlawful and unfair business practice under the UCL"). However, "[a] common law violation such as breach of contract is insufficient" as a predicate for a claim under the UCL's unlawful prong. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

The Consolidated Complaint elsewhere states in conclusory fashion that LinkedIn's

---

[2] In its reply, LinkedIn argues that *Sonner* also warrants dismissal of Plaintiffs' claim for injunctive relief under the UCL and their claim under the unfair prong of the UCL. Dkt. 77 at 5. Because LinkedIn did not raise this argument in its motion to dismiss, the Court will not consider it in connection with the present motion.

conduct was "contrary to legislatively declared public policies that seek to protect consumers from misleading statements, as reflected in laws like the Federal Trade Commission Act (15 U.S.C. § 45), Consumer Legal Remedies Act (Cal. Civ. Code § 1770), and California False Advertising Law (Cal. Bus. & Prof. Code §17500)." Cons. Comp. ¶ 151. However, in Plaintiffs' opposition to the motion to dismiss, they do not address LinkedIn's argument that they have not identified any statute or other law that may properly serve as a predicate for a claim under the UCL's "unlawful" prong. To the extent the list of statutes in paragraph 151 is intended to identify statutes Plaintiffs intend to "borrow" to support a UCL claim, they have failed to adequately plead a violation of those statutes, as is required. *See Cappello v. Walmart, In.*, 394 F. Supp. 3d 1015, 1023 (N.D. Cal. 2019); *see also In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 841 (N.D. Cal. 2020 ("to be 'unlawful' under the UCL, Defendants' conduct must violate another 'borrowed' law.").

Accordingly, Plaintiffs' UCL claim is **DISMISSED** to the extent it alleges violation of UCL's "unlawful" prong. If Plaintiffs intend to pursue a claim under the UCL's "unlawful" claim, they are granted **LEAVE TO AMEND** to identify what law they are "borrowing" as the basis for the UCL claim and plead facts establishing that the borrowed law is violated.

### d. Rule 9(b) pleading standard

LinkedIn challenges Plaintiffs' UCL cause of action, to the extent it sounds in fraud, for failure to satisfy Rule 9(b) pleading standards. Motion at 2, 16. This argument is addressed in the following section.

### 2. Fraud and Misrepresentation

#### a. Rule 9(b) pleading standard

LinkedIn argues that Plaintiffs fail to plead their claims for fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation (as well as the UCL claim, to the extent it is sounds in fraud) with the specificity required under Rule 9(b). Motion at 15-22. Specifically, LinkedIn argues that Plaintiffs have not identified any alleged misrepresentation with particularity, Plaintiffs fail to allege reasonable reliance with the requisite specificity, and Plaintiffs fail to plead the elements of a claim for fraudulent concealment. *Id.* Plaintiffs counter that their fraud-based claims satisfy Rule 9(b) pleading standards. Opp. at 15-21.

10

The Consolidated Complaint repeatedly refers to "statements," "misstatements," and "representations" by LinkedIn concerning its metrics. *See, e.g.,* Consolidated Complaint ¶¶ 51, 56, 57, 69, 78, 97, 144, 240. However, Plaintiffs do not identify the substance of any particular representation or when and by whom it was made. Accordingly, the particular circumstances concerning the alleged fraud and misrepresentation cannot be discerned, and thus the fraud-based claims are subject to dismissal. *See Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2017 WL 976048, at *8 (N.D. Cal. Mar. 14, 2017) (dismissing fraud claim where plaintiffs failed to allege they "encountered a representation made by Defendant—let alone what those representations were, when they were made, and why they were false"); *McKinney v. Google, Inc.*, No. 5:10-CV-01177 EJD (PSG), 2011 WL 3862120, at *5 (N.D. Cal. Aug. 30, 2011) (dismissing a fraudulent omission claim where the plaintiff asserted that she decided to buy a product based on Google's misrepresentations but had "not particularly identified any representation upon which she relied or alleged facts showing her actual and reasonable reliance on any such representations").

Accordingly, LinkedIn's motion to dismiss the fraud and misrepresentation claims for failure to comply with Rule 9(b) pleading standards is **GRANTED WITH LEAVE TO AMEND.**

### b.     Economic loss rule

LinkedIn also argues that Plaintiffs' claims for fraudulent misrepresentation, fraudulent concealment, and negligent misrepresentation seek purely economic damages arising from the parties' contractual relationship and should be dismissed under the economic loss rule. Motion at 12-15. Plaintiffs argue that their claims fall within two exceptions to the economic loss rule that permit recovery of their economic losses: a special relationship between Plaintiffs and LinkedIn, and fraudulent inducement of Plaintiffs into entering a contract with LinkedIn. Opp. at 11-15.

Because the Court finds that Plaintiffs' fraud-based claims do not satisfy Rule 9(b)'s heightened pleading standard, the Court will not consider LinkedIn's economic loss rule argument at this juncture. However, if Plaintiffs choose to amend their tort claims, they must be prepared to justify why this dispute between corporate entities regarding a written contract and seeking economic damages implicates the law of tort. *See Dairy v. Harry Shelton Livestock, LLC*, No. 18-

11

1  cv-06357-RMI, 2019 WL 631493, at *10 (N.D. Cal. Feb. 14, 2019) ("In general, the 'economic

2  loss rule' precludes a plaintiff from suing a defendant for a tortious breach of contract without

3  alleging that the defendant has violated a duty separate from the breach of contract") (citations

4  omitted).

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

LinkedIn argues that Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails because they have not identified a contractual term that gives rise to the claimed duty. Motion at 23-24. Plaintiffs argue that LinkedIn violated the duty of good faith and fair dealing implied in the Parties' Ads Agreement when it included non-genuine engagement in its advertising metrics. Opp. at 21-23.

"Under California law, a claim for breach of the covenant of good faith and fair dealing requires that a contract exists between the parties, that the plaintiff performed his contractual duties or was excused from nonperformance, that the defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting, and that the plaintiff's damages resulted from the defendant's actions." *Avila v. Countrywide Home Loans*, No. 10-CV-05485, 2010 WL 5071714, at *5 (N.D. Cal. Dec. 7, 2010) (citations omitted). "[B]reach of a specific provision of the contract is not a necessary prerequisite" for breach of the implied covenant of good faith and fair dealing. *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012) (citation omitted). However, "the implied covenant of good faith and fair dealing's application is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*, No. 5:12-CV-06209-EJD, 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013) (internal quotation marks and citation omitted). The covenant cannot impose substantive limits or duties on the contracting parties beyond those incorporated in the specific terms of the agreement. *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2018 WL 3428525, at *3 (N.D. Cal. July 13, 2018).

Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing fails to identify the term of the contract that gives rise to the implied covenant. Plaintiff alleges that

LinkedIn breached the implied covenant by "failing to provide Plaintiffs and Class members with accurate advertising metrics," for example by "ignor[ing] industry custom by failing to implement a process to ensure the accuracy of the metrics that it communicated to advertisers until November 2020." Cons. Comp. ¶ 227. Plaintiffs also allege that "LinkedIn's calculation and communication of inflated ad metrics" breached the implied duty. *Id.* ¶ 229. Plaintiffs fail to tie these alleged breaches of the implied covenant to any particular term of the contract.

In connection with their claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs also allege that "LinkedIn's calculation and communication of inaccurate or inflated ad metrics frustrated the entire purpose of the contract, which was for Plaintiffs and the Class members to engage with their intended, human audience." Cons. Comp. ¶ 228. A claim for breach of the implied covenant can be based on acts that "intended to and did frustrate the common purpose of the agreement." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d at 1042 (citation omitted). However, even in this scenario, Plaintiffs may not use the implied covenant to rewrite the Parties' contract to include provisions foreign to the original. *Singh v. Google Inc.*, No. 16-cv-3734-BLF, 2017 WL 2404986, at *3 (N.D. Cal. June 2, 2017).

Illustrating these principles, a court in this District held that where terms and conditions signed by plaintiffs expressly provided that they were responsible for activity occurring on or through their accounts and that Apple may charge them for any such activity, plaintiffs could not maintain a claim that Apple breached the implied covenant of good faith and fair dealing by charging them for purchases made by plaintiff account holders' children during a 15-minute period in which no password was required after plaintiffs had downloaded and allowed their children to play free or nominally-priced apps. *In re Apple In-App Purchase Litig.,* 855 F. Supp. 2d at 1042. "[T]he implied covenant cannot negate Apple's ability to charge Plaintiffs" because "[t]he Terms & Conditions signed by Plaintiffs expressly provide that Plaintiffs are responsible for activity occurring on or through their accounts and Apple may charge them for any such activity." *Id.*

This case is similar. The LinkedIn Ads Agreement expressly provides that "LinkedIn is not responsible for click fraud, fraudulent leads, technological issues or other potentially invalid

1    activity by third parties that may affect the cost of running Ads." Cons. Comp. at Ex. C § 3.  In

2    light of this express contractual term, Plaintiffs have failed to show how LinkedIn's alleged acts of

3    calculating and communicating inflated ad metrics breached a duty of good faith and fair dealing.

4    Accordingly, the claim for breach of the implied covenant of good faith and fair dealing is

5    **DISMISSED WITH LEAVE TO AMEND.**

### 4.  Accounting

LinkedIn argues that Plaintiffs' claim for accounting seeks equitable relief and is barred because Plaintiffs have not shown that their legal remedies are inadequate.  Motion at 24-25.  Plaintiffs argue that they adequately plead their accounting claim as an alternative to their legal claims.  Opp. at 23.

"An accounting may be sought where a fiduciary relationship exists between the parties" or where "the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable."  *Das v. WMC Mortg. Corp.*, No. C10-0650-PVT, 2010 WL 4393885, at *8 (N.D. Cal. Oct. 29, 2010) (internal quotation marks and citation omitted); *see also Rave v. L'Oreal USA, Inc.*, No. 17-cv-0654-EDL, 2019 WL 11504876, at *10 (N.D. Cal. Apr. 29, 2019) ("Under California law, an accounting claim requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting") (internal quotation marks and citation omitted).  "An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation."  *Rave*, 2019 WL 11504876, at *10 (citation omitted).

Plaintiffs have not alleged facts sufficient to establish a fiduciary relationship.  They also have not plausibly alleged that the relevant accounts are "so complicated that an ordinary legal action demanding a fixed sum is impracticable.'  *See Das,* 2010 WL 4393885, at *8.  Plaintiffs allege that "[t]he data and information needed to calculate the harm cause by LinkedIn and the damages that Plaintiffs and Class members suffered remains exclusively within the control of LinkedIn and has remained so at all relevant times."  Cons. Comp. ¶ 238.  They ask for "at a minimum, an order requiring LinkedIn to provide a full and complete accounting of all

1  transactions and records relating to Plaintiff's and other Class members' advertising on LinkedIn
2  to enable Plaintiff and Class members to determine the nature and scope of the inaccurate and
3  inflated metrics, and the full extent of all harm caused by the ad metrics that LinkedIn
4  communicated to and calculated on behalf of all advertisers.  *Id.* ¶ 241.  However, "a legal remedy
5  cannot be characterized as inadequate merely because the measure of damages may necessitate a
6  look into [a defendant's] business records.'  *In re Asyst Techs., Inc. Derivative Litig.*, No. C-06-
7  04669-EDL, 2008 WL 2169021, at *12 (N.D. Cal. May 23, 2008) (quoting *Dairy Queen, Inc. v.
8  Wood*, 369 U.S. 469, 478-79 (1962)).  Because discovery in this action likely would enable
9  plaintiffs to calculate damages, no accounting is necessary and Plaintiffs have a remedy at law.
10 *See County of Santa Clara v. Astra USA, Inc.*, No. C 05-03740 WHA, 2006 WL 2193343, at *6
11 (N.D. Cal. July 28, 2006).

12     Plaintiffs' opposition to the motion to dismiss offers to provide "further specificity" on
13 their claim for accounting.  Opp. at  23.  Accordingly, Plaintiffs' claim for accounting is
14 **DISMISSED WITHLEAVE TO AMEND.**

### 5. Implausibility of claims based on Challenged Traffic

16     LinkedIn argues that all claims based on "Challenged Traffic" should be dismissed as
17 implausible on their face.  Motion at 22-23.  The term "Challenged Traffic" does not appear in the
18 Consolidated Complaint, but LinkedIn defines it in the motion to dismiss as "bot traffic,
19 fraudulent clicks, and erroneous clicks."  *Id.* at 1.  LinkedIn argues that "Plaintiffs offer no support
20 for their allegations that the ad metrics they received were inflated by Challenged Traffic."  *Id.* at
21 22 (citing Cons. Comp. ¶¶ 146, 168, 196).  LinkedIn faults Plaintiffs for failing to provide
22 "specific examples of how their advertisements were affected by such traffic" and for relying
23 instead on "unidentified 'investigations and studies conducted by digital marketing experts'" and
24 on a YouTube video identified in a footnote in the Consolidated Complaint.  Motion at 22 (citing
25 Cons. Comp. ¶¶ 94, 95 n.17).

26     Plaintiffs take the position that this argument should be rejected because it is not directed
27 to an entire claim but instead asks the Court to reject factual allegations within claims.  Opp. at 23-
28 25.  Plaintiffs also argue that they offer sufficient factual support in the Consolidated Complaint

15

for their allegations that LinkedIn's ad metrics are systematically inflated by non-genuine engagement. *Id.* Plaintiffs further argue that they seek recovery for platform-wide price inflation regardless of whether specific transactions resulted from Challenged Traffic. *Id.* at 24-25.

Some courts in this District have dismissed claims "to the extent that" they rely on certain faulty allegations or theories. *See, e.g., Badella v. Deniro Mktg., LLC,* No. C 10-03908 CRB, 2011 WL 227668, at *1 (N.D. Cal. Jan. 24, 2011) (dismissing fraud claim "to the extent [it] is based on alleged misrepresentations that purportedly induced Plaintiffs"; *In re Yahoo! Consumer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *28 (N.D. Cal. Aug. 30, 2017) (dismissing UCL claim "to the extent that it is based on Defendants' affirmative misrepresentation). However, other courts in this District have concluded that partial dismissals are not appropriate. *See, e.g., Pinnacle Ventures LLC v. Bertelsmann Educ. Servs.* LLC, No. 10-cv-03412-BLF, 2019 WL 4040070, at 83-4 (N.D. Cal. Aug. 26, 2019).

The Court finds under the circumstances of this case that a partial dismissal of the "Challenged Traffic" claims would not be feasible or appropriate. First, because Plaintiffs do not use the term "Challenged Traffic" in the Consolidated Complaint, dismissal of claims "to the extent" they rely on "Challenged Traffic" may lead to uncertainty about what claims remain in the case. Second, LinkedIn's argument that Plaintiffs must present "specific examples of how their advertisements were affected" by Challenged Traffic rather than relying on investigations and studies conducted by digital marketing experts and another advertiser (Motion at 22-23) imposes too high a burden on Plaintiffs at the pleading stage. LinkedIn bases its argument in part on the Ninth Circuit's decision in *Singh v. Google LLC*, 824 F. Appx. 512, 513 (9th Cir. 2020), which it characterizes in a parenthetical as "allowing the plaintiff's claims to proceed only after he had hired a click-fraud detection company that determined that 'Google's filters caught fewer fraudulent clicks than advertised'." Motion at 23. In that case, the Ninth Circuit reversed a district court's dismissal of claims under the UCL and False Advertising Act, finding that the district court "applied too stringent of a pleading stage standard when it concluded that Singh had not sufficiently alleged that he suffered the requisite economic injury." *Singh,* 824 Fed. Appx. at 513. The appellate court explained that the plaintiff had alleged that (1) he used Google's service

16

to run his ad campaigns; (2) he hired a company to analyze some of his ad campaigns, which concluded that Google's filters caught fewer fraudulent clicks than advertised; and (3) numerous studies prior to 2016 on third-party ad campaigns found that Google's filters did not catch as many fraudulent clicks as Google advertised. *Id.* The Ninth Circuit held that "[a]t the pleading stage these allegations together are sufficient to draw the reasonable inference that Singh's ad campaigns prior to 2016 similarly suffered higher-than-advertised rates of fraudulent clicks not caught by Google's filters, and that he accordingly paid for more fraudulent clicks than Google advertised he would." *Id.* The court expressly stated that "[w]e thus need not decide whether a consumer must allege (or prove) that Google's filters were ineffective to his ad campaigns to establish standing under the UCL or FAL." *Id.* at 513 n.1. This Ninth Circuit decision reverses one of the district court decisions relied upon by LinkedIn in support of its "Challenged Traffic" argument. *See* Motion at 23 (citing *Singh v. Google LLC*, 16-cv-03734-BLF, 2018 WL 984854, at *5 (N.D. Cal. Feb. 20, 2018)).

This case law therefore does not support LinkedIn's suggestion that Plaintiffs cannot rely on "general studies" to allege that metrics were inflated. *See* Motion at 22-23. In any event, Plaintiffs here offer more than that to support their claim that they were affected by "Challenged Traffic." They allege that "investigations and studies conducted by digital marketing experts" have uncovered additional non-legitimate interactions with ad content on its platform and cite a specific YouTube video in support of their claim. *Id.* ¶¶ 94-95 and n.17. Moreover, Plaintiffs' allegation that LinkedIn inflated metrics based on "Challenged Traffic" is also supported by their allegations regarding LinkedIn's inflation of other metrics. Specifically, Plaintiffs allege that LinkedIn admitted in November 2020 that its video ad metrics were inflated, which inflated the prices charged to video advertisers. Cons. Comp. ¶ 70. They allege that LinkedIn admitted that video ad metrics were inflated for more than two years, with over 418,000 advertisers overcharged as a result. *Id.* ¶ 71. Plaintiffs submit evidence that they were notified by LinkedIn that they were personally affected by these inflated metrics. *Id.* ¶¶ 106 and 116 and Exs. B and D thereto.

Drawing all inferences in favor of Plaintiffs, the Court finds their allegations of "Challenged Traffic" sufficient and therefore **DENIES** LinkedIn's motion to dismiss claims based

17

on "Challenged Traffic."

### III.   MOTION TO STRIKE

#### A.   Legal Standard

Rule 12(f) enables a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." The function of a Rule 12(f) motion is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

The granting of motions to strike class allegations before discovery and in advance of a motion for class certification is rare. *Mason v. Ashbritt, Inc.*, No. 19-cv-01062-DMR, 2020 WL 789570, at *4 (N.D. Cal. Feb. 17, 2020). Motions to strike class allegations are generally disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety, especially if further factual development is needed to resolve the issues presented. *Phan v. Sargento Foods, Inc.*, No. 20-cv-09251-EMC, 2021 WL 2224260, at *6 (citation omitted). However, if the motion presents a purely legal issue, it may be appropriate to decide it at the pleading stage rather than waiting until class certification to resolve it. *Id.*

#### B.   Discussion

As discussed above, the proposed class is defined in the Consolidated Complaint as "[a]ll persons or entities who paid for the placement of advertisements on LinkedIn's platform up to the date of the filing of this action." Cons. Comp. ¶ 132. LinkedIn challenges the class allegations on three grounds: (1) the proposed class includes foreign advertisers; (2) the proposed class includes advertisers who did not purchase ads within the statute of limitations; and (3) the proposed class is not ascertainable. Dkt. 66-1.

##### 1.   Inclusion of foreign advertisers

LinkedIn argues that the proposed class includes foreign advertisers who contracted with LinkedIn's foreign entities and are not entitled to bring claims in the United Status under California law. Dkt. 66-1 at 5; *see also* Cons. Comp. at Ex. C § 9 (stating that advertisers who contract with LinkedIn Ireland Unlimited Company, LinkedIn Singapore, or Beijing Lingyin

Information Technology Co. Ltd. are required to bring claims against LinkedIn in Ireland, Singapore, and China, respectively). Plaintiffs argue that the Ads Agreement does not preclude foreign advertisers from being included as unnamed plaintiffs in a class action brought by similarly-situated plaintiffs who are themselves entitled to bring an action in this District. Dkt. 74 at 7-8.

LinkedIn also argues that even if foreign advertisers were entitled to bring claims in this Court under California law, their inclusion in the proposed class raises practical and constitutional concerns that defeat the purpose of class-action treatment. Dkt. 66-1 at 6-8. Plaintiffs argue that LinkedIn has failed to establish how including foreign advertisers would render the class unmanageable and that, in any event, potential complexity alone does not warrant striking the class allegations. Dkt. 74 at 9-10. Plaintiffs also argue that LinkedIn has failed to show how inclusion of foreign advertisers would deny it due process. *Id.* at 10-12.

The parties' arguments concerning the propriety of including foreign advertisers in the proposed class present complex issues that are better decided at the class certification stage based on a more complete record. The Court therefore denies the motion to strike on this ground.

### 2. Inclusion of advertisers who did not purchase ads within the statute of limitations

LinkedIn argues that the proposed class improperly includes advertisers who purchased ads outside the applicable limitations period. Dkt. 66-1 at 8. Plaintiffs respond that LinkedIn's argument overlooks the tolling available under some of Plaintiffs' causes of action, which renders LinkedIn's statute of limitations arguments premature. Dkt. 74 at 5-7.

Additional development of the factual record is necessary to decide the statute of limitations argument advanced by LinkedIn. Accordingly, the Court denies the motion to strike on this ground.

### 3. Ascertainability

LinkedIn argues that Plaintiffs' proposed class is not ascertainable because it includes advertisers who lack standing because they were not billed for the allegedly inflated metrics. Dkt. 66-1 at 8-10. Plaintiffs respond that under Ninth Circuit jurisprudence, there is no ascertainability

19

requirement for class certification. Dkt. 74 at 3-5. They also argue that all proposed class members have standing because the Consolidated Complaint alleges that every LinkedIn advertiser overpaid. *Id.* at 4-5.

Again, LinkedIn's argument regarding ascertainability is best decided at the class certification stage with the benefit of more complete briefing and development of the record. Accordingly, the Court denies the motion to strike on this ground.

## IV. CONCLUSION AND DISPOSITION

For the foregoing reasons, the Court **ORDERS** as follows:

1. LinkedIn's motion to dismiss Plaintiffs' claims for UCL, fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and accounting is **GRANTED WITH LEAVE TO AMEND.**
2. LinkedIn's motion to dismiss Plaintiffs' claims based on "Challenged Traffic" is **DENIED.**
3. LinkedIn's motion to strike the class allegation is **DENIED**.
4. If Plaintiffs wish to attempt to address the deficiencies identified in this order, they may file Second Amended Complaint ("SAC") within **14 days of the date of this Order.**
5. LinkedIn must file a response within **14 days of the filing of the SAC.**
6. If LinkedIn responds by filing a motion to dismiss the SAC, the normal briefing schedule of Civil Local Rule 7-3 will apply. The Court will inform the parties if a hearing is necessary.

**SO ORDERED.**

Dated: August 3, 2021

SUSAN VAN KEULEN
United States Magistrate Judge

20