Brooke Clason Smith (*pro hac vice*)
  brooke.smith@kellerlenkner.com
J. Dominick Larry (*pro hac vice*)
  nl@kellerlenkner.com
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Phone: (312) 216-8656
Facsimile: (312) 971-3502

*Attorneys for Plaintiffs and the
Proposed Class*

(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| *In Re LinkedIn Advertising Metrics Litigation* | Case No.:   5:20-cv-08324-SVK<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LINKEDIN CORPORATIONS' MOTION TO DISMISS**<br><br>Date:          October 12, 2021<br>Time:          10:00 a.m.<br>Dept:          Courtroom 6 – 4th Floor<br><br>Judge:          Hon. Susan van Keulen<br><br>Consol. Complaint Filed:  March 17, 2021<br><br>Trial Date: None Set |

# TABLE OF CONTENTS

TABLE OF AUTHORTIES .............................................................................................. iii

INTRODUCTION ......................................................................................................... 1

BACKGROUND ........................................................................................................... 1

I.     LinkedIn told Plaintiffs they would only pay when "someone" clicked their ads.. 1

II.    LinkedIn reported inflated forecasted and actual ad metrics. ................................ 2

III.   LinkedIn overcharged Plaintiffs. .......................................................................... 2

IV.    Plaintiffs have amended their complaint as instructed by the Court. .................... 3

ARGUMENT ............................................................................................................... 3

I.     Plaintiffs state a claim that LinkedIn violated the FAL. ........................................ 4

       A.     LinkedIn's Payment Promise violated the FAL............................................ 4

       B.     LinkedIn violated the FAL when it presented inflated forecasted metrics
              before advertisers initiated their campaigns. ............................................. 7

II.    Plaintiffs have standing to maintain their UCL claims. ......................................... 8

       A.     Plaintiffs have UCL standing because they lost money............................... 8

       B.     Plaintiffs have UCL standing because they are small businesses. .............. 9

       C.     Plaintiffs' UCL claims will protect individual consumers. ...................... 10

III.   Plaintiffs sufficiently plead their FAL and UCL claims. ..................................... 11

       A.     Plaintiffs specify LinkedIn's misrepresentations...................................... 11

       B.     Plaintiffs plead reliance with sufficient specificity.................................. 14

       C.     Plaintiffs have sufficiently alleged a UCL unlawful-prong claim. ........... 15

IV.    Plaintiffs' FAL and UCL claims are not barred by Sonner. ............................... 15

       A.     Plaintiffs seek legal restitution................................................................ 15

       B.     Plaintiffs' legal remedies are inadequate. ............................................... 16

V.     LinkedIn's challenges to Plaintiffs' implied duty claim are waived and deficient20

A.      LinkedIn waived its right to challenge Plaintiffs' implied duty claim. .... 20

B.      LinkedIn breached its duty to use reasonable care in calculating metrics.20

1.  The Ads Agreement gives rise to an implied duty to calculate metrics and Rates with reasonable care. ................................................................. 20

2.  The parties' course of dealing gave rise to an implied duty to provide metrics, and to do so with reasonable care. ............................................. 22

3.  Industry practice gives rise to the implied duty. ................................ 23

4.  LinkedIn did not exercise reasonable care in providing metrics. ....... 24

C.      LinkedIn breached its covenant of good faith and fair dealing by including rampant non-genuine activity in its metrics............................................. 25

CONCLUSION................................................................................................................ 25

# <u>TABLE OF AUTHORTIES</u>

**Page(s)**

**Cases**

*AcryliCon USA, LLC v. Silikal GmbH,*
   985 F.3d 1350 (11th Cir. 2021) ................................................................16

*AdTrader, Inc. v. Google LLC,*
   No. 17-cv-7082, 2019 WL 1767206 (N.D. Cal. Apr. 22, 2019)....................1, 9, 10

*Anderson v. Apple Inc.,*
   500 F. Supp. 3d 993 (N.D. Cal. 2020) ..................................................16, 17, 18

*Andino v. Apple, Inc.,*
   No. 20-cv-1628, 2021 WL 1549667 (E.D. Cal. Apr. 20, 2021) ....................17

*Anschutz Corp. v. Merrill Lynch & Co. Inc.,*
   785 F. Supp. 2d 799 (N.D. Cal. 2011) ....................................................15

*Anthony v. Pharmavite,*
   No. 18-cv-2636, 2019 WL 109446 (N.D. Cal. Jan. 4, 2019)........................8

*Anthony v. Yahoo Inc.,*
   421 F. Supp. 2d 1257 (N.D. Cal. 2006) ..................................................14

*Artiste v. Am. Int'l Grp., Inc.,*
   No. 19-cv-7574, 2020 WL 4037219 (C.D. Cal. Jan. 23, 2020)....................19

*Ass'n for Los Angeles Deputy Sheriffs v. City of Los Angeles,*
   648 F.3d 986 (9th Cir. 2011) ................................................................9

*Atari Corp. v. 3DO Co.,*
   No. 94-cv-20298, 1994 WL 723601 (N.D. Cal. May 16, 1994)....................6

*Bank of the West v. Superior Court,*
   2 Cal.4th 1254 (Cal. 1992)....................................................................18

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 554 (2007)..............................................................................4

*BladeRoom Grp. Ltd. v. Facebook, Inc.,*
   219 F. Supp. 3d 984 (N.D. Cal. 2017) ....................................................8

*Bobo v. Optimum Nutrition, Inc.,*
   No. 14-cv-2408, 2015 WL 13102417 (S.D. Cal. Sept. 11, 2015) ................8

*Brazil v. Dell Inc.,*
   No. 07-cv-1700, 2010 WL 5387831 (N.D. Cal. Dec. 21, 2010)....................5

*Brickman v. Fitbit, Inc.,*
    No. 15-cv-2077, 2016 WL 3844327 (N.D. Cal. July 15, 2016) ............................................11

*Broberg v. The Guardian Life Ins. Co. of Am.,*
    171 Cal. App. 4th 912 (2009) ........................................................................................................7

*Brooks v. Thomson Reuters Corp.,*
    No. 21-cv-1418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ......................................17

*In re California Gasoline Spot Mkt. Antitrust Litig.,*
    No. 20-cv-3131, 2021 WL 1176645 (N.D. Cal. Mar. 29, 2021) ......................................16

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.,*
    222 Cal.App.3d 1371 (1990) ......................................................................................................25

*In re CFLC, Inc.,*
    209 B.R. 508 (B.A.P. 9th Cir. 1997) *aff'd* 166 F.3d 1012 (9th Cir. 1999)............................22

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC,*
    No. 12-cv-4000, 2015 WL 6638929 (N.D. Cal. Oct. 30, 2015) ..........................8, 9, 10

*Comm. On Children's Television, Inc. v. Gen. Foods Corp.,*
    673 P.2d 660 (Cal. 1983) ............................................................................................................15

*Concha v. London,*
    62 F.3d 1493 (9th Cir. 1995) ....................................................................................................12

*Cooper v. Pickett,*
    137 F.3d 616 (9th Cir. 1997) ..............................................................................................12, 14

*In re Cty. of Orange,*
    784 F.3d 520 (9th Cir. 2015) ....................................................................................................16

*Depot, Inc. v. Caring for Montanans, Inc.,*
    915 F.3d 643 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019)..........................................16

*DotStrategy Co. v. Facebook Inc.,*
    No. 20-cv-170, 2020 WL 6591366 (N.D. Cal. Nov. 11, 2020) ....................................7, 22, 25

*DotStrategy Co. v. Twitter,*
    476 F. Supp. 3d at 985–96 ................................................................................4, 6, 14, 23, 25

*Elgindy v. AGA Serv. Co.,*
    No. 20-cv-6304, 2021 WL 1176535 (N.D. Cal. Mar. 29, 2021) ............................................19

*Ewert v. eBay, Inc.,*
    No. 07-cv-2198, 2010 WL 4269259 (N.D. Cal. Oct. 25, 2010) ....................................10, 11

*Figy v. Lifeway Foods, Inc.,*
    No. 13-cv-04828–TEH, 2016 WL 4364225 (N.D. Cal. Aug. 16, 2016) ................................12

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS
CASE NO.: 5:20-cv-08324-SVK

*Free Range Content, Inc. v. Google Inc.*,
    No. 14-cv-2329, 2016 WL 2902332 (N.D. Cal. May 13, 2016)........................10, 11

*Freeman v. Time, Inc.*,
    68 F.3d 285 (9th Cir. 1995) ............................................................................8

*Furla v. Jon Douglas Co.*,
    65 Cal. App. 4th 1069 (1998) ..........................................................................7

*Gabali v. OneWest Bank, FSB*,
    No. 12-cv-2901, 2013 WL 1320770 (N.D. Cal. Mar. 29, 2013) ..........................4

*In re Google AdWords Litig.*,
    No. 08-cv-3369 JW, 2011 WL 7109217 (N.D. Cal. Mar. 17, 2011) ...................11, 12, 14, 15

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002)........................................................................................16

*Guaranty Trust Co. v. York*,
    326 U.S. 99 (1945)..........................................................................................17

*Heredia v. Wells Fargo Bank*,
    No. 16-cv-2820, 2016 WL 4608238 (N.D. Cal. Sept. 6, 2016)..........................14

*Herskowitz v. Apple Inc.*,
    940 F. Supp. 2d 1131 (N.D. Cal. 2013) ............................................................14

*Holguin v. DISH Network LLC*,
    229 Cal. App. 4th 1310 (2014) ....................................................................20, 22, 23

*Jordan v. United States*,
    No. 15-cv-1199, 2015 WL 5919945 (S.D. Cal. Oct. 8, 2015)............................19

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    497 F. Supp. 3d 552 (N.D. Cal. 2020) ..............................................................18

*Kang v. P.F. Chang's China Bistro, Inc.*,
    844 F. App'x 969 (9th Cir. 2021) ......................................................................6

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..........................................................................13

*Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*,
    No. 08-cv-2581 JF, 2009 WL 160214 (N.D. Cal. Jan. 20, 2009)............................14

*Letizia v. Facebook Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. 2017) ............................................... *passim*

*Linear Tech. Corp. v. Applied Materials, Inc.*,
    152 Cal. App. 4th 115 (2007) ..........................................................................8, 9

*In re LinkedIn User Priv. Litig.*,
  No. 12-cv-3088, 2014 WL 1323713 (N.D. Cal. Mar. 28, 2014) ..........................................4, 5

*Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*,
  No. 19-cv-837, 2019 WL 6218780 (S.D. Cal. Nov. 21, 2019)...............................................4

*Lona's Lil Eats, LLC v. DoorDash, Inc.*,
  No. 20-cv-6703, 2021 WL 151978 (N.D. Cal. Jan. 18, 2021)................................................5

*Loomis v. Slendertone Distribution, Inc.*,
  420 F. Supp. 3d 1046 (S.D. Cal. 2019)................................................................................6

*Marolda v. Symantec Corp.*,
  672 F. Supp. 2d 992 (N.D. Cal. 2009) ................................................................................14

*Meister v. Mensinger*,
  230 Cal. App. 4th 381 (2014) ............................................................................................18

*Midwest Television, Inc. v. Scott, Lancaster, Mills & Atha, Inc.*,
  205 Cal. App. 3d 442 (Ct. App. 1988)...........................................................................23, 24

*Monaco v. Liberty Life Assur. Co.*,
  No. 06-cv-7021, 2007 WL 420139 (N.D. Cal. Feb. 6, 2007)................................................20

*Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*,
  577 U.S. 136 (2016)...........................................................................................................16

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989) .............................................................................................13

*Morris v. California*,
  966 F.2d 448 (9th Cir. 1991) .............................................................................................19

*N.K. Collins, LLC v. William Grant & Sons, Inc.*,
  472 F. Supp. 3d 806 (D. Haw. 2020) ................................................................................18

*Nabors v. Google, Inc.*,
  No. 10-cv-3897, 2011 WL 3861893 (N.D. Cal. Aug. 30, 2011) ...........................................14

*Northstar Fin. Advisors, Inc. v. Schwab Invs.*,
  135 F. Supp. 3d 1059 (N.D. Cal. 2015) ..............................................................................20

*Peacock v. 21st Amend. Brewery Cafe, LLC*,
  No. 17-cv-1918, 2018 WL 452153 (N.D. Cal. Jan. 17, 2018)...............................................19

*PhotoMedex, Inc. v. Irwin*,
  601 F.3d 919 (9th Cir. 2010) ..............................................................................................7

*PSM Holding Corp., v. Nat'l Farm Fin. Corp.*,
  884 F.3rd 812 (9th Cir. 2018) ..............................................................................................9

vi

*Rosenbluth Internat., Inc. v. Superior Ct.,*
   101 Cal. App. 4th 1073 (2002), *as modified* (Sept. 11, 2002) ............................................9, 10

*Rubenstein v. Neiman Marcus Grp. LLC,*
   687 F. App'x 564 (9th Cir. 2017) ...........................................................................................4, 12

*Sanford v. MemberWorks, Inc.,*
   625 F.3d 550 (9th Cir. 2010) ......................................................................................................11

*Sciacca v. Apple, Inc.,*
   362 F. Supp. 3d 787 (N.D. Cal. 2019) ...............................................................................13, 25

*In re Seagate Tech. LLC Litig.,*
   233 F. Supp. 3d 776 (N.D. Cal. 2017) .........................................................................................4

*Simler v. Conner,*
   372 U.S. 221 (1963) ...................................................................................................................15

*Singh v. Google Inc.,*
   No. 16-cv-3734, 2017 WL 2404986 (N.D. Cal. June 2, 20217) ...............................................23

*Singh v. Google LLC,*
   824 F. App'x 512 (9th Cir. 2020) ................................................................................................6

*Sonner v. Premier Nutrition Corp.,*
   971 F.3d 834 (9th Cir. 2020) ...............................................................................11, 16, 18, 19

*Sultanis v. Champion Petfoods USA Inc.,*
   No. 21-cv-162, 2021 WL 3373934 (N.D. Cal. Aug. 3, 2021) .....................................................8

*Thrifty Payless, Inc. v. The Americana at Brand, LLC,*
   218 Cal. App. 4th 1230 (2013) ....................................................................................................7

*In re Tobacco II Cases,*
   207 P.3d 20 (Cal. 2009) ...............................................................................................................8

*Tyler Barnett PR, LLC et al. v. Facebook Inc.,*
   16-cv-06232, Dkt. 181 (N.D. Cal. April 25, 2019).....................................................................20

*U.S. v. Wealth & Tax Advisory Servs., Inc.,*
   526 F.3d 528 (9th Cir. 2008) ......................................................................................................6

*Varni Bros. Corp. v. Wine World, Inc.,*
   35 Cal. App. 4th. 880 (1995) .....................................................................................................24

*In re Vizio, Inc., Consumer Priv. Litig.,*
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) .....................................................................................19

*W. Pac. Elec. Co. Corp. v. Dragados/Flatiron,*
   No. 18-cv-166, 2021 WL 1534472 (E.D. Cal. Apr. 19, 2021) ...................................................17

*In re Webkinz Antitrust Litigation,*
   695 F.Supp.2d 987 (N.D.Cal.2010) ..................................................................9

*Williams Elecs. Games, Inc. v. Garrity,*
   366 F.3d 569 (7th Cir. 2004) ..........................................................................16

*Williams v. Apple, Inc.,*
   No. 19-cv-4700, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ......................16

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008) ........................................................................4, 6

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.,*
   655 F.3d 1039 (9th Cir. 2011) ........................................................................22

*In re Yahoo! Litig.,*
   251 F.R.D. 459 (C.D. Cal. 2008) ................................................................9, 10

*Zadrozny v. Bank of N.Y. Mellon,*
   720 F.3d 1163 (9th Cir. 2013) ..........................................................................3

*Zeiger v. WellPet LLC,*
   No. 17-cv-4056, 2021 WL 756109 (N.D. Cal. Feb. 26, 2021) ........................17

**Statutes**

Cal. Bus. & Prof. Code § 17204 ...........................................................................18

Cal. Bus. & Prof. Code § 17500 ........................................................................4, 5

Cal. Civ. Code § 3358..........................................................................................17

Cal. Com. Code § 1302(b) ...................................................................................25

Cal. Com. Code § 1303(b) ...................................................................................22

California False Advertising Law ................................................................. *passim*

California Unfair Competition Law............................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 8(d)(3)..........................................................................................19

Fed. R. Civ. P. Rule 9(b) ................................................................11, 12, 13, 14

Fed. R. Civ. P. Rule 12 .....................................................................................1, 19

Fed. R. Civ. P. Rule 12(b)(6)...........................................................................9, 20

Fed. R. Civ. P. Rule 23(b)(3) ..............................................................................10

**INTRODUCTION**

This case is, and always has been, about LinkedIn inflating its advertising metrics and prices in two ways: 1) miscalculating video views and impressions, and 2) reporting as legitimate widespread activity from fraudulent accounts, automated accounts, or accidental clicks. LinkedIn has admitted to the first category of misconduct, and the Court has already found sufficient Plaintiffs' allegations regarding the second category. Now, having amended their complaint in accordance with the Court's prior Order, Plaintiffs state four claims to hold LinkedIn accountable: violation of California's False Advertising Law (FAL) and Unfair Competition Law (UCL), breach of the implied duty of reasonable care, and breach of the implied covenant of good faith and fair dealing. LinkedIn seeks dismissal of each claim—including the implied duty claim not addressed in its prior motion—contending that it is not liable for overcharges that it has admitted to and that have already survived its Rule 12 challenge. But LinkedIn largely repeats its prior motion and ignores the allegations in Plaintiffs' amended pleading. Crediting those allegations and applying the relevant law, the Court should deny LinkedIn's motion.

**BACKGROUND**

**I.    LinkedIn told Plaintiffs they would only pay when "someone" clicked their ads.**

Plaintiffs TopDevz and Noirefy are small businesses that advertised on LinkedIn to connect with consumers on LinkedIn's platform. Dkt. 89, Second Amended Complaint (SAC) ¶¶ 17, 78–80, 84, 118.[1] As with every other advertiser, before Plaintiffs purchased their first LinkedIn ads, LinkedIn promised that they would "only pay when someone clicks your ad." *Id.* ¶¶ 33–34 (referred to herein as the "Payment Promise"). That assurance in mind, Plaintiffs uploaded their payment details and launched their first LinkedIn ad campaigns. *Id.* ¶¶ 110, 120. Based on LinkedIn's promise, advertisers perceived "someone" on LinkedIn to be more valuable than the

---

[1] As with its prior Motion, LinkedIn incorrectly refers to Plaintiffs as "sophisticated businesses." Mot. at 3. This assertion not only relies on extra-Complaint material, but also contradicts Plaintiffs' specific allegations concerning lack of sophistication, *see* SAC ¶¶ , 83, 117, 174 (alleging lack of in-house ad analytics expertise). Ultimately, whether Plaintiffs are "sophisticated" is a question of fact inappropriate for a motion to dismiss. *AdTrader, Inc. v. Google LLC*, No. 17-cv-7082, 2019 WL 1767206, at *10 (N.D. Cal. Apr. 22, 2019). LinkedIn's unsupported assertions about its "makegoods" should likewise be ignored.

audience on other ad platforms, allowing LinkedIn to charge more than its competitors. *Id*. ¶¶ 17–21.

## II.    LinkedIn reported inflated forecasted and actual ad metrics.

Since at least 2015, LinkedIn has reported forecasted and actual metrics regarding the performance of advertisers' campaigns through its Campaign Manager interface. SAC ¶ 22. For each of Plaintiffs' campaigns, LinkedIn displayed forecasted metrics throughout the campaign setup process reflecting estimated campaign performance based on Plaintiffs' selected parameters. *Id*. ¶¶ 31, 72–73, 85–88, 91, 93, 96, 98–101, 103, 105, 107, 119, 122, 124, 126. Then, after a campaign launched, LinkedIn reported real-time metrics in Plaintiffs' Campaign Manager accounts. *Id*. ¶¶ 38–42, 90, 92, 95, 97, 102, 104, 106, 121, 123, 125.

LinkedIn's metrics are plagued by automated, fraudulent, mistaken, or miscalculated engagement with LinkedIn ads (collectively "non-genuine engagement"). *Id*. ¶¶ 5, 49. LinkedIn has already admitted to years-long measurement errors inflating video-views and impressions for Sponsored Content campaigns. *Id*. ¶¶ 52–56, 108, 127. Compounding these measurement errors, LinkedIn's ad metrics include extensive automated, fraudulent, and mistaken engagement. *Id*. ¶¶ 58–67. LinkedIn is complicit in this non-genuine engagement—its longstanding refusal to follow its industry peers and engage third-party auditors, along with its obstruction of advertisers' ability to validate or challenge LinkedIn's metrics, created an environment where inflated metrics went undetected and uncorrected, while boosting LinkedIn's revenue. *Id*. ¶¶ 43–48.

## III.    LinkedIn overcharged Plaintiffs.

Contrary to its Payment Promise, LinkedIn charged Plaintiffs for non-genuine engagement with their ads in two ways. SAC ¶¶ 111–112; 130–131. First, LinkedIn improperly charged Plaintiffs for non-genuine engagement ("Transaction-Specific Overcharges"), *id*. ¶¶ 70, 111, 130. Second, LinkedIn's inflated metrics also inflated demand across the platform, and with it, the prices charged for every transaction ("Platform-Based Overcharges"). *Id*. ¶¶ 71–75, 112, 131. Plaintiffs, for themselves and a class of advertisers, seek to recover the full amount of those overcharges and halt LinkedIn's ongoing deception and overcharging of advertisers.

**IV.     Plaintiffs have amended their complaint as instructed by the Court.**

On August 3, 2021, the Court granted in part and denied in part LinkedIn's prior motion to dismiss. Dkt. 85 ("Order"). The Court found sufficient Plaintiffs' allegations regarding ad metric inflation from bot traffic, fraudulent clicks, and erroneous clicks on LinkedIn's platform. *Id*. at 15–17. The Court dismissed Plaintiffs' UCL, fraud, implied covenant, and accounting claims with leave to amend. *Id*. LinkedIn did not move to dismiss Plaintiffs' implied duty of reasonable care claim. Dkt. 65. In the SAC, Plaintiffs restate their UCL, implied covenant, and implied duty claims and state a new FAL claim that also provides the basis for Plaintiffs' UCL unlawful-prong claims. Order at 10; *see* SAC ¶¶ 148–171. Plaintiffs do not restate their common law fraud claims.

Plaintiffs followed the Court's guidance in amending their pleading. For their UCL claims, Plaintiffs added allegations showing that "they are small and/or unsophisticated entities" and that LinkedIn's conduct affected "consumers generally." Order at 6–7; *see* SAC ¶¶ 24, 82–84, 117–118. They also alleged that "the damages they seek are inadequate," Order at 8, and specified the restitutionary relief for past harms and injunctive relief for future harms uniquely available under the UCL and FAL. SAC ¶¶ 69–76, 167–170, 170, 199–201. For their UCL-fraud claims, Plaintiffs identified "the substance" of many misrepresentations and "when and by whom" they were made. Order at 11. Specifically, Plaintiffs identified LinkedIn's Payment Promise and LinkedIn's metric misrepresentations for each of Plaintiffs' ad campaigns, as well as the substance of those representations and when Plaintiffs saw them. SAC ¶¶ 31, 33–34, 85–107, 119–126. For their implied covenant claim, Plaintiffs "identify the term of the contract that gives rise to the implied covenant." Order at 13; SAC ¶ 217. Having amended to cure all prior pleading deficiencies, Plaintiffs are now prepared to proceed expeditiously to discovery on their four remaining claims.

## <u>ARGUMENT</u>

On a motion to dismiss, the Court must "accept as true all well pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." *Zadrozny v. Bank of N.Y. Mellon,* 720 F.3d 1163, 1167 (9th Cir. 2013) (cleaned up). The complaint should provide more than "labels and conclusions" but "does not need detailed factual allegations." *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007). "If a court does dismiss a complaint for failure to state a claim, it should 'freely give leave [to amend] when justice so requires.'" *DotStrategy Co. v. Twitter Inc.*, 476 F. Supp. 3d 978, 982 (N.D. Cal. 2020) (quoting Fed. R. Civ. P. 15(a)(2)).

## I.   Plaintiffs state a claim that LinkedIn violated the FAL.

"The FAL is broadly written and broadly construed, and a wide range of statements can qualify as an advertisement." *In re LinkedIn User Priv. Litig.*, No. 12-cv-3088, 2014 WL 1323713, at *6 (N.D. Cal. Mar. 28, 2014). The statute applies to any statement "concerning any circumstance or matter of fact connected with the proposed performance or disposition" of any product of service. Cal. Bus. & Prof. Code § 17500. For this reason, the FAL has been applied to a wide range of misleading statements. *See, e.g., In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 788 (N.D. Cal. 2017) ("data sheet" reflecting product-performance statistics was an advertisement); *Gabali v. OneWest Bank, FSB*, No. 12-cv-2901, 2013 WL 1320770, at *4 (N.D. Cal. Mar. 29, 2013) (letter denying borrower's request for a loan modification was "advertising").

A company violates the FAL when, while selling a product or service, it makes a statement "which is untrue or misleading, and which is known, or … should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Whether a statement is likely to deceive a reasonable consumer "will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938–39 (9th Cir. 2008). "Where, as here, the reasonable consumer test applies to a plaintiff's underlying claims, it is a 'rare situation in which granting a motion to dismiss is appropriate.'" *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 566 (9th Cir. 2017) (quoting *Williams*, 553 F.3d at 939).

### A.   LinkedIn's Payment Promise violated the FAL.

LinkedIn told the same lie to every advertiser before they purchased their first campaign: "You only pay when someone clicks your ad." SAC ¶¶ 33–34. LinkedIn argues this was not an advertisement, relying on a single out-of-district case analyzing website terms and conditions. *Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*, No. 19-cv-837, 2019 WL 6218780, at *5 (S.D. Cal. Nov. 21, 2019). But Plaintiffs here were misled by a prominent statement "listed at the point of

sale on [LinkedIn's] website," not a statement buried in its terms and conditions. *Brazil v. Dell Inc.*, No. 07-cv-1700, 2010 WL 5387831, at *5 (N.D. Cal. Dec. 21, 2010); SAC ¶¶ 33–34. Moreover, as LinkedIn should know, the FAL's "broadly written and broadly construed" definition of advertising encompasses promises made in website terms and policies. *In re LinkedIn User Priv. Litig.*, 2014 WL 1323713, at *6. Thus, the Payment Promise is clearly within the FAL's broad scope. *See Lona's Lil Eats, LLC v. DoorDash, Inc.*, No. 20-cv-6703, 2021 WL 151978, at *7 (N.D. Cal. Jan. 18, 2021) (false description of restaurant as "Closed" within food-delivery app subject to FAL). LinkedIn cites no authority to the contrary.

Lacking any legal authority, LinkedIn makes the unsupported assertion that the Payment Promise was not "made in conjunction with efforts to persuade businesses to place ads on LinkedIn" and was not "shown to advertisers *before* they decided to place ads on LinkedIn." Mot. at 16. This contradicts both the allegations in the SAC and common sense. The Payment Promise was displayed prominently at the top of the billing page such that every advertiser would read it *before* inputting any payment information, *before* finalizing their first ad campaign, and *before* completing their first order. *See* SAC ¶ 33. It is the first full sentence on the page and follows directly from the heading "How billing works." *Id.* There was no reason to include this statement except to persuade businesses to complete their purchase and place ads on LinkedIn. Regardless, the FAL requires only that the statement be "concerning any circumstance or matter of fact connected with" LinkedIn's services, which squarely covers this statement. Cal. Bus. & Prof. Code § 17500; *Lona's Lil Eats*, 2021 WL 151987, at *7.

Next, LinkedIn argues that the Payment Promise does not mean what it says. LinkedIn takes the remarkable position that "someone" does not refer to "an individual," but instead to "any actor," even bots. Mot. at 16. But any reasonable consumer would understand the word "someone" to refer to a person, and every standard dictionary definition confirms that understanding. *See, e.g.,* https://www.merriam-webster.com/dictionary/someone (defining someone as "some person"); https://dictionary.cambridge.org/us/dictionary/english/someone (defining someone as "a person");

https://www.dictionary.com/browse/someone (defining someone as "some person").[2] No reasonable reading of the word "someone" includes bots. Nor is the statement "non-actionable puffery," as LinkedIn suggests. As LinkedIn's only case on this point confirms, puffery involves "outrageous generalized statements, not making specific claims, that are so exaggerated to preclude reliance by consumers." *Atari Corp. v. 3DO Co.*, No. 94-cv-20298, 1994 WL 723601, at *2 (N.D. Cal. May 16, 1994). The Payment Promise is neither outrageous nor generalized—it is specific and expected and would be understood by any reasonable advertiser to mean that "they would only be charged for genuine engagement by members of LinkedIn's high-quality, professional audience." SAC ¶ 152; *see also Twitter Inc.*, 476 F. Supp. 3d at 983–84 (finding that, when faced with similar statements, "[a] reasonable advertiser would understand these statements to mean that they would not be charged—or would be offered a refund—for interactions Twitter knew involved an automated account").

Finally, LinkedIn argues that a reasonable consumer would not be deceived by the Payment Promise because of an ambiguous disclaimer buried the Ads Agreement. Mot. at. 16. LinkedIn assumes that a reasonable advertiser would click the hyperlink to the Ads Agreement, go to a separate webpage, and review the entirety of the agreement in order to correct the prominent misstatement. But this argument ignores well-settled law: "reasonable consumers should not be expected to look beyond misleading representations … to discover the truth," *Williams*, 552 F.3d at 939, and qualifying language cannot cure a misleading statement if "that language does not appear immediately next to the representation that it purportedly qualifies." *Kang v. P.F. Chang's China Bistro, Inc.*, 844 F. App'x 969, 972 (9th Cir. 2021). Courts do not permit companies "to make misleading statements … while simultaneously disclaiming [them] to avoid judicial scrutiny on a motion to dismiss." *Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1084–85 (S.D. Cal. 2019); *see also Singh v. Google LLC*, 824 F. App'x 512, 514 (9th Cir. 2020) (reasonable consumer could rely on extra-contractual misstatements despite express contractual disclaimer);

---

[2] "Courts often turn to dictionaries to determine the plain, unambiguous, and common meaning of terms." *U.S. v. Wealth & Tax Advisory Servs., Inc.*, 526 F.3d 528, 530 (9th Cir. 2008).

1  *Broberg v. The Guardian Life Ins. Co. of Am.*, 171 Cal. App. 4th 912, 922–23 (2009) (effect of a

2  disclaimer "buried in a sea of same-sized, capitalized print[ ]" could not be decided on a motion

3  to dismiss). Again, LinkedIn cites no contrary authority.

4      But even if LinkedIn's disclaimer was conspicuously proximate to the Payment Promise,

5  the disclaimer is ambiguous and cannot negate the unambiguous Payment Promise. Judge Alsup

6  recently discarded a near-identical disclaimer because saying that defendant is not "'responsible'

7  for click fraud is not the same as saying it is not *liable* for them." *DotStrategy Co. v. Facebook

8  Inc.*, No. 20-cv-170, 2020 WL 6591366, at *5 (N.D. Cal. Nov. 11, 2020) (emphasis in original).

9      **B.     LinkedIn violated the FAL when it presented inflated forecasted metrics

10             before advertisers initiated their campaigns.**

11      LinkedIn also violated the FAL by presenting forecasted metrics inflated by non-genuine

12  activity during the campaign setup process. SAC ¶¶ 31, 85–107, 121–126. LinkedIn argues that it

13  cannot be liable for these statements because it told advertisers that the forecasted results were

14  "estimates." Mot. at 18. But "estimates can support a claim for fraud," and do not give *carte

15  blanche* to exaggerate. *Thrifty Payless, Inc. v. The Americana at Brand, LLC*, 218 Cal. App. 4th

16  1230, 1238 (2013) (plaintiff "could reasonably rely on [defendant's] estimates due to [defendant's]

17  superior knowledge."); *see also Furla v. Jon Douglas Co.*, 65 Cal. App. 4th 1069, 1080 (1998)

18  ("We cannot say that no reasonable jury could conclude that an 'approximation' of square footage

19  which is wildly exaggerated amounts to an actionable misrepresentation of fact."); *PhotoMedex,

20  Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010) (predictions actionable when "the speaker has

21  knowledge of facts not warranting the opinion") (cleaned up).

22      Here, while advertisers may not have expected the forecasted results to "guarantee

23  performance," they would reasonably have expected the forecasts to reflect estimates of *genuine*

24  activity. SAC ¶ 165. Put differently, Plaintiffs do not allege that LinkedIn is liable for the actual

25  performance of their campaigns falling short of the forecasted results—they allege that LinkedIn

26  is liable for inflating those forecasted results and inducing them into purchasing ads. *Id.* ¶¶ 72–73.

27

28

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS
CASE NO.: 5:20-cv-08324-SVK

LinkedIn's two cited cases do not change this analysis. Both involved clarifying statements that dispelled any possibility of deception. *Bobo v. Optimum Nutrition, Inc.*, No. 14-cv-2408, 2015 WL 13102417, at *4 (S.D. Cal. Sept. 11, 2015) ("100% Whey" not misleading when accompanied by the statements "100% of the protein whey" and "naturally and artificially flavored"); *Freeman v. Time, Inc.*, 68 F.3d 285, 286–90 (9th Cir. 1995) (statement that plaintiff won a sweepstakes not misleading when the "promotions expressly and repeatedly state the conditions which must be met in order to win"). LinkedIn's "clarifying" statement—that forecasts are estimates—in no way informs advertisers that those estimates include rampant non-genuine activity.[3]

## II. Plaintiffs have standing to maintain their UCL claims.

LinkedIn once again argues that Plaintiffs cannot invoke the protection of the UCL because they are "businesses in contractual relationships with LinkedIn." Mot. at 7. This argument fails for three reasons: 1) the UCL's plain language allows suit by any corporation that has lost money or property; 2) even under LinkedIn's reading of the UCL, small businesses like Plaintiffs have standing; and 3) Plaintiffs allege harm to the public.

### A. Plaintiffs have UCL standing because they lost money.

LinkedIn's standing argument fails because "nothing in the UCL's text limits claims only to consumers or competitors." *BladeRoom Grp. Ltd. v. Facebook, Inc.,* 219 F. Supp. 3d 984, 995 (N.D. Cal. 2017) (citing *In re Pomona Valley Med. Grp.*, 476 F.3d 665, 675 (9th Cir. 2007)); *In re Tobacco II Cases*, 207 P.3d 20, 32 (Cal. 2009) (UCL standing provisions governed by plain meaning). Rather, the UCL applies "to any person who has suffered injury in fact and has lost money or property," and the "term 'person' includes 'corporations.'" *Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, No. 12-cv-4000, 2015 WL 6638929, at *4 (N.D. Cal. Oct. 30, 2015) (citing Cal. Bus. & Prof. Code §§ 17201, 17204). Here, Plaintiffs can seek relief under the UCL because they lost money as a result of LinkedIn's unfair competition. SAC ¶¶ 108–115; 127–135.

---

[3] Whether the forecasted results were deceptive is at least a question of fact. *See Sultanis v. Champion Petfoods USA Inc.*, No. 21-cv-162, 2021 WL 3373934, at *11 (N.D. Cal. Aug. 3, 2021); *Anthony v. Pharmavite*, No. 18-cv-2636, 2019 WL 109446, at *4 (N.D. Cal. Jan. 4, 2019) ("[I]t cannot be concluded as a matter of law that the substance of the disclaimer … would be sufficient to disabuse the consumer of any misconceptions engendered by the [statement].").

LinkedIn's argument depends on a California appellate decision, *Linear Tech. Corp. v. Applied Materials, Inc.*, and its progeny, which barred "sophisticated corporate customers" from pursuing UCL claims. 152 Cal. App. 4th 115, 135 (2007). However, *Linear Tech* ignored the UCL's plain text by relying on cases predating the UCL's amendment by Proposition 64, before which any uninjured corporation could sue with "virtually the only limitation on such actions [being] the plaintiff must be acting on behalf of 'itself, its members or the general public.'" *Rosenbluth Internat., Inc. v. Superior Ct.*, 101 Cal. App. 4th 1073, 1075 (2002), *as modified* (Sept. 11, 2002) (quoting former Cal. Bus. & Prof. Code § 17204). With uninjured private litigants no longer able to pursue claims on behalf of the public, *Linear Tech* and its progeny have no bearing on UCL standing. *See In re Yahoo! Litig.*, 251 F.R.D. 459, 474–75 (C.D. Cal. 2008) (*Linear Tech* "appears not to have recognized the apparent change in the UCL's standing requirement").[4]

### B. Plaintiffs have UCL standing because they are small businesses.

Even if *Linear Tech* remains good law, its standing restriction applies only to large, sophisticated corporations. *See AdTrader*, 2019 WL 1767206, at *10.[5] Indeed, the UCL is a critical tool for small businesses where, as here, Plaintiffs allege that the defendant engaged in a broad "scheme" of deceptive practices, SAC ¶¶ 191–98, and the unfair competition is "not limited to the parties' contractual relationship." *Circle Click*, 2015 WL 6638929, at *5.

In accordance with the Court's Order, Plaintiffs' SAC "establish[es] that they are small and/or unsophisticated entities." Order at 6. Specifically, Noirefy has only two full-time employees, and TopDevz typically has approximately 150 workers and only three full-time employees. SAC ¶¶ 82, 117, 174.[6] Based on their employee headcounts, both Plaintiffs qualify as

---

[4] The UCL standing provision's plain language and the California Supreme Court's instruction to adhere to that language, *see In re Tobacco II Cases*, 207 P.3d 20, 32 (Cal. 2009), is "convincing evidence" that the California Supreme Court would not follow *Linear Tech. PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, 884 F.3d 812, 824 (9th Cir. 2018).
[5] LinkedIn's reliance on *In re Webkinz Antitrust Litigation*, 695 F.Supp.2d 987 (N.D.Cal.2010) is unpersuasive. That case pre-dates *AdTrader*, which held that standing "turns on whether Plaintiffs are sophisticated or large corporations or rather small and unsophisticated entities." No. 17-cv-7082, 2019 WL 1767206, at *10 (N.D. Cal. Apr. 22, 2019).
[6] LinkedIn contends that Noirefy's allegations are deficient because they do not plead how many part-time or contract workers Noirefy has, if any. Mot. at 10. Such a challenge is improper on a

small businesses on LinkedIn's platform. *Id*. ¶¶ 24, 84, 118. Neither Plaintiff has an in-house ad analytics department or expert. *Id*. ¶¶ 83, 117. Moreover, unlike the *Linear Tech* plaintiffs, all advertisers agreed to form contracts with LinkedIn, SAC ¶ 25, "not individually negotiated contracts between sophisticated entities." *Circle Click*, 2015 WL 6638929, at *5. Together, Plaintiffs' allegations establish that they are not like *Linear Tech*'s "sophisticated corporate customers who have entered or will enter *their own contracts* with" defendants, *Ewert v. eBay, Inc.*, No. 07-cv-2198, 2010 WL 4269259, at *9 (N.D. Cal. Oct. 25, 2010), but are instead "small entities" entering into adhesion contracts with LinkedIn. *AdTrader*, 2019 WL 1767206, at *10. At the very least, Plaintiffs' allegations are sufficient to withstand a motion to dismiss, where a company's "relative level of sophistication may be a question of fact." *Id*.

LinkedIn's suggestion that the class may include large, sophisticated advertisers does not deprive these plaintiffs of standing to pursue their claims, because "the proposed class of plaintiffs is not necessarily so uniformly sophisticated and capable of seeking relief against defendants." *See In re Yahoo! Litig.*, 251 F.R.D. 459, 474–75 (C.D. Cal. 2008). Moreover, "the due process concerns raised in *Rosenbluth* and *Linear Technology*,"—that representative UCL claims would limit the relief available to the large, sophisticated absent parties—"are inapplicable. If a class were to be certified under Rule 23(b)(3), class members would be given notice and have the opportunity to opt out." *Ewert*, 2010 WL 4269259, at *9; *see also Circle Click Media LLC*, 2015 WL 6638929, at *4–5.

## C.    Plaintiffs' UCL claims will protect individual consumers.

Plaintiffs also plead a connection between their UCL claims and the protection of the public. Such a connection exists where corporate UCL plaintiffs conduct business through an online platform, execute form contracts with the platform purveyor, and interact with consumers on the platform. *See, e.g., Free Range Content, Inc. v. Google Inc.*, No. 14-cv-2329, 2016 WL 2902332, at *17 (N.D. Cal. May 13, 2016) (Google ad publishers had standing because "the

---

Rule 12(b)(6) motion, where the Court "draws all reasonable inferences in favor of the plaintiff." *Ass'n for Los Angeles Deputy Sheriffs v. City of Los Angeles*, 648 F.3d 986, 991 (9th Cir. 2011).

interests of individual consumers are implicated because consumers may be harmed if a Publisher who caters to their interests is terminated."); *Ewert*, 2010 WL 4269259, at *9 (eBay sellers had standing because their use of eBay's platform "involve[d] individual consumers").

The same is true here: Plaintiffs execute form contracts with LinkedIn to place ads, through which they interact with consumers on LinkedIn's platform. SAC ¶¶ 24–37. Indeed, Plaintiffs' UCL claims center on consumers' engagement with their ads, and LinkedIn's inflation of that engagement. *Id*. ¶¶ 49–68. Plaintiffs further allege that LinkedIn's metric inflation impeded TopDevz from connecting with individuals through its recruiting efforts, *id*. ¶ 79, and Noirefy from addressing social inequalities. *Id.* ¶ 80. Thus, as in *Free Range* and *Ewert*, Plaintiffs have standing because their UCL claims implicate the interests of individual consumers.

## III.    Plaintiffs sufficiently plead their FAL and UCL claims.

LinkedIn contends that Plaintiffs' deception claims under the FAL and UCL fail to satisfy Rule 9(b). Mot. at 18.[7] But under that rule, Plaintiffs need not "present a detailed exposé in their complaint." *Brickman v. Fitbit, Inc.*, No. 15-cv-2077, 2016 WL 3844327, at *2 (N.D. Cal. July 15, 2016). Rather, they must only be "specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny they have done anything wrong." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th Cir. 2010). "So long as a plaintiff's complaint puts the defendant on notice of the alleged misrepresentations that form the basis of the plaintiff's claims, the plaintiff need not plead damages or reliance in accordance with the heightened standards of Rule 9(b)." *In re Google AdWords Litig.*, No. 08-cv-3369 JW, 2011 WL 7109217, at *3 (N.D. Cal. Mar. 17, 2011). Plaintiffs more than meet this standard.

### A.    Plaintiffs specify LinkedIn's misrepresentations.

In accordance with the Court's order to detail "the substance of any particular representation" and "when or by whom it was made," Order at 11, Plaintiffs detailed LinkedIn's misrepresentations at every stage of the advertising process. SAC ¶¶ 24–37, 85–107, 119–26. In

---

[7] LinkedIn does not challenge the sufficiency of Plaintiff's UCL unfairness allegations, instead only challenging their UCL standing and their ability to maintain equitable claims under *Sonner.*

response, LinkedIn ignores the allegations and parrots the arguments made in its prior Motion.

As an initial matter, LinkedIn has not challenged the specificity of the Payment Promise. Nor could it. Plaintiffs have alleged that every LinkedIn advertiser was told they would "only pay when someone clicks your ad," *id*. ¶¶ 33, 89, 120, and that they took that promise at face value: they would only pay when people engaged with their ads. *Id*. ¶¶ 177.

LinkedIn's primary challenge is to the specificity of the forecasted results Plaintiffs relied on. But for each ad campaign, Plaintiffs have alleged:

- **Who**: LinkedIn, *id.* ¶¶ 31, 72–73;

- **What**: reported exaggerated forecasted metrics for each campaign, based on inflated metrics used to generate forecasted results in simulated second price auctions, *id.* ¶¶ 31, 72–73, 85–88, 91, 93, 96, 98–101, 103, 105–07, 119, 122, 124, 126;

- **When**: on the date on which each plaintiff launched each campaign, *id.* ¶¶ 73, 85–88, 91, 93, 96, 98–101, 103, 105–07, 119, 122, 124, 126;

- **Where**: in campaign manager throughout the process of creating and launching an ad in a box labeled "forecasted results," *id.* ¶¶ 31, 72–73, 85–88, 91, 93, 96, 98–101, 103, 105–07, 119, 122, 124, 126;

- **How**: deceiving advertisers and inflating their willingness to pay the Rates bid for each campaign, *id.* ¶¶ 72–73, 110–12, 129–31, 178, 186, 187.

With these Rule 9(b) requirements met, LinkedIn knows exactly which "misrepresentations form the basis of [Plaintiffs'] claims." *Google AdWords.*, 2011 WL 7109217, at *3.

LinkedIn faults plaintiffs for not identifying the precise values for each forecasted metric. But Rule 9(b) does not require numerical precision regarding fraudulent transactions. *See, e.g., Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) ("We decline to require that a complaint must allege specific shipments to specific customers at specific times with a specific dollar amount of improperly recognized revenue.") (cleaned up); *Figy v. Lifeway Foods, Inc.*, No. 13-CV-04828–TEH, 2016 WL 4364225, at *5 (N.D. Cal. Aug. 16, 2016) ("declin[ing] to require plaintiffs to allege a specific date of purchase" to sustain fraud claims and collecting cases). This is especially true when the details, such as the precise forecasted figures, are exclusively in defendant's control. *See Rubenstein*, 687 F. App'x at 567–68. Here, by identifying the transactions at issue and the

metrics displayed during those transactions to the greatest extent possible, Plaintiffs have met their burden of "specifically plead[ing] those facts surrounding alleged acts of fraud to which they can reasonably be expected to have access." *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995). With that information, LinkedIn knows precisely which forecasted results are at issue and "can prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989).

LinkedIn's challenge to the specificity of the actual metrics relied on by Plaintiffs is even more tenuous. Plaintiffs have alleged *every* ad metric they viewed for *every* campaign they launched. As with the forecasted metrics, Plaintiffs have alleged:

- **Who**: LinkedIn, SAC ¶¶ 38, 39, 185;

- **What**: reported real-time reported metrics for each campaign for each plaintiff were inflated by metric errors and non-genuine user engagement, *id*. ¶¶ 49–68, 90, 92, 95, 97, 102, 104, 106, 121, 123, 125, 185;

- **When**: on the date on which each plaintiff launched each campaign, *id*. ¶¶ 90, 92, 95, 97, 102, 104, 106, 121, 123, 125;

- **Where**: on the home page of plaintiffs' campaign manager accounts, *id*. ¶¶ 90, 92, 95, 97, 102, 104, 106, 121, 123, 125;

- **How**: deceiving advertisers and inflating their willingness to pay for each campaign. *Id*. ¶¶ 72–73, 110–12, 129–31, 178, 186, 187.

Less specific allegations of misstated ad metrics have satisfied Rule 9(b). *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1245 (N.D. Cal. 2017). In *Letizia*, Facebook faulted Plaintiffs for their failure to identify metrics with specificity. *Id*. The court disagreed, finding the allegations—which did not even identify the advertising transactions at issue—sufficient. *Id*. Even LinkedIn's cited cases confirm that where, as here, plaintiffs have alleged the "who, what, when, where, and how of the misconduct alleged," the pleading satisfies Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009); *see also Sciacca v. Apple, Inc.*, 362 F. Supp. 3d 787, 798 (N.D. Cal. 2019) (identification of "promotional materials on Apple's website" insufficient under Rule 9(b)).

Here, Plaintiffs have gone a step further and provided screenshots of the metrics displayed in their campaign manager accounts while launching new campaigns. SAC ¶¶ 90–106, 121–25. In

response, LinkedIn argues only that the screenshots are "substantially similar," but not identical, to the screens displayed to Plaintiffs at the time of purchase. Mot. at 20. LinkedIn would require Plaintiffs to have taken screenshots of their accounts contemporaneously with each transaction in case they later had to sue for deceptive practices. Such a baseless requirement would "make Rule 9(b) carry more weight than it was meant to bear." *Cooper*, 137 F.3d at 627; *see also Twitter Inc.*, 476 F. Supp. 3d at 983–84 ("True, dotStrategy has not identified what interactions with the 480 deleted accounts it was charged for or which deleted accounts were bots. But that imprecision must be excused because the information that could fill the gap is a 'matter[ ] within the opposing party's knowledge.'") (quoting *Moore*, 885 F.2d at 540).

### B. Plaintiffs plead reliance with sufficient specificity.

In arguing that Plaintiffs' allegations of reliance are insufficient, LinkedIn misstates the law and, once again, ignores the allegations in the SAC. First, LinkedIn asserts that Rule 9(b) extends to the element of reliance. Mot. at 21. But that issue is not settled in this Circuit, and LinkedIn ignores the many cases correctly holding the opposite: that plaintiffs "need not plead damages or reliance in accordance with the heightened standards of Rule 9(b)." *Google AdWords*, 2011 WL 7109217, at *3; *accord Anthony v. Yahoo Inc.*, 421 F. Supp. 2d 1257, 1264 (N.D. Cal. 2006*); Landmark Screens, LLC v. Morgan, Lewis & Bockius LLP*, No. 08-cv-2581 JF, 2009 WL 160214, at *8 (N.D. Cal. Jan. 20, 2009).

Regardless, Plaintiffs satisfy Rule 9(b) by alleging that they "saw the specific misrepresentation at issue and actually relied on it." *Letizia*, 267 F. Supp. 3d at 1243. Both Plaintiffs allege that their CEOs, like all advertisers, read LinkedIn's representation that they would only be charged when "someone" engaged with their ads, SAC ¶¶ 89, 120, and both relied on that representation when purchasing their ad campaigns. *Id*. [8]

---

[8] By contrast, LinkedIn's cited cases involve plaintiffs who did not allege that they saw any particular representation or whose reliance was unreasonable. *See Nabors v. Google, Inc.*, No. 10-cv-3897, 2011 WL 3861893, at *5 (N.D. Cal. Aug. 30, 2011) (plaintiff did not identify representation relied upon); *Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009) (plaintiff did not allege that she saw the representation); *Herskowitz v. Apple Inc.*, 940 F. Supp. 2d 1131, 1147 (N.D. Cal. 2013) (plaintiff did not allege when and where she saw the

Next, Plaintiffs allege that they "viewed and relied on forecasted metrics," and identify the specific forecasted metrics they saw. SAC ¶¶ 85–88, 119. They also allege that they "evaluated the performance metrics for [their] prior campaigns, which they [viewed] in [their] campaign manager account[s]" and provide screenshots of the same. *Id*. ¶¶ 90, 102, 104, 106, 121, 123, 125. Plaintiffs further allege that they "relied on the accuracy of the metrics associated with [their] prior campaigns when deciding whether to launch a subsequent campaign. *Id*. ¶ 91, 93, 103, 107, 122, 124, 126. And there is no question that such reliance was reasonable because "the complexity and novelty" of LinkedIn's pricing mechanism, closed ecosystem, and strict terms prevented Plaintiffs from validating LinkedIn's metrics and meant they "had to rely on the [information] provided by the defendant[]." *Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 827 (N.D. Cal. 2011); SAC ¶¶ 38–42, 51, 67, 154, 16, 179, 184.

Finally, LinkedIn claims that Plaintiffs fail to allege "that they actually saw all of the allegedly inflated metrics." Mot. at 21. But Plaintiffs do so, repeatedly. *See, e.g.*, SAC ¶¶ 88, 93, 100, 101, 103, 107, 121, 123, 125. Thus, crediting the SAC's allegations, as is required, Plaintiffs have sufficiently alleged reliance. *See In re Google AdWords Litig.*, 2011 WL 7109217, at *3 (reliance alleged where Plaintiffs claim "that they expended money on advertising that they would not otherwise have spent."); SAC ¶¶ 110, 129 (alleging that plaintiffs "would not have paid the premium prices charged had [they] known that LinkedIn's advertising metrics were inflated").

### C.   Plaintiffs have sufficiently alleged a UCL unlawful-prong claim.

Because Plaintiffs state a claim under the FAL, *see supra* Sec. I, they also state a claim under the UCL's unlawful-prong. *See Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 673 P.2d 660, 668 (Cal. 1983) ("Any violation of the [FAL] ... necessarily violates the" UCL.).

### IV.   Plaintiffs' FAL and UCL claims are not barred by *Sonner*.

### A.   Plaintiffs seek legal restitution.

The Court previously held that "'civil causes of action authorized by the UCL and FAL

---

misrepresentations); *Heredia v. Wells Fargo Bank*, No. 16-cv-2820, 2016 WL 4608238, at *3 (N.D. Cal. Sept. 6, 2016) (plaintiff could not rely on promise defendant never made).

must properly be considered equitable, rather than legal, in nature.'" Order at 8 (quoting *Nationwide Biweekly Admin., Inc. v. Sup. Ct.*, 462 P.3d 461, 488 (Cal. 2020)). But, when a party demands a jury trial in federal court, federal law determines whether the remedy is legal or equitable in order to protect the constitutional right to a jury trial. *See Simler v. Conner*, 372 U.S. 221, 222 (1963); *accord In re Cty. of Orange*, 784 F.3d 520, 528, 530–31 (9th Cir. 2015).[9] In so doing, federal courts consider the "substance of the remedy sought rather than the label placed on" it. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 661 (9th Cir.), *cert. denied*, 140 S. Ct. 223 (2019). Here, because Plaintiffs seek a sum of money, as opposed to a particular piece of property, their claims for restitution are legal. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002); *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 145 (2016); *AcryliCon USA, LLC v. Silikal GmbH*, 985 F.3d 1350, 1374 (11th Cir. 2021); *Williams Elecs. Games, Inc. v. Garrity*, 366 F.3d 569, 576–78 (7th Cir. 2004).

**B.    Plaintiffs' legal remedies are inadequate.**

Even if their UCL and FAL claims are deemed equitable, Plaintiffs' legal remedies are inadequate. The *Sonner* plaintiff sought "the same sum in equitable restitution … as she requested in damages to compensate her for the same past harm." *Sonner*, 971 F.3d at 844. Post-*Sonner* cases confirm that plaintiffs lack adequate legal remedies if the equitable relief "they request would go beyond the damages available to them." *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020); *see also In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-cv-3131, 2021 WL 1176645, at *7 (N.D. Cal. Mar. 29, 2021) (plaintiffs did not "distinguish their request for restitution from their request for damages"); *Williams v. Apple, Inc.*, No. 19-cv-4700, 2020 WL 6743911, at *10 (N.D. Cal. Nov. 17, 2020) (plaintiffs "concede[d] that their FAL and UCL claims are duplicative of their breach of contract claim for money damages") (cleaned up).

---

[9] Applying state law to characterize Plaintiffs' remedies would contravene *Sonner*'s holding that "the traditional principles governing equitable remedies in federal courts … apply when a party requests restitution under the UCL [ ] in a diversity action." 971 F.3d at 844. Defendants cannot avail themselves of the federal common law's adequate remedies doctrine but avoid the federal courts' province over characterizing remedies and protecting the constitutional right to a jury trial.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS
CASE NO.: 5:20-cv-08324-SVK

LinkedIn argues that "Plaintiffs' entire UCL claim is barred" by *Sonner*. Mot. at 11. Plaintiffs' entire UCL and FAL claims, however, seek two unique forms of relief not available under their other claims: 1) public and private injunctive relief needed to prevent future harm, SAC ¶¶ 168, 170, 199, 201; and 2) restitution of the *full* Transaction-Specific and Platform-Based Overcharges to compensate for past harm. *Id.* ¶¶ 167, 170, 198, 201.

For the first form, legal remedies are not "plain, adequate and complete," *Guaranty Trust Co. v. York*, 326 U.S. 99, 105 (1945), because they cannot prevent future harm, unlike the public and private injunctions plaintiffs seek. SAC ¶¶ 168, 199. Where the alleged fraud is ongoing, as here, *id.* ¶¶ 115, 135, "retrospective damages are not an adequate remedy for that prospective harm." *Zeiger v. WellPet LLC*, No. 17-cv-4056, 2021 WL 756109, at *21–22 (N.D. Cal. Feb. 26, 2021) ("An injunction would ensure that [plaintiff] (and other consumers) can rely on [defendant's] representations in the future."); *see also Andino v. Apple, Inc.*, No. 20-cv-1628, 2021 WL 1549667, at *5 (E.D. Cal. Apr. 20, 2021) ("Money damages are an inadequate remedy for future harm, as they will not prevent Defendant from continuing the allegedly deceptive practice."); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-1418, 2021 WL 3621837, at *10–11 (N.D. Cal. Aug. 16, 2021) ("Without an injunction … there is no way the Court can ensure that Thomson Reuters will stop selling Plaintiffs' personal information without their consent.").

Damages are also inadequate to provide complete relief for past harm. Plaintiffs' implied duty and covenant damages "*cannot* be greater than the amount '[plaintiffs] could have gained by the full performance [of contract] thereof on both sides.'" *W. Pac. Elec. Co. Corp. v. Dragados/Flatiron*, No. 18-cv-166, 2021 WL 1534472, at *29 (E.D. Cal. Apr. 19, 2021) (quoting Cal. Civ. Code § 3358). As explained below, had LinkedIn fully performed and used reasonable efforts to exclude non-genuine activity, some (significantly reduced) measure of non-genuine activity still would have remained in its metrics. *See* Section IV.B.1, *infra.* Accordingly, Plaintiffs would not be entitled to recover for *every* instance of non-genuine engagement and *all* accompanying inflation, but only for the *extra* amounts caused by LinkedIn's lack of care. Cal. Civ. Code § 3358; SAC ¶ 201. By contrast, Plaintiffs seek restitution for *all* charges for non-

genuine engagement, SAC ¶ 70, and for *all* price inflation caused by LinkedIn's unfair competition. *Id.* ¶¶ 71, 169, 200. Thus, as depicted in the following chart, Plaintiffs' restitution "request would go beyond the damages available to them," *Anderson*, 500 F. Supp. 3d at 1009.

| | | |
|---|---|---|
| **Full Restitution** | = | All Transaction-Specific Overcharges and all Platform-Based Overcharges |
| **Implied Duty and Covenant Damages** | = | Transaction-Specific Overcharges and Platform-Based Overcharges beyond those expected if LinkedIn had used reasonable care |
| **Remedy available *only* under UCL/FAL** | = | Full Restitution *minus* Implied Contract Damages |

"[T]o permit [LinkedIn's] retention of even a portion of the illicit profits, would impair the full impact of the deterrent force that is essential if adequate enforcement of the law is to be achieved." *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (Cal. 1992) (cleaned up).[10]

In response, LinkedIn argues that Plaintiffs' UCL claim is barred because Plaintiffs "lost money to LinkedIn." Mot. at 11–12. But if *Sonner* precluded UCL claims whenever plaintiffs lost money, UCL claims—and any other claim seeking restitution—could not exist in federal court. *See* Cal. Bus. & Prof. Code § 17204 (limiting UCL standing to those who have "lost money or property as a result of the unfair competition"). While damages may sometimes fully compensate for past harm, *Sonner* did not establish a rule that plaintiffs can *never* bring UCL claims alongside damages claims. *See Anderson*, 500 F. Supp. 3d at 1009 ("It seems entirely possible that the plaintiffs could plead in an amended complaint that they lack an adequate remedy at law."); *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552 (N.D. Cal. 2020) (plaintiff could likely allege an inadequate remedy at law "given the allegations regarding unfair conduct are not otherwise coextensive with plaintiffs' legal claims and given the preliminary stage of these proceedings"). Rather, *Sonner* contemplated that where, as here, UCL claims seek unique relief, legal remedies do not "adequately compensate [plaintiffs'] losses as a result of Defendant's"

---

[10] Plaintiffs' UCL and FAL claims seek only to recover money they and the class paid to LinkedIn. SAC ¶¶ 169, 200. They do not seek nonrestitutionary disgorgement (i.e., "[w]here a benefit has been received by the defendant but the plaintiff has not suffered a corresponding loss or, in some cases, any loss," *Meister v. Mensinger*, 230 Cal. App. 4th 381, 398 (2014)).

wrongful conduct." *N.K. Collins, LLC v. William Grant & Sons, Inc.*, 472 F. Supp. 3d 806, 831 (D. Haw. 2020) (distinguishing *Sonner* and collecting cases).

Next, LinkedIn argues that non-existent claims provide adequate remedies. Specifically, LinkedIn imagines a breach of contract claim that Plaintiffs never brought "in a transparent bid to sidestep the limitation of liability in the Ads Agreement." Mot. at 12. But if Plaintiffs were trying to avoid the Ads Agreement's disclaimer, they would not have alleged implied contract claims. Regardless, LinkedIn has elsewhere insisted that no express contract term obligates LinkedIn to deliver accurate metrics. *See, e.g.*, Mot. at 1:17–2:1, 24:8–9, 24:13–16. Thus, "because neither party appears to dispute that" LinkedIn did not breach an express term, Plaintiffs "have no 'adequate remedy at law' in the form of a breach of contract claim." *Artiste v. Am. Int'l Grp., Inc.*, No. 19-cv-7574, 2020 WL 4037219, at *4 (C.D. Cal. Jan. 23, 2020).

The same is true of Plaintiffs' dismissed common law misrepresentation claims. *See, e.g., Peacock v. 21st Amend. Brewery Cafe, LLC*, No. 17-cv-1918, 2018 WL 452153, at *9 (N.D. Cal. Jan. 17, 2018) (dismissed CLRA claim did not provide an adequate remedy); *Elgindy v. AGA Serv. Co.*, No. 20-cv-6304, 2021 WL 1176535, at *15 (N.D. Cal. Mar. 29, 2021) (remedy inadequate when plaintiffs "stated a claim for fraudulent conduct under the UCL and false advertising under the FAL, but failed to state a claim for common-law fraud"). LinkedIn argued that Plaintiffs' misrepresentation claims offered no basis for relief, and the Court agreed. Dkt. 85 at 10–12.[11] LinkedIn cannot now argue the opposite. *See Morris v. California*, 966 F.2d 448, 452 (9th Cir. 1991) ("[J]udicial estoppel bars a party from taking inconsistent positions in the same litigation.").[12]

Because Plaintiffs lack adequate legal remedies for past and future harm, *Sonner* does not justify dismissal of their UCL and FAL claims.[13] And to the extent LinkedIn seeks dismissal of

---

[11] This distinguishes Plaintiffs' situation from *Sonner*, where the plaintiff had viable damages claims (with relief coextensive with the restitution sought) and abandoned them.

[12] Regardless, public and private injunctive relief to prevent future harm would be unavailable under Plaintiff's dismissed common-law claims or under LinkedIn's unspecified contract claim.

[13] If the Court finds that Plaintiffs have adequate remedies at law, Plaintiffs should be permitted to maintain their UCL claims in the alternative because they can state "as many separate claims or

individual remedies rather than entire claims, it lacks "any basis for dismissal under Rule 12." *Jordan v. United States*, No. 15-cv-1199, 2015 WL 5919945, at *2–3 (S.D. Cal. Oct. 8, 2015); *see also, e.g., Monaco v. Liberty Life Assur. Co.*, No. 06-cv-7021, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007) ("[A] complaint is not subject to a motion to dismiss for failure to state a claim under Rule 12(b)(6) because the prayer seeks relief that is not recoverable as a matter of law.").

## V.   LinkedIn's challenges to Plaintiffs' implied duty claim are waived and deficient.

### A.   LinkedIn waived its right to challenge Plaintiffs' implied duty claim.

When LinkedIn moved to dismiss Plaintiffs' original complaint, it challenged Plaintiffs' claims for breach of the implied duty of reasonable care. *See* Dkt. 29-15, at 17–19. Plaintiffs asserted the same claim in their consolidated complaint, Dkt. 55, but when LinkedIn moved to dismiss that complaint, it did not challenge Plaintiffs' implied duty claim. *See* Dkt. 65-1. Accordingly, the Court's dismissal order neither analyzed nor dismissed the implied duty claim. *See generally* Dkt. 85. Because LinkedIn "asserted and then abandoned" its challenge to the implied duty claim, it is "precluded from resurrecting" those arguments on this or any subsequent motions to dismiss. *Tyler Barnett PR, LLC et al. v. Facebook Inc.*, 16-cv-06232, Dkt. 181 at 4–5 (N.D. Cal. April 25, 2019); *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 135 F. Supp. 3d 1059, 1070–72 (N.D. Cal. 2015) (same). Thus, Plaintiffs' implied duty claim survives the pleading stage.

### B.   LinkedIn breached its duty to use reasonable care in calculating metrics.

Even if LinkedIn's implied duty challenge was not waived, it would fail. California requires parties to use reasonable care when performing contractual duties. *Holguin v. DISH Network LLC*, 229 Cal. App. 4th 1310, 1324 (2014). Here, the Ads Agreement, course of conduct, and industry practice imply a duty for LinkedIn to provide metrics, and to do so with reasonable care.

#### 1.   The Ads Agreement gives rise to an implied duty to calculate metrics and Rates with reasonable care.

LinkedIn contends that "nothing in the Ads Agreement imposes a duty on LinkedIn" to use

---

defenses as [they have], regardless of consistency." Fed. R. Civ. P. 8(d)(3); *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1233–34 (C.D. Cal. 2017).

reasonable care in calculating and charging Plaintiffs for engagement. Mot. at 24. Of course, the implied duty "need not be stated in the agreement" if it is contemplated by the agreement. *Holguin*, 229 Cal. App. at 1324. The Ads Agreement requires advertisers to "agree to pay on the basis and at the rate shown when a campaign, order or other purchase was submitted through your account ('Rate'), e.g., price per impression, click, other conversion, lead or period." SAC ¶ 26. That Rate is "calculated based on LinkedIn's tracking mechanisms." *Id.*, Ex. A, § 3. And LinkedIn encourages advertisers to use metrics "to assess the performance and effectiveness of [their] campaigns and to optimize [their] campaigns." *Id.*, Ex. A, § 4. The Ads Agreement, therefore, "contemplates [LinkedIn's duty to provide advertising metrics," and to charge advertisers based on those metrics. *Letizia*, 267 F. Supp. 3d at 1252.

*Letizia* is instructive. There, a class of advertisers alleged that Facebook inflated its video ad metrics for years. *Letizia*, 267 F. Supp. 3d at 1239–41. Facebook raised similar arguments: that the contracts barred implication of any additional duties; that the plaintiffs failed to plead the duties' source, *id.* at 1249; and that implied duties arise only "out of the express terms of a contract." *Id.* at 1252. Rejecting those arguments, Judge Henderson explained that Facebook had an implied duty to calculate ad metrics with reasonable care "because the contract 'contemplated' the duty, not because the contract contained an express duty to perform." *Id.* The same is true here.

LinkedIn's only cited supporting authority, *Ad Trader I*, undermines its position. LinkedIn cites that case for the proposition that "Plaintiffs 'cannot assert a non-existent implied duty' to state their claim." Mot. at 24 (quoting *AdTrader, Inc. v. Google, LLC*, No. 17-cv-7082, 2018 WL 3428525, at *4 (N.D. Cal. July 13, 2018)). However, in the sentence immediately preceding that quote, the Court explained that "the alleged implied duty [did] not exist because the contract already expressly contain[ed] the purported obligation," meaning the implied duty claim … "would be subsumed in its breach of contract claim." *Id*. Here, by contrast, LinkedIn insists that there is no express term providing that LinkedIn must deliver accurate advertising metrics, *see*, *e.g.*, Mot. at 1:17–2:1, 24:8–9, 24:13–16, hence the need for Plaintiffs to claim breach of the *implied* duty.

Finally, LinkedIn invokes its disclaimer that it is "not responsible for" non-genuine engagement and claims that Plaintiffs seek to impose an extracontractual "duty of perfection." Mot. at 24. Not so. Plaintiffs' implied duty claim is not rooted in LinkedIn's failure to keep *all* non-genuine engagement off its platform, but rather its failure to *use reasonable care* in calculating and reporting the level of genuine engagement. SAC ¶ 210. In other words, if there is non-genuine engagement on the platform, LinkedIn must use reasonable care to exclude it from reported and charged metrics. LinkedIn's disclaimer does not erase that duty, stating merely that LinkedIn will not be "responsible" for click fraud, which "is not the same as saying it is not *liable* for" failing to use reasonable care in calculating metrics. *See DotStrategy Co. v. Facebook Inc.*, 2020 WL 6591366, at *5 (rejecting Facebook's invocation of disclaimer nearly identical to LinkedIn's). Indeed, taken to the extreme, LinkedIn's reading of its disclaimer would allow it to abdicate its duty of care, even if its metrics consisted entirely of non-genuine activity.

### 2. The parties' course of dealing gave rise to an implied duty to provide metrics, and to do so with reasonable care.

Beyond the parties' contracts, the implied duty to perform with reasonable care can arise from implied contractual terms, including those implied by the parties' course of dealing. *Letizia*, 267 F. Supp. 3d at 1253. "Course of dealing" is "a sequence of conduct concerning previous transactions between the parties to a particular transaction that is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." Cal. Com. Code § 1303(b). "Whether a course of dealing exists between parties to a transaction is ordinarily a question of fact," *In re CFLC, Inc.*, 209 B.R. 508, 513 (B.A.P. 9th Cir. 1997) *aff'd* 166 F.3d 1012 (9th Cir. 1999), meaning that it its resolution "on a motion to dismiss is inappropriate." *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039, 1051 (9th Cir. 2011). Nonetheless, LinkedIn contends that Plaintiffs have failed to allege that "LinkedIn promised to adhere to Plaintiffs' specific standards in calculating ad metrics." Mot. at 25.

LinkedIn misses the point. Under California law, the course of dealing itself need not establish the standard of reasonable care. Rather, where course of dealing establishes an implied

term, California law imposes a duty to perform it with reasonable care. *Letizia*, 267 F. Supp. 3d at 1253 (citing *Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 176 F. Supp. 3d 949 (E.D. Cal. 2016)); *see also Holguin*, 229 Cal. App. 4th at 1324. Here, "there is no doubt that [LinkedIn] had been providing advertising metrics to Plaintiffs as part of its advertising services." *Letizia*, 267 F. Supp. 3d at 1253; SAC ¶¶ 90–106, 121–125. Further, Plaintiffs relied on those metrics to guide their subsequent purchases, and LinkedIn intended them to do. SAC ¶¶ 90–106; Ex. A, § 4 ("You may use Ad Services Data … to assess the performance and effectiveness of your campaigns and to optimize your campaigns."). "This course of performance sufficiently supports Plaintiffs' implied duty claim. And under California law, implied duties may be required to be performed with reasonable care." *Letizia*, 267 F. Supp. 3d at 1253.

### 3. Industry practice gives rise to the implied duty.

Industry practice also obligated LinkedIn to provide metrics, and California law implied a duty to do so with reasonable care. "Evidence of custom or standard practice is admissible to interpret the terms of a contract and to imply terms when no contrary intent is apparent from the other terms of the contract." *Midwest Television, Inc*, 205 Cal. App. 3d at 451. "Generally, when there is a custom in a certain industry, those engaged in that industry are deemed to have contracted in reference to that practice unless the contrary appears," and the "industry practice becomes part of the contract." *Id.* Those implied terms must be performed with reasonable care. *Letizia*, 267 F. Supp. 3d at 1253; *Holguin*, 229 Cal. App. 4th at 1324.

Here, industry practice compels provision of ad metrics. LinkedIn's largest competitors provide metrics to their advertisers and charge based on those metrics. *See* SAC ¶¶ 44; *see*, *e.g.*, *Letizia*, 267 F. Supp. 3d at 1253; *DotStrategy Co. v. Twitter*, 476 F. Supp. 3d 983; *Singh v. Google Inc.*, No. 16-cv-3734, 2017 WL 2404986, at *2 (N.D. Cal. June 2, 20217). For ad platforms like LinkedIn, then, it is customary to calculate and provide metrics to advertisers. SAC ¶ 209.

The Ads Agreement fails to evince any "contrary intent" that would negate a duty to provide metrics. If anything, the contract implies such provision, as noted above. *See id.* Ex. A, § 3 ("The amount you owe will be calculated based on LinkedIn's tracking mechanisms."), § 4 ("You may

1    use Ad Services Data … to assess the performance and effectiveness of your campaigns and to

2    optimize your campaigns."). As such, LinkedIn is under a duty to calculate and deliver metrics,

3    and to exercise reasonable care in so doing. *See Midwest Television, Inc.*, 205 Cal. App. 3d at 251;

4    *Letizia*, 267 F. Supp. 3d at 1253 (citing *Holguin*, 229 Cal. App. 4th at 1324).

5      In response, LinkedIn argues only that industry practice cannot imply a term unless it was

6    intended but omitted. Mot. at 25 (citing *Varni Bros. Corp. v. Wine World, Inc.*, 35 Cal. App. 4th.

7    880 (1995)). But *Varni Bros.* does not limit usage of industry custom to instances of forgetfulness

8    and drafting errors, as LinkedIn suggests. Rather, "where the evidence establishes there was no

9    discussion regarding the disputed term by the parties," usage or custom is admissible. *Id.* at 890.

10   That is true even if "there is no specific proof that the particular party to the litigation knew of the

11   custom. The industry practice becomes a part of the contract, and the evidence of such custom is

12   admissible to supply a missing term or to aid in interpretation if it does not alter or vary the terms

13   of the contract." *Midwest Television*, 205 Cal. App. 3d at 451.

14     Given industry custom, advertisers' dependence on platforms for metrics, and LinkedIn's

15   use of form Ads Agreements, it makes sense that the parties would "contract[] in reference to that

16   practice" without discussion. *Id.* The Court should therefore find, as in *Varni Bros.*, that industry

17   custom gives rise to an implied term and triggers a duty to calculate and deliver metrics with

18   reasonable care. *Varni Bros.*, 35 Cal. App. 4th at 890; *see also Letizia*, 267 F. Supp. 3d at 1253.

19       **4.   LinkedIn did not exercise reasonable care in providing metrics.**

20     LinkedIn does not and cannot dispute that, if it had a duty to calculate and deliver ad metrics,

21   Plaintiffs allege that it failed to exercise reasonable care in doing so. *See* Mot. at 24–25. Plaintiffs

22   allege LinkedIn lagged years behind its competitors in appointing a third party to audit its metrics,

23   that it failed to deploy adequate fraud-prevention measures on its platform, and that it admitted to

24   multiple measurement errors. SAC ¶¶ 43–48, 52–55. And, as the Court previously held, Plaintiffs

25   plausibly alleged that those shortcomings give rise to widespread non-genuine engagement that

26   affected Plaintiffs' advertisements. Order at 17. Thus, Plaintiffs have sufficiently alleged that

27   LinkedIn breached its implied duty to use reasonable care in calculating ad metrics.

28

1

2

**C.      LinkedIn breached its covenant of good faith and fair dealing by including rampant non-genuine activity in its metrics.**

3

4

5

6

7

8

9

10

11

In its Order, the Court held that Plaintiffs failed "to identify the term of the contract that gives rise to the implied covenant." Order at 12. Absent such identification, the Ads Agreement's disclaimer barred Plaintiffs implied covenant claim. *Id.* at 12–13. The SAC now alleges that the covenant arises from Section 3 of the Ads Agreement, which provides that Plaintiffs "agree[d] to pay on the basis and at the rate shown when a campaign, order or other purchase was submitted through [their] account" and that "[t]he amount you owe will be calculated based on LinkedIn's tracking mechanisms." SAC ¶ 26; Ex. A, § 3. This provision implies a duty to "do everything that the contract presupposes they will do to accomplish its purpose." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal.App.3d 1371, 1393 (1990) (cleaned up).

12

13

14

15

16

17

18

19

20

Recognizing as much, LinkedIn contends that "the Ads Agreement specifically ***disclaims*** the duty Plaintiffs claim is implied." Mot. at 23 (emphasis in original) (citing *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1042 (N.D. Cal. 2012).[14] However, the covenant of good faith and fair dealing "may not be disclaimed by agreement." Cal. Com. Code § 1302(b); *id.* § 1304. And as noted above, LinkedIn's disclaimer does not absolve it of liability for its substandard efforts in calculating the metrics and the Rates charged. *See DotStrategy Co. v. Facebook*, 2020 WL 6591366, at *5; *DotStrategy Co. v. Twitter*, 476 F. Supp. 3d at 985–96. Accordingly, the disclaimer has no bearing on LinkedIn's implied covenant of good faith and fair dealing, and Plaintiffs' claim survives.

21

**<u>CONCLUSION</u>**

22

As set forth above, Plaintiffs respectfully request that the Court deny LinkedIn's Motion.

23

24

25

26

27

28

---

[14] In the *Apple* case relied on by LinkedIn, however, parents brought implied covenant claims against Apple for in-app purchases that were—unbeknownst to Apple—made by the parents' children without authorization. *Apple*, 855 F. Supp. 3d at 1033. The plaintiffs failed to tether the implied duty to any contractual provision, and Apple's terms plainly made the plaintiffs responsible for controlling access to their accounts. *Id.* at 1042. Here, by contrast, Plaintiffs' claims arise not out of activity on their own accounts, but rather LinkedIn's failure to properly charge Plaintiffs for third parties' activity on LinkedIn's own platform.

Dated: September 14, 2021

Respectfully submitted,

/s/ *Brooke Clason Smith*

Warren Postman (#330869)
 wdp@kellerlenkner.com
Jason Ethridge (*pro hac vice*)
 jason.ethridge@kellerlenkner.com
**KELLER LENKNER LLC**
1300 I Street, N.W., Suite 400E
Washington, DC 20005
Phone: (202) 918-1123
Facsimile: (312) 971-3502

Brooke Clason Smith (*pro hac vice*)
 brooke.smith@kellerlenkner.com
J. Dominick Larry (*pro hac vice*)
 nl@kellerlenkner.com
**KELLER LENKNER LLC**
150 N. Riverside Plaza, Suite 4270
Chicago, IL 60606
Phone: (312) 216-8656
Facsimile: (312) 971-3502

Antonio Romanucci (*pro hac vice*)
 aromanucci@rblaw.net
David Neiman (*pro hac vice*)
 dneiman@rblaw.net
Bryce T. Hensley (*pro hac vice*)
 bhensley@rblaw.net
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Phone: (312) 458-1000
Facsimile: (312) 458-1004

Keith Custis (#218818)
 kcustis@custislawpc.com
**CUSTIS LAW, P.C.**
1875 Century Park East, Suite 700
Los Angeles, CA 90067
Phone: (213) 863-4276
Facsimile: (213) 863-4277

*Attorneys for Plaintiffs and the
proposed Class*

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT LINKEDIN CORPORATION'S MOTION TO DISMISS
CASE NO.: 5:20-cv-08324-SVK