1
2
3
4                        UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6
7    TOPDEVZ, LLC, et al.,                    Case No.  20-cv-08324-SVK
8                       Plaintiffs,
9            v.                               **ORDER ON MOTION TO DISMISS
                                              SECOND AMENDED COMPLAINT**
10   LINKEDIN CORPORATION,                    Re: Dkt. No. 98
11                      Defendant.

12          Plaintiffs, on behalf of a putative class of advertisers, allege that Defendant LinkedIn

13   Corporation overstates the level of actual user engagement with ads placed on the LinkedIn

14   platform in order to overcharge advertisers.  *See* Dkt. 89 (Second Amended Complaint ("SAC")).

15   All Parties have consented to the jurisdiction of a magistrate judge.  Dkt. 10, 13; *see also* Dkt. 52.

16          Now before the Court is LinkedIn's motion to dismiss the Second Amended Complaint

17   pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).  Dkt. 97-98.  The Court deems this

18   motion suitable for determination without oral argument.  Civ. L.R. 7-1(b).  For the reasons that

19   follow, the Court **GRANTS IN PART AND DENIES IN PART** LinkedIn's motion to dismiss.

20   Although the Court rejects certain of LinkedIn's arguments, the result of the rulings below is that

21   all claims in the SAC are dismissed with prejudice.

22   **I.      BACKGROUND**

23          The factual background is discussed in the Court's August 3, 2021 Order on LinkedIn's

24   motions to dismiss and strike the Consolidated Complaint.  Dkt. 85 (the "August 3 Order").  The

25   following procedural background is relevant to the present motion to dismiss the SAC.  This case

26   resulted from consolidation of two cases against LinkedIn:  *TopDevz, LLC and Noirefy, Inc. v.*

27   *LinkedIn Corp.*, No. 5:20-cv-08324-SVK (the "-8324 action") and *Synergy RX PBM LLC v.*

28   *LinkedIn Corp.*, No. 5:21-cv-00513-SVK (the "-0513 action").  *See* Dkt. 52.  Before the cases

were consolidated, LinkedIn filed a motion to dismiss the original complaint in the -8324 action. Dkt. 29 (the "First Motion to Dismiss").  The Court terminated that motion as moot after TopDevz and Noirefy filed a First Amended Complaint (the "FAC").  Dkt.  49, 50.  In the order consolidating the -8324 and -0513 actions, the Court ordered the Plaintiffs to file a consolidated class action complaint.  Dkt. 52.  Plaintiffs thereafter filed the Consolidated Complaint.  Dkt. 55.[1] LinkedIn filed motions to dismiss and strike the Consolidated Complaint.  Dkt. 65, 66.

In the August 3 Order, the Court granted LinkedIn's motion to dismiss the claims in the Consolidated Complaint for violations of California Unfair Competition Law, Cal. Bus. & Prof. C. § 17200, *et seq.* ("UCL"), fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and accounting, and denied LinkedIn's motions to dismiss and strike in other respects.  *Id.*  The Court granted Plaintiffs leave to amend the Consolidated Complaint.  *Id.*  Plaintiffs then filed the SAC.  Dkt. 89. The SAC contains causes of action for:  (1) violation of the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); (2) violation of the California Unfair Competition Law, Cal. Bus. & Prof. C. § 17200, *et seq.* ("UCL"); (3) breach of implied duty to perform with reasonable care; and (4) breach of implied covenant of good faith and fair dealing.  *Id.*

LinkedIn now moves to dismiss the SAC, and Plaintiffs oppose.  Dkt. 97 (Motion), 99 (Opp.), 100 (Reply).

## II.    MOTION TO DISMISS

### A.    LEGAL STANDARD

#### 1.    Rule 9(b)

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Bly-Magee v. California*, 236 F.3d 1014, 1018 (9th Cir. 2001).  A plaintiff alleging fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To satisfy this heightened pleading standard, the allegations must be specific

---

[1] Plaintiff Synergy later voluntarily dismissed its claims without prejudice but stated that it will remain in the action as an unnamed putative class member "to the extent it falls within the class definition."  Dkt. 84.

United States District Court
Northern District of California

enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged "so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citation omitted). Thus, claims sounding in fraud must allege "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (internal quotations marks omitted). In other words, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted). The plaintiff must also set forth "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (internal quotation marks and citation omitted).

### 2. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. In ruling on a motion to dismiss, courts may consider only "the complaint, materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008). In deciding whether the plaintiff has stated a claim, the court must presume the plaintiff's allegations are true and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

To survive a motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

If a motion to dismiss is granted, the court must grant leave to amend unless it is clear that

the complaint's deficiencies cannot be cured by amendment.  *Lucas v. Dep't. of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

### B.    ANALYSIS

LinkedIn's motion to dismiss challenges all four causes of action in the SAC.  The Court now addresses each argument.

#### 1.    UCL Claim

##### a.    Standing

As explained in the August 3 Order, a corporate plaintiff may not bring a UCL claim in connection with a contract not involving either the public in general or individual consumers who are parties to the contract if the corporate plaintiff is a sophisticated or large corporation.  Dkt. 85 at 5-7; *see also Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (Cal. Ct. App. 2007); *AdTrader, Inc. v. Google LLC*, No. 17-cv-07082-BLF, 2019 WL 1767206, at *10 (N.D. Cal. Apr. 22, 2019).  As an initial matter, Plaintiffs suggest that *LinearTech* was incorrectly decided and that all that is required to establish UCL standing is that the plaintiff lost money as a result of the defendant's unfair competition.  Opp. at 8-9.  Plaintiffs have not demonstrated that the Court's analysis of the standing issue in the August 3 Order was incorrect.  Indeed, *In re Yahoo! Litig.*, cited by Plaintiffs in support of their argument (Opp. at 9), echoes this Court's analysis. 251 F.R.D. 459, 475 (C.D. Cal. 2008) ("*LinearTech.* does not necessarily prevent *any* corporate plaintiff from proceeding under the UCL in a case arising from a contract that does not involve either the public or individual consumers*"* because its holding "turn[s] less on the fact that the alleged victims in [the case] were businesses, and more on the fact that these entities were sophisticated…").

In the August 3 Order, the Court held that although the Consolidated Complaint contained certain allegations suggesting that Plaintiffs may be small businesses, Plaintiffs did not plead any facts (such as their employee headcounts or other attributes) establishing that they are small and/or unsophisticated entities.  Dkt. 85 at 6.  The Court also rejected Plaintiffs' argument that they had pleaded a connection to the public interest because the allegations of harm to the public in the Consolidated Complaint were vague and conclusory.  *Id.* at 6-7.  The Court gave Plaintiffs leave to

United States District Court
Northern District of California

1   amend their complaint to attempt to address these deficiencies.  *Id.* at 7.

2        In moving to dismiss the SAC, LinkedIn again argues that Plaintiffs cannot invoke the

3   protections of the UCL because the Plaintiffs are companies litigating commercial disputes, not

4   consumers or members of the public that the UCL is meant to protect.  Motion at 7-11.  LinkedIn

5   first argues that the SAC still does not contain factual allegations showing that Plaintiffs are small

6   and/or unsophisticated.  Motion at 9-11.  Plaintiffs argue that new allegations in the SAC

7   concerning their employee headcount, lack of in-house ad analytics departments or experts, and

8   agreement to enter into form contracts with LinkedIn (rather than individually-negotiated

9   contracts) sufficiently establish at the pleading stage that they are not large, sophisticated

10  corporate customers.  Opp. at 9-10; *see also* SAC ¶¶ 81-84, 116-118.  The Court finds these

11  allegations sufficient at the pleading stage.  Although some members of the class, which is defined

12  to include all persons or entities who paid for the placement of advertisements on LinkedIn (SAC

13  ¶ 137), may be large and/or sophisticated corporations, it is unclear at present whether such

14  entities constitute a significant portion of the class, and thus on the present record the Court cannot

15  conclude that Plaintiffs lack standing to proceed on their UCL claims.

16       As the Court's August 3 Order explained, the requirement that a corporate plaintiff be

17  small and/or unsophisticated applies only where the contract at issue does not involve either the

18  public in general or individual consumers who are parties to the contract.  Dkt. 85 at 5-6.

19  LinkedIn argues that Plaintiffs have again failed to plead a connection to public protection.

20  Motion at 7-9.  Plaintiffs counter by arguing that they have pleaded a connection between their

21  UCL claims and the protection of the public because they entered form contracts with LinkedIn to

22  place ads "through which they interact with consumers on LinkedIn's platform."  Opp. at 10-11

23  (citing SAC ¶¶ 24-37).  They allege that LinkedIn's metric inflation "impeded TopDevz from

24  connecting with individuals through its recruiting efforts" and "Noirefy from addressing social

25  inequalities," apparently by wasting Plaintiffs' advertising budgets on overcharges and thereby

26  impeding their ability to place additional ads.  Opp. at 11 (citing SAC ¶ 79-80).  The Court finds

27  these allegations of a tenuous relationship between the contracts at issue and the public interest

28  insufficient to establish that this case involves the public in general or individual consumers.

United States District Court
Northern District of California

1    Accordingly, although the Court finds that Plaintiffs have failed to establish that the

2    contracts at issue involve the public interest, the Court concludes that Plaintiffs have standing to

3    pursue an UCL claim because they have pleaded facts sufficient to demonstrate, at this stage of the

4    litigation, that they are small and/or unsophisticated entities.

5                              **b.       Adequate Remedy at Law**

6    LinkedIn argues that even if Plaintiffs have standing to assert a UCL claim, the UCL claim

7    in the SAC is barred because Plaintiffs have again failed to plead that they lack an adequate

8    remedy at law.  Motion at 11-14.  As explained in the August 3 Order, to plead a claim under the

9    UCL, Plaintiffs must plead that they lack an adequate remedy at law.  Dkt. 85 at 7-9; *see also*

10   *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020) (a plaintiff "must establish

11   that she lacks an adequate remedy at law before securing equitable restitution for past harm under

12   the UCL and CLRA [Consumers Legal Remedies Act]").  The Court dismissed Plaintiffs' UCL

13   claim with leave to amend because although Plaintiffs characterized their UCL claim in the FAC

14   as seeking a legal restitutionary remedy, "nowhere in the complaint do Plaintiffs allege that the

15   damages they seek are inadequate or otherwise distinguish their request for restitution from their

16   request for damages."  Dkt. 85 at 8.  The Court also instructed that if in their SAC Plaintiffs

17   sought to plead that their UCL claims seek unique relief beyond their other claims, "they should

18   be prepared to address the principle that 'nonrestitutionary disgorgement is not available under the

19   UCL.'"  *Id.* (quoting *In re California Gasoline Spot Market Antitrust Litig.*, No. 20-cv-03131-JSC,

20   2021 WL 1176645, at *8 (Mar. 29, 2021)).

21   According to LinkedIn, it is clear from the face of the SAC that Plaintiffs seek damages as

22   a remedy for LinkedIn's alleged overcharges.  Motion at 12.  Moreover, LinkedIn argues that

23   damages are available to Plaintiffs under other theories, whether or not such theories are pleaded

24   in the SAC.  *Id.* at 12-13.

25   Plaintiffs reiterate the argument they made in opposition to the previous motion to dismiss

26   that their UCL claim, in addition to their new FAL claim, are legal rather than equitable "because

27   Plaintiffs seek a sum of money, as opposed to a particular piece of property."  Opp. at 16.

28   However, as the Court noted in the August 3 Order, "the California Supreme Court recently

United States District Court
Northern District of California

1   confirmed, 'civil causes of action authorized by the UCL and FAL must properly be considered

2   equitable, rather than legal, in nature.'" Dkt. 85 at 8.  Plaintiffs have not shown this conclusion to

3   be in error, and the Ninth Circuit has recently reaffirmed that "[e]quitable remedies (injunctive

4   relief, restitution, and civil penalties) are the only remedies available under California Business

5   and Professions Code §§ 17200-17210."  *Adir Int'l, LLC v. Starr Indemnity and Liability Co.*, 994

6   F.3d 1032, 1043 (9th Cir. 2021).

7        Plaintiffs also argue that even if their UCL and FAL claims are deemed equitable, their

8   legal remedies are inadequate because the equitable relief they seek goes beyond the damages

9   available to them.  *Id.*  Plaintiffs contend that they seek two unique forms of relief under their

10  UCL claims:  (1) restitution of the full Transaction-Specific and Platform-Based Overcharges to

11  compensate for past harm;[2] and (2) public and private injunctive relief to prevent future harm.  *Id.*

12  at 17.

13                      **i.      Restitution**

14       LinkedIn argues that Plaintiffs cannot show their legal remedies are inadequate because it

15  is clear from the face of the SAC that Plaintiffs seek damages, even if they label their claims as

16  seeking restitution.  Motion at 12.  LinkedIn is correct that recovery of damages is available under

17  a claim for breach of the implied covenant of good faith and fair dealing, which is one of

18  Plaintiffs' claims in the SAC.  *See Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal.

19  July 14, 2016).  Plaintiffs argue that their legal remedies are nevertheless inadequate because they

20  seek restitution for *all* charges for non-genuine engagement and for *all* price inflation caused by

21  LinkedIn's alleged conduct, whereas they would only be entitled to recover under their implied

22  duty and covenant theories for the "*extra* amounts caused by LinkedIn's lack of care."  Opp. at 17-

23  18 (emphasis in original).

24       As a preliminary matter, the Court notes that Plaintiffs' suggestion that they are entitled to

25

26  ――――――――――――――

27  [2] The SAC alleges that "Transaction-Specific Overcharges occurred when advertisers were charged for impressions, views, or clicks that should not have been charged." SAC ¶ 70.  The SAC further alleges that "[i]n contrast to these Transaction-Specific Overcharges, Platform-Based

28  Overcharges resulted from the effect of inflated LinkedIn ad metrics on aggregate demand across the platform, and with it, prices charged across the platform." *Id.* ¶ 71.

1   recovery in restitution for all non-genuine engagement appears inconsistent with the admission in

2   their opposition to the motion to dismiss that "had LinkedIn fully performed and used reasonable

3   efforts to exclude non-genuine activity, some (significantly reduced) measure of non-genuine

4   activity still would have remained in its metrics." Opp. at 17. Plaintiffs do not explain why, if this

5   is the case, they would be entitled to full restitution for all overcharges.

6          In any event, even if Plaintiffs are correct that implied duty and covenant theories do not

7   provide all the same remedies as their restitution claim, this argument does not establish that they

8   lack adequate legal remedies because it ignores other claims that Plaintiffs could have brought.

9   First, Plaintiffs do not refute LinkedIn's argument that the measure of damages for fraud and

10  misrepresentation is equal to or greater than the amount they seek under their restitution theory.

11  *See* Motion at 13; *see also* Cal. Civ. C. § 1709. Plaintiffs' earlier Consolidated Complaint

12  included causes of action for fraudulent misrepresentation, fraudulent concealment, and negligent

13  misrepresentation. Dkt. 55 ¶¶ 167-209. Plaintiffs argue that legal remedies are not available

14  under claims for fraud and misrepresentation because "LinkedIn argued that Plaintiffs'

15  misrepresentation claims offered no basis for relief, and the Court agreed." Opp. at 19. However,

16  although the Court dismissed Plaintiffs' claims for fraud and misrepresentation because Plaintiffs

17  had not satisfied the heightened pleading standards of Rule 9(b), it granted Plaintiffs leave to

18  amend. Dkt. 85 at 10-11. Plaintiffs elected not to include amended fraud or misrepresentation

19  claims in the SAC. "In the Ninth Circuit, the relevant test is whether an adequate damages remedy

20  is available, not whether the plaintiff elects to pursue it, or whether she will be successful in that

21  pursuit." *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2018 WL 510139, at *2 (N.D.

22  Cal. Jan. 23, 2018), *aff'd sub nom. Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir.

23  2020). *Sonner* illustrates this point. In that case, the plaintiff voluntarily abandoned a claim for

24  damages under the CLRA on the eve of trial. *Sonner*, 971 F.3d at 838. The district court held,

25  and the Ninth Circuit agreed, that the plaintiff's equitable claims for restitution were barred

26  because the abandoned CLRA claim offered an adequate legal remedy. *Id.* at 839, 844.

27          LinkedIn also argues that Plaintiffs could have sought legal remedies under a breach of

28  contract theory. Motion at 12-13 (citing *Moss*, 197 F. Supp. 3d at 1203 and *Williams v. Apple,*

United States District Court
Northern District of California

*Inc.*, No. 19-cv-04700-LHK, 2020 WL 6743911, at *9-10 (Nov. 17, 2020)).  Plaintiffs argue that a claim for breach of contract is not viable under the facts of this case and that such a claim therefore does not provide an adequate remedy at law.  Opp. at 19.  Again, however, whether a plaintiff has adequate legal remedies under an unpleaded theory does not depend on whether the plaintiff will be successful under that theory.  *See Moss,* 197 F. Supp. 3d at 1203; *see also Mullins*, 2018 WL 510139, at *2.

Particularly in the procedural context of this case, the conclusory allegation Plaintiffs added to the SAC does not establish that their legal remedies are inadequate.  *See* SAC ¶ 201 ("No legal claim offers relief that would prevent future injuries as the public and private injunctive relief sought herein would do, nor does any legal claim entitle Plaintiffs to restitution of the Transaction-Specific Overcharges combined with Platform-Based Overcharges").  Accordingly, Plaintiffs have failed to sufficiently plead that their legal remedies are inadequate, as required to state a claim under the UCL.

### ii.    Injunctive relief

As to their claim for injunctive relief requiring LinkedIn to audit, improve, and disclose information about its ad metrics (SAC ¶ 199), Plaintiffs argue that their legal remedies are inadequate because such legal remedies cannot remedy prospective harm.  Opp. at 17.  Courts in this District have applied *Sonner* to bar claims for injunctive relief similar to Plaintiffs' claims here.  *See, e.g., Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908-909 (N.D. Cal. 2021); *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020); *see also Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal. 2020).  A UCL claim might survive where the plaintiff has pleaded facts from which it can be inferred that the plaintiff has no factual basis to quantify its actual damages for future harm.  *See IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-cv-05286-PJH, 2020 WL 6544411, at *7 (N.D. Cal. Nov. 6, 2020).  However, the present case is distinguishable because it is not clear from the SAC that "the alleged fraud is ongoing," as Plaintiffs argue in their opposition to the motion to dismiss.  Opp. at 17.  The paragraphs cited by Plaintiffs in support of this statement allege only that Plaintiffs have stopped purchasing ads on LinkedIn but "would like to purchase LinkedIn ads

United States District Court
Northern District of California

9

in the future, based upon accurate metrics and with industry-standard auditing and anti-fraud measures in place." SAC ¶¶ 115, 135. Other allegations of the SAC undercut Plaintiffs' argument that the alleged problems with LinkedIn's ad metrics continue. *See, e.g., id.* ¶ 68 ("LinkedIn waited until November 2020 to announce that it retained the Media Rating Council to 'audit' its metrics"); *see also* Ex. C to SAC (message from LinkedIn informing customers of "two measurement issues that our engineering team discovered in August and have subsequently fixed").

Accordingly, Plaintiffs have not sufficiently pleaded that their legal remedies are inadequate.

### c.   **Conclusion on UCL claim**

For the foregoing reasons, although Plaintiffs have standing to bring a UCL claim, they have failed to plead that their legal remedies are inadequate, as is necessary to state a UCL claim. Accordingly, LinkedIn's motion to dismiss the UCL claims is **GRANTED.**

### 2.   **FAL Claim**

The SAC includes an FAL claim that was not included in Plaintiffs' Consolidated Complaint. California's FAL prohibits false advertising by prohibiting the dissemination of information related to disposal of goods or performance of services that "is untrue or misleading, and which is known, or … should be known, to be untrue or misleading." Cal. Bus. & Prof. C. § 17500. LinkedIn attacks Plaintiffs' FAL claim on several grounds. Motion 14-22.

### a.   **Rule 9(b) specificity**

Underlying some of LinkedIn's arguments concerning the FAL claim is the premise that Plaintiffs fail to plead the FAL claim (as well as the UCL claim, to the extent it is sounds in fraud) with the specificity required under Rule 9(b). Motion at 18-22. Specifically, LinkedIn argues that Plaintiffs have not identified any specific false statements and have not pleaded reasonable reliance with the requisite specificity. *Id.* at 19-20. Plaintiffs do not dispute that Rule 9(b) pleading standards apply to their FAL claim but argue that the SAC satisfies those standards. Opp. at 11-15.

Rule 9(b)'s heightened pleading standard applies to Plaintiffs' FAL claim because the

claim is based on LinkedIn's allegedly fraudulent course of conduct—namely, LinkedIn's alleged misrepresentation that advertisers would be billed based only on "genuine" engagement when in fact the rate charged to advertisers included non-genuine engagement.  *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911 (N.D. Cal. 2020).  Similarly, Rule 9(b) applies to the UCL claim to the extent it sounds in fraud.  *See Arroyo v. Pfizer,* No. C-12-4030 EMC, 2013 WL 415607, at *8 (N.D. Cal. Jan. 31, 2013).  As a result, Rule 9(b) requires Plaintiffs to plead with specificity the "who, what, when, where, and how of the misconduct charged."  *Id.* (citation omitted).

Bearing this standard in mind, the Court turns to LinkedIn's specific arguments regarding deficiencies in the FAL claim.

### i.      Sufficiency of identification of misrepresentations

Plaintiffs' FAL claim is based on three types of statements made by LinkedIn during the process by which advertisers set up ad campaigns:  (1) a statement on the "How billing works" page in LinkedIn Campaign Manager that "[y]ou only pay when someone clicks your ad" (which LinkedIn refers to in its motion to dismiss as the "Billing Statement"); (2) forecasted results; and (3) actual results.  SAC ¶¶ 33-34, 153-162; Motion at 2; Opp. at 12-14.

**Billing Statement:**  LinkedIn does not challenge the specificity with which Plaintiffs identified the Billing Statement promise.  LinkedIn instead argues that the Billing Statement cannot serve as a basis for a FAL claim because it is a contractual term, not an advertisement, but Plaintiffs cite contrary authority.  Motion at 15-16; Opp. at 4-5.  The Court cannot conclude on the present record that the Billing Statement is not, as a matter of law, an advertisement.  LinkedIn also states that Plaintiffs fail to allege that the Billing Statement is shown to advertisers before they decide to place an ad on LinkedIn.  *Id.* at 16.  Again, the Court finds that this issue is not suitable for decision at this stage of the litigation, and concludes that the SAC sufficiently alleges that the Billing Statement appears "before launching [an advertiser's] first campaign" and "[b]efore any advertiser could pay to run an ad on LinkedIn."  SAC ¶¶ 33-34.

LinkedIn also argues that even if the Billing Statement constitutes an advertisement, it is not actionable because it is not likely to deceive consumers into thinking that "'someone' necessarily refers to an individual, as opposed to any actor that might click on an ad."  Motion at

United States District Court
Northern District of California

16-18.  Plaintiffs counter that "any reasonable consumer would understand the word 'someone' to refer to a person" (Opp. at 5), and the SAC alleges that reasonable purchasers of LinkedIn ads, including Plaintiffs "understood LinkedIn's representation that they would only be charged when 'someone' engaged with their ads to mean that they would only be charged for genuine engagement by members of LinkedIn's high-quality, professional audience."  SAC ¶ 152.  Whether deceptive or misleading conduct is likely to deceive is governed by a "reasonable consumer" test, which requires a probability that a significant portion of the general consuming public could be misled.  *Eidmann v. Walgreen Co.,* 522 F. Supp. 3d 634, 643 (N.D. Cal. 2021) (citations omitted).  A FAL claim is subject to dismissal on the grounds that a statement is unlikely to deceive only in "rare situation[s]," such as where "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Williams v. Gerber Products Co.,* 552 F.3d 934, 939 (9th Cir. 2008).  However, in this case the Court cannot conclude at this stage, as a matter of law, that reasonable consumers could not have been deceived by the Billing Statement.

**Forecasted Results:**  With respect to the forecasted results, the Court agrees with LinkedIn that Plaintiffs' allegations do not satisfy the heightened Rule 9(b) pleading standard. The SAC identifies the timeframe in which forecasted results metrics were viewed as well as the individuals who reviewed those metrics for Plaintiffs TopDevz and Noirefy.  *See* ¶¶ 85-107; ¶¶ 119-126.  However, the SAC does not identify the substance of those forecasted results metrics, instead referring only generally to their subject matter, *i.e.,* forecasted spend, impressions, VTR, video views, CTR, CTM, leads, clicks, landing page clicks, and target cost.  *Id.*  These general allegations do not suffice because they "are insufficient to allow defendant to defend against the charge and not just deny that they have done anything wrong."  *Williams*, 449 F. Supp. 3d. at 912 (internal quotation marks and citation omitted).  These forecasted results allegations are distinguishable from the allegations found to satisfy Rule 9(b) specificity requirements in *Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1245 (N.D. Cal. 2017).  In *Letizia,* the complaint challenged specific advertising viewership metrics—the "Average Duration of Video Viewed" and the "Average Percentage of Video Viewed"—which the plaintiffs alleged were inflated by 60 to

80 percent.  *Id.*  Here, by contrast, the SAC identifies only the general subject matter, and not the content, of the allegedly false forecasted results.

Plaintiffs argue that they should not be required to provide "numerical precision" with respect to the forecasted results, particularly where "the details, such as the precise forecasted figures, are exclusively in defendant's control."  Opp. at 12 (citing *Rubenstein v. Neiman Marcus Group LLC*, 687 Fed. Appx. 564, 567-68 (9th Cir. 2017)).  In *Rubenstein*, the plaintiffs alleged that Neiman Marcus Group attached fictitious "Compared To" prices to the goods for sale at its Last Call outlet stores.  687 Fed. Appx. at 566.  The plaintiffs alleged that the Compared To price tags misled consumers into believing the Compared To prices were charged by either Neiman Marcus or other merchants in the vicinity for comparable products.  *Id.* at 567.  The Ninth Circuit held that the particular facts as to whether the Compared To prices were fictitious "are likely only known to Neiman Marcus" and the plaintiffs "cannot reasonably be expected to have detailed personal knowledge of Neiman Marcus's internal pricing policies or procedures for its Last Call stores."  *Id.* at 568.  Here, however, Plaintiffs seek to rely on relaxed Rule 9(b) standards to establish the *content* of the allegedly false statements regarding forecasted results, not just the inaccuracy of those statements.  *See* Opp. at 12-13.  Plaintiffs allege that they saw the forecasted results.  *See, e.g.,* SAC ¶¶ 85-88, 91, 93, 96, 98-101, 103, 105, 107, 119, 122, 124, 126.  Thus, the content of the allegedly false forecasted metrics cannot be said to be solely in the possession of LinkedIn.

Because Plaintiffs have not adequately specified the forecasted results, the Court cannot at this time determine whether, as LinkedIn argues, those statements were not likely to deceive a reasonable consumer.  Motion at 18.

**Actual Results:**  By contrast to Plaintiffs' allegations regarding forecasted results, their allegations regarding LinkedIn's statements of actual results are more specific and include actual screenshots of actual results provided by LinkedIn.  *See, e.g.,* SAC ¶¶ 90, 92, 95, 97, 102, 104, 106, 121, 123, 125.  However, Plaintiffs allege only that the pictured actual results are "substantially similar" to the ones they saw before creating their ad campaigns on LinkedIn.  *Id.* Because Plaintiffs do not provide any additional detail as to how the screenshots are (and are not)

United States District Court
Northern District of California

1    "similar" to the metrics they viewed, and because they do not specifically identify which of the

2    statements of actual results are alleged to be false, they have not satisfied Rule 9(b) pleading

3    standards.  Again, because Plaintiffs have not adequately specified the Actual Results, the Court

4    cannot at this time decide whether those statements were not likely to deceive a reasonable

5    consumer.  *See* Motion at 18.

6                          **ii.        Sufficiency of allegations of reliance**

7          LinkedIn also argues that the FAL claim should be dismissed because Plaintiffs'

8    allegations of reliance are conclusory.  Motion at 21-22.  "Plaintiffs alleging claims under the FAL

9    … are required to plead and prove actual reliance on the misrepresentations or omissions at issue."

10   *Great Pac. Sec. v. Barclays Capital, Inc.*, 743 Fed. App'x 780, 783 (9th Cir. 2018).  Courts in this

11   District have consistently held that to plead reliance in misrepresentation cases, plaintiffs must

12   allege that they actually saw the challenged representations.  *Williams v. Apple*, 449 F. Supp. 3d at

13   913 (citations omitted).  Moreover, to establish actual reliance, the plaintiff "must allege that the

14   defendant's misrepresentation or nondisclosure was an immediate cause of the plaintiff's injury-

15   producing conduct," which the plaintiff may do "by showing that in its absence the plaintiff in all

16   reasonable probability would not have engaged in the injury-producing conduct."  *Id.* at 912-13

17   (internal quotation marks and citations omitted).  "[A] plaintiff need not demonstrate that the

18   defendant's misrepresentations were the sole or even the predominant or decisive factor

19   influencing his conduct" but "the misrepresentations must have played a substantial part in the

20   plaintiff's decision-making."  *Id.* at 913 (internal quotation marks and citations omitted).

21         Applying these principles to this case, the Court finds Plaintiffs' allegations with regard to

22   their reliance on the Billing Statement sufficient because they plead that when their CEOs set up

23   payment credentials for their LinkedIn ad campaigns, they saw and relied on the Billing

24   Statement, and describe the facts and circumstances of setting up the ad campaigns. *See, e.g.,* SAC

25   ¶¶ 89-107, 119-126.  However, because the Court has found Plaintiffs' description of the

26   forecasted results and actual results to be insufficiently specific, the Court will not decide at this

27   time whether Plaintiffs have adequately alleged reliance on those statements.

28   ////

### b. Inadequate remedy at law

LinkedIn also argues that Plaintiffs have not shown that they have an inadequate remedy at law. *Id.* at 14-15. The FAL provides for only equitable relief, so to state an FAL claim, a plaintiff must show that it does not have an adequate remedy at law. *Williams,* 2020 WL 6743911, at *9. For the same reasons discussed above with respect to Plaintiffs' UCL claim, Plaintiffs have failed to adequately plead that they have an inadequate remedy at law. Damages are available under alternative theories. Moreover, although Plaintiffs seek injunctive relief on their FAL claim (SAC ¶ 168), as discussed above they have not alleged continuing injury, nor have they pleaded facts showing that damages would be an inadequate remedy for future injury. An additional obstacle to their claim for injunctive relief on their FAL claim is the difficulty of plausibly alleging reasonable reliance on possible future advertising by LinkedIn in light of Plaintiffs' allegations that LinkedIn's advertising statements in the past have been false. *See Sharma*, 524 F. Supp. 3d at 909.

### c. Conclusion on FAL Claim

For the reasons discussed, although Plaintiffs' allegations regarding the Billing Statement comply with Rule 9(b) requirements, Plaintiffs have failed to show that they have an inadequate remedy at law. Accordingly, LinkedIn's motion to dismiss the FAL claim is **GRANTED.**

### d. FAL as Basis for Claim Under UCL "Unlawful" Prong

In the August 3 Order, the Court held that although the Consolidated Complaint contained passing references to LinkedIn's alleged "unlawful" conduct, those references were conclusory and did not specifically identify the laws LinkedIn is alleged to have violated, as required to state a claim under the UCL's "unlawful" prong. Dkt. 85 at 9-10; *see also In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 841 (N.D. Cal. 2020). As explained in that Order, the UCL permits injured consumers to "borrow" violations of other laws and treat them as unlawful competition that is independently actionable, but "[a] common law violation such as breach of contract is insufficient" as a predicate for a claim under the UCL's unlawful prong. *Id.* at 9.

In the SAC, Plaintiffs now rely on LinkedIn's alleged FAL violation as the predicate for their claim under UCL's "unlawful" prong. SAC ¶ 189. As LinkedIn argues, because Plaintiffs

1  have not adequately pleaded a violation of the FAL, their claim under the UCL's unlawful prong

2  also fails.  Motion at 22.  Accordingly, the motion to dismiss Plaintiffs' claim under UCL's

3  "unlawful" prong is **GRANTED**.

### 3. Breach of the Implied Covenant of Good Faith and Fair Dealing

5  In the August 3 Order, the Court found that "Plaintiffs' claim for breach of the implied

6  covenant of good faith and fair dealing fails to identify the term of the contract that gives rise to

7  the implied covenant."  Dkt. 85 at 12.  In the SAC, Plaintiffs add an allegation that "[t]he payment

8  provision of the LinkedIn Ads Agreement … implies a covenant that LinkedIn would act fairly

9  and in good faith by accurately calculating and charging that rate," which LinkedIn violated by

10  "inclusion of non-genuine engagement in the Rate."  SAC ¶¶ 217-220.

11  Although Plaintiffs now identify the payment provision of the Ads Agreement as the

12  source of the alleged implied covenant of good faith and fair dealing, LinkedIn argues that

13  Plaintiffs have again failed to state a claim for breach of the implied covenant, pointing to the

14  disclaimer in the Ads Agreement that the Court cited in the August 3 Order.  Motion at 23.  In that

15  order, the Court dismissed Plaintiffs' cause of action for breach of the implied covenant of good

16  faith and fair dealing with leave to amend, finding that in light of the express disclaimer in the Ads

17  Agreement that provides that "LinkedIn is not responsible for click fraud, fraudulent leads,

18  technological issues or other potentially invalid activity by third parties that may affect the cost of

19  running Ads,"  Plaintiffs had failed to plead facts in the Consolidated Complaint showing that

20  LinkedIn's alleged acts of calculating and communicating inflated ad metrics breached a duty of

21  good faith and fair dealing.  Dkt. 85 at 14; *see also In re Apple In-App Purchase Litig.,* 855 F.

22  Supp. 2d 1030, 1042 (N.D. Cal. 2012).  As explained in the August 3 Order, "the implied

23  covenant of good faith and fair dealing's application is limited to assuring compliance with the

24  express terms of the contract, and cannot be extended to create obligations not contemplated by

25  the contract."  Dkt. 85 at 12 (quoting *Integrated Storage Consulting Servs., Inc. v. NetApp, Inc.*,

26  No. 5:12-CV-06209-EJD, 2013 WL 3974537, at *7 (N.D. Cal. July 31, 2013) (internal quotation

27  marks and citation omitted)).

28  The disclaimer in the Ads Agreement continues to pose a problem for the breach of

United States District Court
Northern District of California

16

covenant claim in the SAC.  Plaintiffs now state in their opposition to the motion to dismiss that even if LinkedIn had "fully performed the contract and used reasonable efforts to exclude non-genuine activity," some measure of non-genuine activity still would have remained in its metrics. Opp. at 17.  Plaintiffs assert, however, that the inclusion of non-genuine activity would be "significantly reduced" if LinkedIn performed its duties.  *Id.*; *see also id.* at 22 (stating that Plaintiffs' claim for breach of the implied duty of reasonable care "is not rooted in LinkedIn's failure to keep *all* non-genuine engagement off its platform, but rather its failure to use *reasonable care* in calculating and reporting the level of genuine engagement").  However, Plaintiffs' effort to refocus their claim does not appear in the allegations of the SAC, which continues to assert that LinkedIn breached the implied covenant by charging for "non-genuine engagement" rather than only "engagement with their intended, human audience."  SAC ¶¶ 218-220.

Accordingly, the motion to dismiss the claim for breach of the covenant of good faith and fair dealing is **GRANTED.**

### 4.  Claim for Breach of Implied Duty of Reasonable Care

LinkedIn argues that Plaintiffs' claim for breach of the implied duty of reasonable care should be dismissed because they have not adequately identified the source of the implied duty to provide "accurate ad metrics."  Motion at 24 (quoting SAC ¶¶ 208-211).  LinkedIn acknowledges that Plaintiffs identify three sources give rise to the implied duty:  (1) the LinkedIn Ads Agreement; (2) LinkedIn's course of conduct; and (3) industry practice.  Motion at 24 (citing SAC ¶¶ 208-11).  However, LinkedIn argues that Plaintiffs' allegations are insufficient.  *Id.*

Plaintiffs argue that LinkedIn waived this argument.  Opp. at 20.  LinkedIn attacked the claim for breach of implied duty in the original Complaint (Dkt. 29-1 at 18-19) but did not attack the same claim in its motion to dismiss the Consolidated Complaint (Dkt. 65-1).  Under Federal Rules of Civil Procedure 12(g)(2) and (h)(2), "a party that seeks to assert a defense that was available but omitted from an earlier Rule 12 motion can only do so in a pleading, a Rule 12(c) motion, or at trial," but not in a motion to dismiss under Rule 12(b)(6).  *Northstar Fin. Advisors Inc. v. Schwab Investments*, 135 F. Supp. 3d 1059, 1070 (N.D. Cal. 2015).  However, the Ninth Circuit has endorsed "a more flexible and efficiency-oriented view of a district court's ability to

review arguments for the first time in a second motion to dismiss." *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 1456678, at *2 (N.D. Cal. Mar. 23, 2018) (citing *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017)).  Under this approach, "[o]ther courts in this district have also considered second motions to dismiss raising new arguments where doing so would serve the interests of judicial economy." *Symantec*, 2018 WL 1456678, at *2 *and cases cited therein.*  Here, if the Court were to conclude that LinkedIn waived this argument, LinkedIn could raise it by a motion for judgment on the pleadings or other motion.  *See Apple iPhone Antitrust Litig.,* 846 F.3d at 318.  The Court concludes that under the circumstances of this case, including the fact that Plaintiffs amended their breach of implied duty claim before including it in the SAC (*see* Dkt. 91), the Court will consider LinkedIn's arguments for dismissal of the cause of action for breach of the implied duty of reasonable care as a matter of judicial economy.

The SAC alleges that LinkedIn had an implied "obligation to provide accurate ad metrics." SAC ¶¶ 208-210.  Plaintiffs identify one source of this alleged implied obligation as the Ads Agreement, which obligated Plaintiffs and Class members "to pay LinkedIn the agreed-upon Rate for ad campaigns."  Id. ¶ 210 (citing SAC Ex. A (Ads Agreement) at ¶ 3).  It is a "well-settled principle that express contractual terms give rise to implied duties" including "a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done." *Holguin v. Dish Network LLC,* 229 Cal. App. 4th 1310, 1324 (2014).  According to Plaintiffs, "[b]ecause the Rate necessarily includes a metric, such as a 'price per impression or click['] … LinkedIn was obligated to use reasonable care to calculate and apply that Rate correctly."  *Id*. However, Plaintiffs' characterization of LinkedIn's duties with regard to calculation of the Rate ignores other express language of the Ads Agreement, which states (in the same paragraph upon which Plaintiffs rely) that the amount the advertiser will owe "will be calculated based on LinkedIn's tracking mechanisms" and that "LinkedIn is not responsible for click fraud, fraudulent leads, technological issues or other potentially invalid activity by third parties that may affect the cost of running Ads."  SAC Ex. A at ¶ 3.  In light of the express language of this disclaimer, Plaintiffs cannot imply that LinkedIn had a duty to entirely exclude non-genuine engagement from its ad rates.  Indeed, in their opposition to the motion to dismiss, Plaintiffs concede that "had

United States District Court
Northern District of California

LinkedIn fully performed and used reasonable efforts to exclude non-genuine activity, some (significantly reduced) measure of non-genuine activity would have remained in its metrics," thus acknowledging that some non-genuine activity would have been included in the ad rates even if LinkedIn used reasonable efforts to perform.  Opp. at 17.

The existence of this express disclaimer in the Ads Agreement on the very subject on which Plaintiffs seek to impose an implied duty distinguishes this case from *Letizia*, 267 F. Supp. 3d 1235, upon which Plaintiffs rely.  *See* Opp. at 21.  The court in that case found that an integration clause and a general reservation to Facebook of all rights not expressly granted to the plaintiffs did not foreclose a finding of implied duties.  *Letizia*, 267 F. Supp. 3d at 1250-51.  Here, by contrast, the Ads Agreement expressly disclaims the very implied duty that Plaintiffs seek to impose, *i.e.,* the duty to charge Rates that did not include non-genuine engagement.  *See* SAC ¶ 211.  This case is also distinguishable from *dotStrategy Co. v. Facebook Inc.*, No. C 20-00170 WHA, 2020 WL 6591366 (N.D. Cal. Nov. 11, 2020), upon which Plaintiffs also rely.  Opp. at 22. The ad agreement in that case stated that Facebook was "not responsible for click fraud, technological issues, or other potentially invalid click activity that may affect the cost of running ads."  *Id.* at *2.  In concluding that the plaintiffs had stated a claim under Section 17200, the court stated that "stating that Facebook is not 'responsible for click fraud' is ambiguous "because a reasonable advertiser could construe [that language] to mean that Facebook itself is not perpetuating any click fraud."  *Id.*at *5.  Here, by contrast, the disclaimer language expressly states that LinkedIn is not responsible for click fraud or other activity "by third parties."  SAC Ex. A at ¶ 3.  In any event, *dotStrategy* did not address the effect of such a disclaimer on a claim for breach of the implied duty of reasonable care.

Another source Plaintiffs cite for the implied duty of reasonable care is "LinkedIn's conduct when dealing with the Class, including LinkedIn's monopoly over audience and user-engagement data, and over the verification and delivery of ad metrics."  SAC ¶ 208.  An implied duty of reasonable care can arise from the parties' course of performance.  *See Letizia*, 267 F. Supp. 3d at 1233.  Plaintiffs argue that LinkedIn provided advertising metrics to Plaintiffs and Plaintiffs relied on those metrics to guide their subsequent purchases."  Opp. at 23.  However,

United States District Court
Northern District of California

1    neither the allegations of the SAC nor Plaintiffs' argument in their opposition brief address how

2    the Parties' course of conduct gave rise to the alleged implied duty in this case, *i.e.,* the implied

3    duty not to charge Plaintiffs and the Class for non-genuine engagement.  *See* SAC ¶¶ 211-212.

4    For example, Plaintiffs do not allege that at one point in dealings with Plaintiffs and other

5    advertisers, LinkedIn based its rates solely on genuine engagement and later changed its conduct

6    to include non-genuine engagement.  To the contrary, the SAC alleges that "LinkedIn

7    systematically inflated ad metrics in its favor" and that as a result advertisers were overcharged for

8    more than two years.  SAC ¶¶ 49, 55.

9        The third source of the implied duty of reasonable care alleged by Plaintiffs in the SAC is

10   "industry practice, which dictates that the platform provider accurately tells the advertiser how

11   each campaign performs, and that the provider screen for fraudulent activity when doing so."

12   SAC ¶ 209.  Plaintiffs argue that "[e]vidence of custom or standard practice is admissible to

13   interpret the terms of a contract and to imply terms when no contrary intent is apparent from the

14   other terms of the contract."  Opp. at 23 (quoting *Midwest Television, Inc.,* 205 Cal. App. 3d 442,

15   451 (1988).  The case cited by Plaintiff concerned whether a contract binds a principal and not an

16   agent, not whether an implied duty of reasonable care can arise from industry custom.  Assuming

17   that industry custom could give rise to a duty not to charge for non-genuine engagement, this is

18   not a situation where "no contrary intent is apparent from the other terms of the contract."

19   *Midwest* Television, 205 Cal. App. 3d at 451.  As discussed above, the contract expressly states

20   that ad rates may be affected by non-genuine engagement.  SAC Ex. A at ¶ 3.  Plaintiffs do not

21   address this point in their opposition and argue only that "industry practice compels provision of

22   ad metrics."  Opp. at 23-24.  It is undisputed that LinkedIn provided ad metrics.

23       For the foregoing reasons, LinkedIn's motion to dismiss the cause of action for breach of

24   the implied duty of reasonable care is **GRANTED.**

25   **III.    CONCLUSION AND DISPOSITION**

26       As a result of the rulings set forth above, all claims in the SAC are dismissed.  "[A] district

27   court need not grant leave to amend where the amendment:  (1) prejudices the opposing party; (2)

28   is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."  *Sonner*, 971 F.3d

United States District Court
Northern District of California

at 845 (quoting *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)).  Here, after carefully considering the relevant factors, the Court dismisses the SAC with prejudice.  The SAC is Plaintiffs' fourth attempt to plead causes of action in this case, and LinkedIn has now filed three motions to dismiss.  Plaintiffs have not been able to plead viable theories, even with the benefit of the guidance provided by LinkedIn's motions to dismiss and the Court's August 3 Order, and even after dropping certain legal theories and adding new ones.  In addition, in opposition to the current motion to dismiss, Plaintiffs rehash certain arguments already rejected by the Court.  Plaintiffs have not articulated how the defects in the SAC can be cured by amendment.

Accordingly, the SAC is **DISMISSED WITH PREJUDICE**.  The Parties' Joint Discovery Statement (Dkt. 93) is **TERMINATED AS MOOT**.

**SO ORDERED.**

Dated: December 27, 2021

SUSAN VAN KEULEN
United States Magistrate Judge

United States District Court
Northern District of California

21