J. Dominick Larry (*pro hac vice*)
  nl@kellerpostman.com
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Phone: (312) 948-8472

*Attorneys for Plaintiffs TopDevz, LLC, and
Noirefy, Inc.*

(Additional counsel listed on signature page)

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

|  |  |
|---|---|
| *In Re LinkedIn Advertising Metrics Litigation* | Case No.:   5:20-cv-08324-SVK |
|  | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
|  | Judge: Hon. Susan van Keulen |

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ................................................................................................ 1

**BACKGROUND** ................................................................................................ 2

**SETTLEMENT TERMS** .................................................................................... 3

**I.**     **The proposed settlement class.** ............................................................... 3

**II.**    **The settlement fund.** ............................................................................. 4

**III.**   **Non-monetary relief.** ............................................................................ 5

**IV.**   **The release of the Class members' claims.** ......................................... 6

**V.**    **Attorneys' fees, costs, and service awards.** ......................................... 6

**VI.**   **CAFA Compliance** ............................................................................... 7

**ARGUMENT** .................................................................................................... 8

**I.**     **The settlement class should be certified.** ............................................. 8

     **A.**   **The Class is too numerous for individual joinder.** ....................... 9

     **B.**   **The Class presents common questions of law and fact.** ............... 9

     **C.**   **Plaintiffs' claims are typical of the class members'.** ................. 10

     **D.**   **Plaintiffs and their counsel have and will continue to adequately represent the class.** ............................................................... 10

     **E.**   **Common issues predominate.** ................................................... 11

     **F.**   **Class proceedings are superior.** ................................................ 12

**II.**    **The settlement warrants preliminary approval.** ................................. 13

     **A.**   **Plaintiffs and their counsel have adequately represented the class.** .............. 13

     **B.**   **The settlement was the result of arm's-length negotiations, facilitated by the Ninth Circuit Mediator and a private mediator, over a lengthy time period.** ................................................ 14

     **C.**   **The relief provided by the settlement is adequate.** ......................... 15

         **1.**   **The settlement provides substantial relief to the class.** ...................... 16

i

2.      The costs, risk, and delay of continued appeal and any trial weigh in favor of approval. ....................................................... 19

3.      The distribution method will ensure the fund is automatically distributed, weighing in favor of approval. .......................................... 20

4.      The proposed fee award is in line with the Circuit benchmark. ........ 22

5.      There are no additional agreements requiring disclosure under Rule 23(e)(3). .......................................................................... 22

D.      The settlement treats all settlement class members equitably. ........... 22

III.    **The Court should set a schedule for settlement administration and final approval.** ........................................................................ 23

**CONCLUSION** ...................................................................................... 24

1

<u>**TABLE OF AUTHORITIES**</u>

2

Page(s)

3

**Cases**

4

*Altamirano v. Shaw Indus., Inc.*,
   No. 13-cv-00939, 2015 WL 4512372 (N.D. Cal. July 24, 2015) .............................................. 23

5

*Amchem Prod. v. Windsor*,
   521 U.S. 591 (1997) .............................................................................................................. 11

6

7

*Arroyo v. Int'l Paper Co.*,
   No. 17-cv-6211, 2019 WL 1508457 (N.D. Cal. Apr. 4, 2019) .................................................. 9

8

9

*dotStrategy Co. v. Facebook Inc.*,
   No. C 20-00170 WHA, 2021 WL 2550391 (N.D. Cal. June 22, 2021) ....................... 16, 19, 20

10

*dotStrategy Co. v. Facebook Inc.*,
   No. C 20-00170 WHA, 2021 WL 5415265 (N.D. Cal. Nov. 20, 2021) .................................. 16

11

12

*dotStrategy Co. v. Twitter, Inc.*,
   476 F. Supp. 3d 978 (N.D. Cal. 2020) .................................................................................... 16

13

*Evon v. Law Offices of Sidney Mickell*,
   688 F.3d 1015 (9th Cir. 2012) ................................................................................................ 10

14

15

*Garcia v. Schlumberger Lift Sols.*,
   No. 118CV01261DADJLT, 2020 WL6886383 (E.D. Cal. Nov. 24, 2020) ............................ 15

16

17

*Guzman v. Polaris Indus. Inc.*,
   49 F.4th 1308 (9th Cir. 2022) ................................................................................................ 19

18

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................................................................ 8, 11

19

20

*Haralson v. U.S. Aviation Servs. Corp.*,
   383 F. Supp. 3d 959 (N.D. Cal. 2019) .................................................................................... 14

21

22

*Hayes v. MagnaChip Semiconductor Corp.*,
   No. 14-cv-1160, 2016 WL 6902856 (N.D. Cal. July 18, 2016) ............................................. 18

23

24

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) .................................................................................................... 6

25

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ............................................................................................ 13

26

27

*In re Apple Processor Litig.*,
   No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) .................................................. 19

28

*In re Bluetooth Headsets Litig.*,
   654 F.3d 935 (9th Cir. 2011) ........................................................................................... 14

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg. Litig.*,
   No. 17-md-02777, 2019 WL 536661 (N.D. Cal. Feb. 11, 2019)............................................ 4, 8

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................................... 8, 9, 11

*In re Mego Fin. Corp. Secs. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ........................................................................................... 10

*In re MyFord Touch Consumer Litig.*,
   No. 13-cv-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ................................. 15

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ............................................................................... 18

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ................................................................................. 6, 8, 23

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. L*iab. Litig.,
   895 F.3d 597 (9th Cir. 2018) ........................................................................................... 15

*IntegrityMessageBoards.com v. Facebook, Inc.*,
   No. 18-CV-05286-PJH, 2021 WL 3771785 (N.D. Cal. Aug. 24, 2021) ................................. 16

*Johnson v. Nextel Commc'ns Inc.*,
   780 F.3d 128 (2d Cir. 2015).............................................................................................. 12

*Just Film, Inc. v. Buono*,
   847 F.3d 1108 (9th Cir. 2017) ......................................................................................... 10

*Klaehn v. Cali Bamboo LLC*,
   No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022)...................................................... 19

*Lewis v. Silvertree Mohave Homeowners' Ass'n,Inc.*, No. 16-03581, 2017 WL 549816 (N.D.
   Cal. Nov. 16, 2017) ........................................................................................................ 15

*Lane v. Facebook, Inc.*,
   696 F.3d 811 (9th Cir. 2012) ............................................................................................. 8

*Letizia v. Facebook Inc.*,
   267 F. Supp. 3d 1235 (N.D. Cal. 2017) ............................................................................. 17

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ......................................................................................... 19

*Lusk v. Five Guys Enterps LLC*,
   No. 117CV00762AWIEPG, 2022 WL 4791923 (E.D. Cal. Sept. 30, 2022)............................ 15

iv

*McKnight v. Uber Techs., Inc.*,
 No. 14-cv-5615, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) .................................................. 8

*Mohanty v. BigBand Networks, Inc.*,
 No. 07-cv-5101, 2008 WL 426250 (N.D. Cal. Feb. 14, 2008) ................................................. 4

*Pulaski & Middleman, LLC v. Google, Inc.*,
 802 F.3d 979 (9th Cir. 2015) .................................................................................................. 18

*Rihn v. Acadia Pharm. Inc.*,
 No. 15-CV-00575 BTM-DHD, 2018 WL 513448 (S.D. Cal. Jan. 22, 2018) ........................... 18

*Rodriguez v. Hayes*,
 591 F.3d 1105 (9th Cir. 2010) ................................................................................................ 10

*Rodriguez v. W. Publ'g Corp.*,
 563 F.3d 948 (9th Cir. 2009) .................................................................................................. 23

*Sadowska v. Volkswagen Grp. Of Am.*,
 No. CV 11-00665-BRO (AGRx), 2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) ................... 22

*Sali v. Corona Regional Medical Center*,
 909 F.3d 996 (9th Cir. 2018) .................................................................................................. 10

*Singh v. Google LLC*,
 No. 16-CV-03734-BLF, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022) ....................................... 16

*Sonner v. Premier Nutrition Corp.*,
 49 F.4th 1300 (9th Cir. 2022) ................................................................................................. 19

*Sonner v. Premier Nutrition Corp.*,
 971 F.3d 834 (9th Cir. 2020) .................................................................................................. 17

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) .................................................................................................... 8

*Steiner v. Am. Broad. Co.*,
 248 F. App'x 780 (9th Cir. 2007) ........................................................................................... 22

*Stovall-Gusman v. W.W. Granger, Inc.*,
 No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ................................. 18

*Wal-Mart Stores v. Dukes*,
 564 U.S. 338 (2011) ................................................................................................................. 9

*Williams v. Apple, Inc.*,
 338 F.R.D. 629 (N.D. Cal. 2021) ............................................................................................ 18

*Zaklit v. Nationstar Mortg. LLC*,
 No. 15-cv-2190, 2017 WL 3174901 (C.D. Cal. July 24, 2017) ................................................ 4

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................... *passim*

1

**INTRODUCTION**

Plaintiffs TopDevz, LLC and Noirefy Inc. sued Defendant LinkedIn Corp., alleging that LinkedIn had overcharged advertisers due to overstating certain video views, automated and fraudulent accounts, and other causes. Plaintiffs asserted claims under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*., and the False Advertising Law, Cal. Bus. & Prof. Code § 17500, along with other causes of action, on behalf of a putative class of LinkedIn advertisers. On December 27, 2021, this Court dismissed Plaintiffs' second amended complaint with prejudice and then entered judgment in LinkedIn's favor. Plaintiffs timely appealed, and the parties fully briefed the appeal.

Before the Ninth Circuit decided the appeal, the parties reached a settlement that would fully resolve the claims of the proposed class and provide meaningful relief for the class members. While Plaintiffs believe that the facts and the law would ultimately favor their claims, success in their appeal of this Court's dismissal was not guaranteed and, even if they could have obtained a remand, other challenges would have remained. The proposed settlement offers meaningful relief now, without the numerous, substantial risks and years of delay that would accompany further litigation. To that end, the proposed settlement provides for the establishment of a $6.625 million settlement fund and requires LinkedIn to use commercially reasonable efforts to engage a reputable third party to audit its ad metrics. In conjunction with the Settlement, LinkedIn has also made changes to its agreements with its advertisers to resolve issues raised by Plaintiffs' claims. The settlement fund will be used to pay the costs of notice and administration, Plaintiffs' requested incentive awards, attorneys' fees and costs, and then direct and automatic payments to class members, without the need for claim forms. Any unclaimed funds will be redistributed to class members (rather than reverting to LinkedIn) until it is no longer economically feasible to do so, at which point they will be distributed to a *cy pres* recipient. From Plaintiffs' perspective, the settlement provides significant value to the class, without the risks and delay that would accompany further litigation.

For the reasons detailed below, Plaintiffs respectfully request that the Court certify the proposed settlement class, appoint class counsel under Rule 23(g), preliminarily approve the settlement, approve the proposed notice plan, and set a schedule for final approval.

## BACKGROUND

Plaintiffs filed their initial class action complaint on November 25, 2020. ECF No. 1. After LinkedIn moved to dismiss, Plaintiffs amended their complaint on February 17, 2021. ECF No. 49. On February 24, 2021, Plaintiffs' claims were consolidated with similar claims filed by another plaintiff, Synergy RX PBM LLC, *see* ECF No. 52, and an amended consolidated complaint was filed on March 17, 2021. ECF No. 55. LinkedIn again moved to dismiss, ECF No. 65, and the Court granted the motion in part, without prejudice on August 3, 2021. ECF No. 85. Plaintiffs filed a second amended complaint on August 17, 2021,[1] ECF No. 89, which LinkedIn moved to dismiss on August 31, 2021, ECF No. 97. The Court granted LinkedIn's motion with prejudice and entered a judgment in LinkedIn's favor on December 27, 2021. ECF Nos. 104, 105.

Plaintiffs timely appealed on January 26, 2022. ECF No. 106. The parties held a settlement conference with the Ninth Circuit mediator on March 4, 2022, but were unable to make meaningful progress toward a resolution at that time, and the case was released from the mediation program on June 6, 2022. *See TopDevz, LLC et al. v. LinkedIn Corp.*, No. 22-15118, ECF Nos. ("App. ECF. Nos.") 5, 11 (9th Cir.); Declaration of J. Dominick Larry ("Larry Decl."), ¶ 12. The parties completed briefing the appeal on October 25, 2022, App. ECF No. 29, and the case was set for oral argument on April 17, 2023, App. ECF No. 34.

Following the scheduling of oral argument, the parties resumed their settlement discussions, and scheduled a private mediation with Randall W. Wulff, of Wulff Quinby Sochynsky, on March 31, 2023. App. ECF No. 39; Larry Decl. ¶ 13. With mediation scheduled, the parties moved to vacate oral argument, and the Ninth Circuit granted the motion on March 27, 2023. App. ECF No. 40. The parties engaged in a full-day mediation on March 31, 2023, and the

---

[1] Synergy RX PBM LLC voluntarily dismissed its claims on July 4, 2021. ECF No. 84.

session ended with the parties both accepting a mediator's proposal and reaching an agreement in principle on the terms of a class-wide settlement. Larry Decl. ¶ 14.

Following the mediation, the parties engaged the assigned Circuit Mediator to inform him of the agreement in principle, and to obtain guidance on resolving the outstanding settlement issues while the case remained off the Ninth Circuit's oral argument calendar. Larry Decl. ¶ 15. Over the following year, with the Circuit Mediator's assistance, the parties worked through a variety of issues as part of the finalization of the settlement agreement, including complex analysis of the underlying advertising data, the process by which class members will obtain payment if the settlement is approved, and the methods by which payment will occur. *Id*., ¶ 16. Now, the parties have finalized the settlement agreement, the notices, and the payment distribution plan, and stipulated to the dismissal of the appeal for settlement purposes.

The Parties now seek preliminary approval of their class action settlement.

## SETTLEMENT TERMS

### I.      The proposed settlement class.

The settlement contemplates certification of the following class ("the Class"), for settlement purposes only:

> All U.S. advertisers[2] who purchased LinkedIn Advertising[3] during the Class Period.[4] Excluded from the Settlement Class are LinkedIn; any entity in which LinkedIn has a controlling interest; LinkedIn's officers, directors, legal representatives, successors, subsidiaries, and assigns; any advertiser who timely files a request for exclusion; and any judge to whom this case is assigned, his or her spouse, and all persons with the third degree of relationship to either of them, as well as the spouses of such persons.

Ex. A ("Settlement"),[5] ¶ II.29.

---

[2] LinkedIn has identified "U.S. advertisers" for the purposes of this settlement as advertisers whose billing data currently on file with LinkedIn reflects that the advertiser is based in the United States.
[3] "LinkedIn Advertising" means "advertising offered or purchased through LinkedIn Marketing Solutions." Settlement, ¶ II. 18.
[4] The Class Period is January 1, 2015 through May 31, 2023.
[5] All citations to exhibits refer to the exhibits to the declaration of J. Dominick Larry, filed contemporaneously herewith.

The Northern District's preliminary approval guidelines direct settling parties to explain any differences between the settlement class and the class proposed in the operative complaint.[6] Here there are two changes to the class definition, both of which narrow the scope of the class. *See generally Zaklit v. Nationstar Mortg. LLC*, No. 15-cv-2190, 2017 WL 3174901, at *8 (C.D. Cal. July 24, 2017) ("[C]ourts routinely permit plaintiffs to narrow the scope of their class at the certification stage."). First, the class period has been shortened, covering the time period from January 1, 2015 through May 31, 2023, while the Second Amended Complaint had no temporal limitation. *See* ECF No. 89, ¶ 137. Second, the parties limited the settlement class to U.S. advertisers only, eliminating any questions about how other countries' laws may or may not have honored a final judgment issued in this case. *See, e.g.*, *Mohanty v. BigBand Networks, Inc.*, No. 07-cv-5101, 2008 WL 426250, at *8 (N.D. Cal. Feb. 14, 2008) ("[A] strong possibility or near certainty that a foreign court will not recognize a judgment in favor of the defendant as a bar to the action of its own citizens may be the basis for eliminating foreign purchasers from the class.").

The fact that the parties narrowed the class definition in the settlement context eliminates any concern that the definition change was designed to achieve a broader release for LinkedIn than it would have achieved through litigation by the class proposed in the complaint. *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg. Litig.*, No. 17-md-02777, 2019 WL 536661, at *4 (N.D. Cal. Feb. 11, 2019) (preliminarily approving narrower class and recognizing that "[t]hose excluded from the class do not, of course, release any claims.").

## II.     The settlement fund.

The parties' proposed settlement will establish a fund of $6,625,000.00. Settlement, ¶¶ II.18, V.1. That money will be distributed to the Class members on a *pro rata* basis, proportionate to the amount each member spent on LinkedIn advertising during the class period. *Id.* ¶ V.2. The fund will also cover all costs associated with notice and administration, attorneys' fees and costs, and incentive awards. Settlement, ¶¶ IV, V.7, X. The settlement fund is non-reversionary, meaning that LinkedIn will not be entitled to retain any part of the settlement fund

---

[6] *See* N.D. Cal., *Proc. Guidance for Class Action Settlements*, § 1.a.

for any reason. *Id.* ¶ V.6. Instead, unclaimed funds will be redistributed to those Class members who received ad credits, or timely cashed their checks or activated their digital payments, repeatedly, until the administrative cost exceeds the reclaimed amount, at which point the remaining funds will go to a *cy pres* recipient.[7]

To assist in administering the Settlement and transmitting payment to the Class, the parties engaged A.B. Data Group. Before engaging A.B. Data, the parties received bids from three other experienced and qualified settlement administrators. Larry Decl. ¶¶ 19, 20. The parties ultimately selected A.B. Data because it offered the best practicable notice and distribution options given the needs of the case, at one of the lowest prices. *Id.* ¶¶ 20. The parties were also persuaded by A.B. Data's prior experience in the *LLE One v. Facebook* litigation, which involved similar allegations and a similar payment structure. *Id.* Thus, through a competitive-bidding process, the parties were able to engage a settlement administrator with experience administering a similar settlement, to implement a process generating seamless distribution of funds to Class members, at a cost of approximately $191,271.25. *Id.*[8]

## III.    Non-monetary relief.

Plaintiffs secured two forms of non-monetary relief for the Class. First, LinkedIn modified its Ads Agreement with advertisers in a manner agreed upon by the parties, addressing the issues noted by Plaintiff in the operative complaint. Larry Decl. ¶¶ 17, 18. Second, in the Settlement Agreement itself, LinkedIn agreed to use commercially reasonable efforts to engage a reputable

---

[7] The parties have agreed, subject to Court approval, that the *cy pres* recipient shall be the Consumer Federation of America. Settlement ¶ II.10. The Consumer Federation of America is an association of non-profits that, among other things, performs research used to assist consumer advocates and policymakers in matters including the remediation of false-advertising practices. *See Overview*, Consumer Federation of America, https://consumerfed.org/overview/ (last accessed July 25, 2024); *Consumer Complaint Survey Report*, Consumer Federation of America, https://consumerfed.org/wp-content/uploads/2023/05/2022-Consumer-Complaint-Survey-Report.pdf (last accessed July 25, 2024); *Nation's Top Consumer Complaints*, Consumer Federation of America, https://consumerfed.org/press_release/nations-top-consumer-complaints-2019/ (last accessed July 25, 2024). Neither Keller Postman nor Romanucci & Blandin has any pre-existing relationship with the *cy pres* recipient.
[8] Neither Keller Postman nor Romanucci & Blandin has engaged A.B. Data in the last two years.

third party to audit certain click and impression metrics, for at least two years after the Final Approval Order. *See* Settlement ¶ V.1.

**IV.    The release of the Class members' claims.**

In exchange for the monetary and injunctive relief, Plaintiffs and the Class members will provide a release of claims against LinkedIn, its officers, directors, legal representatives, successors, subsidiaries, and assigns. Settlement, ¶¶ 1.19, XIV.1–2. The release is limited to claims "that arise from or relate to the facts, activities or circumstances alleged in the Action." *Id.*, ¶ XIV.1.

The Northern District's guidelines ask the parties to address whether the claims to be released differ from the claims in the operative complaint. *See* N.D. Cal., *Proc. Guidance for Class Action Settlements*, § 1.c. Here, the parties seek to release only those claims that were or could have been pleaded based on the facts alleged by Plaintiffs. In short, the settlement release has the same scope that *res judicata* principles would have applied in the event of a judgment on the merits concerning a certified class. Such a release is appropriate and typical. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

**V.    Attorneys' fees, costs, and service awards.**

Plaintiff's counsel have yet to be compensated for their litigation efforts. Having litigated this case in this Court for a year, and in the Ninth Circuit for roughly the same period of time, while advancing hundreds of thousands of dollars in litigation expenses on the Class's behalf, Plaintiff's counsel will file a motion asking the Court to award attorneys' fees of 25% of the settlement fund, the benchmark in the Ninth Circuit. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949. In addition, Plaintiff's counsel intends to seek reimbursement of $154,874.94 in expenses incurred prior to execution of the settlement in litigating this case. Larry Decl. ¶ 21.

Plaintiffs will provide additional detail, consistent with Rule 23(h), when they file their formal fee motion. In that motion, Plaintiffs' counsel will provide a more thorough description of their efforts during the litigation, a more detailed accounting of their litigation costs, and authority supporting the reasonableness of the requested payments. While Plaintiffs will provide more detail

with their formal fee motion, per the Northern District's guidelines, Plaintiffs also provide the following lodestar information now: Plaintiff's counsel have devoted about 3,252 hours to this case; they have not been compensated for any of that time or effort to date; and their lodestar using their typical hourly billing rates totals $2,556,930.50. Plaintiffs' counsel anticipate that their lodestar will increase over the coming months, as they prepare a final approval motion and a formal application for their fees and costs, and as they work with the Settlement Administrator, LinkedIn, and the Class members to implement the Settlement.

Plaintiffs also intend to ask the Court to award each of them service awards to recognize the time, effort, and expense they incurred pursuing claims against LinkedIn, which benefited the entire class. In addition to the substantial time and effort Plaintiffs incurred in assisting with the preparation of amended pleadings and responses to discovery requests—which included a line-by-line review of the advertisements purchased by Plaintiffs and the accompanying metrics for those ads—litigation of this case presented unique risks not typically seen in class actions. Each Plaintiff faced the risk of potential reputational harm as actual and potential customers, suppliers, and investors could have viewed their involvement with skepticism, or questioned why company resources were being directed to litigation rather than core operations. Additionally, Plaintiffs devoted substantial time to the resolution of this action, not only in pre- and post-mediation work, but also at the mediation itself, with Noirefy's CEO traveling from Chicago to personally attend, and TopDevz's former CEO participating by phone throughout the day. Given that involvement, Plaintiffs will request service awards of $25,000 each from the settlement fund, subject to the Court's approval. *See* Agreement, Ex. A-1.

## VI.    CAFA Compliance

Per the Northern District's Procedural Guidance for Class Action Settlements, CAFA notice is required. Under the Settlement Agreement, CAFA notice will be disseminated by the Settlement Administrator, within 10 days of the filing of this motion. Agreement ¶ VII.12. No

additional notice to government entities, such as the Labor & Workforce Development Agency, is required.[9]

## ARGUMENT

"The Ninth Circuit maintains a strong judicial policy that favors the settlement of class actions." *McKnight v. Uber Techs., Inc.*, No. 14-cv-5615, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017). The Court must, however, "determine whether a proposed settlement is fundamentally fair, adequate and reasonable" pursuant to Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *See id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). Before preliminarily approving the settlement, however, the Court "must first evaluate whether certification of a settlement class is appropriate under Federal Rule of Civil Procedure 23(a) and (b)." *In re Chrysler-Dodge-Jeep*, 2019 WL 536661, at *5.

## I.    The settlement class should be certified.

For certification to be appropriate, the proposed class must satisfy all four of Rule 23(a)'s prerequisites—numerosity, commonality, typicality, and adequacy—and one of Rule 23(b)'s prongs. Fed. R. Civ. P. 23. Though the same rules apply, the certification factors are given different weights when assessing settlement classes as opposed to litigation classes. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). For example, when deciding to certify a settlement class, "manageability is not a concern," since the settlement will eliminate the need for a trial. *Id.* at 557. On the other hand, "[t]he aspects of Rule 23(a) and (b) that are …

---

[9] While the Settlement does provide ad credit to the advertisers, it does not qualify as a coupon settlement under 28 U.S.C. § 1712 because (a) they do not require any class member to spend additional money out of pocket with LinkedIn, and (b) they can be substituted for cash or electronic payment card. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 950–52 (9th Cir. 2015).

designed to protect absent [class members] by blocking unwarranted or overbroad class definitions" require "heightened attention by the district court." *Id.* at 558 (quotation omitted). The focus is "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* (quotation omitted).

Here, the settlement class is composed only of those U.S.-based advertisers who advertised on LinkedIn from January 1, 2015 through May 31, 2023. Agreement ¶ II.29. That class definition is narrower than the definition proposed in Plaintiffs' complaints, both in terms of time period (going back only to January 1, 2015, rather than to when advertising started on LinkedIn) and geography (covering only U.S.-based advertisers, rather than global). Thus, there is no risk that the settlement expands the class's scope improperly. *See Hyundai & Kia*, 926 F.3d at 558. As set forth below, the proposed settlement class satisfies the requirements of Rules 23(a) and (b)(3).

### A.     The Class is too numerous for individual joinder.

Rule 23(a) requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Typically, classes of at least 40 members are presumed to meet this requirement. *Arroyo v. Int'l Paper Co.*, No. 17-cv-6211, 2019 WL 1508457, at *2 (N.D. Cal. Apr. 4, 2019). Here, the settlement class has approximately 300,000 members, according to LinkedIn's records. Schachter Decl. ¶ 10. The numerosity requirement is easily satisfied.

### B.     The Class presents common questions of law and fact.

All class actions must have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). Here, the proposed class members' claims raise a number of common issues, including whether:  (a) the class members had to establish the absence of an adequate remedy at law; (b) class members could establish the absence of an adequate remedy at law; (c) LinkedIn breached the implied covenant of good faith and fair dealing; (d) LinkedIn breached the implied duty of reasonable care; and (e) LinkedIn made misrepresentations likely to deceive a reasonable person.

The "circumstances of each particular class member" therefore "retain a common core of factual or legal issues with the rest of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012).

**C.    Plaintiffs' claims are typical of the class members'.**

"[T]he claims or defenses of the representative parties" must be "typical of the claims or defenses of the class" to warrant certification. Fed. R. Civ. P. 23(a)(3). "[T]he typicality requirement is permissive and requires only that the representative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Plaintiffs assert the same claims with the same underlying factual allegations as all other class members: that LinkedIn promised advertisers would only pay when someone engaged with their advertisements, but they were in fact charged for non-genuine activity, which persisted on LinkedIn's platform due to ineffective auditing and verification measures, and raised prices to advertise on the platform across the board. *See* ECF No. 89, ¶¶ 49–80, 148–223. This common course of conduct gives rise to the same "reasonably co-extensive" claims for all class members for purposes of settlement. *Rodriguez*, 591 F.3d at 1124; *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) (Plaintiff's "claim is reasonably coextensive with that of the class because she alleges [the relevant defendants] committed the *same* overall course of misconduct against other members of the class … and the class's alleged injuries also resulted from that course of misconduct.").

**D.    Plaintiffs and their counsel have and will continue to adequately represent the class.**

The final Rule 23(a) requirement is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining whether representation is adequate requires the court to consider two questions: '(a) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (b) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class.'" *Sali v. Corona Regional Medical Center*, 909 F.3d 996, 1007 (9th Cir. 2018) (quoting *In re Mego Fin. Corp. Secs.*

*Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Here, neither Plaintiffs nor their counsel have any conflicts of interest with absent class members. Rather, their interests are aligned: Plaintiffs purchased advertising on LinkedIn just like every class member, and they share those members' interest in recovering for their overpayments.

Plaintiffs and their counsel have also demonstrated their commitment to the class:  since the case was filed in November 2020, Plaintiff's counsel have spent thousands of hours litigating the case, and have incurred approximately $218, 348 in litigation expenses. *See* Larry Decl. ¶ 21; Neiman Decl. ¶ 6; Fruchter Decl. ¶ 3; Lurie Decl. ¶ 11. This case was hard fought; in addition to drafting the complaints and opposing LinkedIn's motions to dismiss, discovery took a substantial amount of time as Plaintiffs served discovery, raised and ultimately briefed discovery disputes, engaged expert witnesses, had to provide extensive written discovery responses, and fully briefed Plaintiffs' appeal before engaging in mediation. Larry Decl. ¶¶ 9, 13. Proposed class counsel are well-versed in complex class litigation, and devoted substantial time and expertise for the benefit of the class. Larry Decl. ¶ 3; Nieman Decl. ¶ 3. There is no reason to doubt the adequacy of the proposed class's representation.

### E.   Common issues predominate.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). Plaintiffs seek certification under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Whether "a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai & Kia*, 926 F.3d at 558. In the settlement context, "predominance is 'readily met' in cases alleging consumer fraud." *Id.* at 559 (quoting *Amchem Prod. v. Windsor*, 521 U.S. 591, 625 (1997)). Class treatment is especially

appropriate where, as here, a choice-of-law clause "require[s] the application of only one state's laws to the entire class, then the representation of multiple states within the class does not pose a barrier to class certification." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015). Here, the class members' claims are defined primarily by LinkedIn's conduct: whether LinkedIn misrepresented that users would be charged only for genuine engagement, whether that representation was false, and whether LinkedIn took reasonable and adequate measures to ensure that advertisers were not charged for non-genuine engagement. *See generally* ECF No. 89.

> **F.     Class proceedings are superior.**

Similarly, it is superior to resolve all class members' claims through a single class action rather than a series of individual lawsuits. "The matters pertinent" to the superiority inquiry include:

> (A)     the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)     the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Generally speaking, "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery. Here, to Plaintiffs' knowledge, there have been no individual lawsuits filed against LinkedIn by any class member concerning the same conduct; the only other litigation has been other class actions that were voluntarily dismissed and/or consolidated with this action. *See Krisco v. LinkedIn Corp.*, No. 20-cv-8204 (N.D. Cal.) (voluntarily dismissed Dec. 28, 2020); *Synergy RX PBM LLC v. LinkedIn Corp.*, No. 21-cv-513 (consolidated with this action on Feb. 24, 2021; voluntarily dismissed on July 4, 2021). As to the desirability of concentrating litigation in this forum, "[w]here thousands

of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single form." *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 271 (N.D. Cal. 2011).

Accordingly, class certification for settlement purposes is appropriate under Rule 23(b)(3).

## II.     The settlement warrants preliminary approval.

Rule 23(e)(2) governs the approval of a class action settlement, and provides that the Court consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

   (i)    the costs, risks, and delay of trial and appeal;

   (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

   (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and

   (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Here, the Settlement satisfies each factor.

### A.     Plaintiffs and their counsel have adequately represented the class.

Rule 23(e)(2)(A) requires the assessment of the adequacy of the representation by the class representatives and attorneys, including by analyzing "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A) advisory committee's note.

Here, the class representatives have diligently represented the class. In addition to working with counsel to craft four complaints—including by providing details and screenshots for their specific ad purchases—the plaintiffs each responded to a dozen interrogatories and 21 requests for production and conducted detailed ESI searches. Larry Decl. ¶ 9. The class representatives were also active participants in the mediation process. In addition to reviewing and approving of all settlement positions, Noirefy's CEO traveled from Chicago to California to participate in the full-

day mediation with Mr. Wulff, while TopDevz's former CEO participated throughout the mediation by telephone. Larry Decl. ¶¶ 13.

Proposed Class Counsel have also adequately represented the class. They vigorously litigated this case, drafting four complaints, opposing two motions to dismiss, engaging in substantial discovery efforts, and fully briefing the appeal. Larry Decl. ¶ 9. They also engaged multiple experts to assist in pursuing recovery, including source-code experts to analyze LinkedIn's auction system and anti-fraud measures, data analysts and auditors to review and analyze LinkedIn's advertising data, and an economics expert to develop and implement a damages model. Larry Decl. ¶ 10. In conjunction with those efforts, Plaintiffs' counsel have advanced approximately $218,348 in litigation expenses on behalf, with no guarantee of repayment. Larry Decl. ¶ 21; Neiman Decl. ¶ 6; Fruchter Decl. ¶ 3; Lurie Decl. ¶ 11.

Those efforts were the product of proposed Class Counsel's years of successfully litigating prior class actions involving consumer protection and fraud claims, including under California law (and even against LinkedIn), and many cases in this District. Larry Decl. ¶ 3; Neiman Decl. ¶ 3.

### B. The settlement was the result of arm's-length negotiations, facilitated by the Ninth Circuit Mediator and a private mediator, over a lengthy time period.

The second Rule 23(e)(2) factor requires that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B) advisory committee's note (2009). Where, as here, the settlement was negotiated before class certification, the Court should also scrutinize the settlement "not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 966 (N.D. Cal. 2019) (citing *In re Bluetooth Headsets Litig.*, 654 F.3d 935, 947 (9th Cir. 2011)).

Here, the facts confirm the arm's-length nature of the settlement. To start, the parties did not begin settlement negotiations until after this Court dismissed plaintiffs' claims, plaintiffs

appealed the dismissal, and the parties were assigned to the Ninth Circuit mediation panel, all of which was "after … a year of litigation during which time the parties had ample opportunity to take discovery and assess the merits of this action." *Lewis v. Silvertree Mohave Homeowners' Ass'n, Inc.*, No. 16-03581, 2017 WL 549816, at *3 (N.D. Cal. Nov. 16, 2017). Larry Decl. ¶¶ 9–13. Those initial efforts failed, and the parties did not revisit settlement again until appellate briefing was complete. *Id.*

Second, the settlement was the result of a full-day private mediation, and the fact that "the Settlement is based on a mediator's proposal further supports a finding that the settlement agreement is not the product of collusion." *Lusk v. Five Guys Enterps LLC*, No. 117CV00762AWIEPG, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022); *Garcia v. Schlumberger Lift Sols.*, No. 118CV01261DADJLT, 2020 WL 6886383, at *13 (E.D. Cal. Nov. 24, 2020), report and recommendation adopted, No. 118CV01261DADJLT, 2020 WL 7364769 (E.D. Cal. Dec. 15, 2020); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) (settlement being based on mediator's proposal supported finding that settlement resulted from arm's-length negotiations).

Third, and finally, the settlement bears no signs of collusion: the requested fees are in line with the circuit benchmark, there is no "clear sailing" arrangement whereby LinkedIn has agreed not to contest the fee motion, and no unawarded money will revert to LinkedIn. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 n.19 (9th Cir. 2018). In sum, to the extent heightened scrutiny is applied to this settlement because it was reached prior to certification, that scrutiny reveals that the Settlement was the result of arm's-length negotiations.

**C.    The relief provided by the settlement is adequate.**

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of

15

payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note.

Here, each Rule 23(e)(2)(C) factor favors approval.

### 1. The settlement provides substantial relief to the class.

The relief to be provided to the settlement class is significant. First, the recovery compares favorably relative to other class actions involving similar claims, which have often resulted in nonrecovery. For example, *dotStrategy Co. v. Facebook Inc.* involved comparable claims that advertisers on Facebook would not charge for ad engagement with fake or fraudulent accounts. *See dotStrategy Co. v. Facebook Inc.*, No. C 20-00170 WHA, 2021 WL 5415265, at *3 (N.D. Cal. Nov. 20, 2021), *aff'd sub nom. dotStrategy Co. v. Meta Platforms, Inc.*, No. 21-17056, 2022 WL 17248983 (9th Cir. Nov. 28, 2022). In that case, Judge Alsup denied class certification, *see dotStrategy Co. v. Facebook Inc.*, No. C 20-00170 WHA, 2021 WL 2550391 (N.D. Cal. June 22, 2021), before granting summary judgment for the defendant. *See dotStrategy Co.*, 2021 WL 5415265. The Ninth Circuit then affirmed that summary judgment finding. *dotStrategy Co.*, 2022 WL 17248983. The plaintiff pursued similar claims in *dotStrategy Co. v. Twitter, Inc.* 476 F. Supp. 3d 978 (N.D. Cal. 2020). That case, however, achieved no recovery for the proposed class, as it was dismissed voluntarily in discovery shortly after the denial of class certification by Judge Alsup in the other *dotStrategy* case. *dotStrategy Co. v. Twitter, Inc.*, No. 19-cv-6176, ECF No. 105 (N.D. Cal. Dec. 21, 2021).[10]

This case, too, involves significant, contested legal issues, which resulted in this Court dismissing the Second Amended Complaint with prejudice. Although the outcome of Plaintiffs' appeal in this case remains uncertain, the fact that LinkedIn prevailed in the trial court, and that other class actions asserting similar claims have resulted in no recovery for class members,

---

[10] Other comparable cases have met a similar fate. *See, e.g., Singh v. Google LLC*, No. 16-CV-03734-BLF, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022) (denying class certification); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2021 WL 3771785, at *1 (N.D. Cal. Aug. 24, 2021) (same).

provides strong evidence that the settlement's benefits to class members—including a $6.625 million settlement fund, and a stipulation for third-party auditing of metrics—are significant.

Another comparable for this settlement is the $40 million recovery in a class action alleging that Facebook had misrepresented video advertising metrics over a multi-year period. *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1239–41 (N.D. Cal. 2017). That case, which was resolved prior to the Ninth Circuit issuing its opinion in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 838 (9th Cir. 2020), involved a defendant with yearly ad revenue (at the time of settlement, in 2019) of over $69 billion,[11] compared to LinkedIn's 2019 ad revenue of over $2.5 billion.[12]

The relief obtained by the settlement also compares favorably to the potential recovery at trial. In their Second Amended Complaint, Plaintiffs asserted claims under the FAL and UCL, the UCL, for breach of the implied duty of reasonable care and breach of the implied covenant of good faith and fair dealing. ECF No. 89. In connection with its accreditation by a third-party review body (Media Rating Council), LinkedIn has estimated that "approximately 0.5% of ad impressions and 0.2% of ad clicks were produced by restricted accounts"—i.e., accounts that LinkedIn later restricted.[13] Even assuming $12 billion of U.S. advertising revenue during the class period—a number that is consistent with Plaintiffs' estimates and data provided by LinkedIn—these rates would lead to a total potential recovery ranging from $24 million and $60 million, or a midpoint of $42 million.[14] That estimate applies whether the recovery is viewed as restitution[15]—"[t]he only

---

[11] *Facebook Reports Fourth Quarter and Full Year 2019 Results*, Meta (Jan 29, 2020), https://investor.fb.com/investor-news/press-release-details/2020/Facebook-Reports-Fourth-Quarter-and-Full-Year-2019-Results/default.aspx.

[12] *Annual advertising revenue generated by LinkedIn worldwide from 2017 to 2027*, Statista, https://www.statista.com/statistics/275933/linkedins-advertising-revenue/ (last accessed July 25, 2024).

[13] *Description of Methodology for LinkedIn Marketing Solutions*, LinkedIn, https://www.linkedin.com/help/lms/answer/a1414205 (last accessed June 19, 2024).

[14] Such a potential recovery does not take into account LinkedIn's contention that any recovery in this case would have to be reduced by the value of makegoods LinkedIn has issued for technical issues during the class period. *See, e.g.*, "*We discovered two measurement issues. Here's how we're making it right,*" (hereafter, "LinkedIn Blog Post"), LinkedIn Marketing Solutions Blog (Nov. 12, 2020) at https://business.linkedin.com/marketing-solutions/blog/linkedin-news/2020/how-we-re-working-to-improve, cited at Compl. ¶ 49 n.8.

[15] The restitution available to Plaintiffs would be equal to the "difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent

form[] of [monetary] relief that a private individual may pursue under the UCL and FAL," *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 951 (N.D. Cal. 2018)—or damages for breach of the implied duty or the implied covenant.[16]

The Settlement, therefore, represents a sizeable percentage (15.77%) of the estimated trial recovery available under any of Plaintiff's claims. Of course, that hypothetical recovery is subject to substantial downward pressure due to the continued litigation risks remaining: Plaintiffs' appeal, LinkedIn's opposition to class certification, summary judgment, trial, and further appeal, any of which could result in no recovery at all.

In other cases, courts have recognized that a recovery of 15% of what could be potentially recovered at trial easily justifies resolution through settlement, rather than bearing additional risk through continued litigation. *See, e.g.*, *Rihn v. Acadia Pharm. Inc.*, No. 15-CV-00575 BTM-DHD, 2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (finding recovery of approximately 15% of potential damages "substantial"); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement where gross fund represented 10% of potential recovery, and net fund (after fees, costs, notice and administration expenses, and incentive award) was 7.3% of potential recovery)); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-1160, 2016 WL 6902856, at *2 (N.D. Cal. July 18, 2016) (finally approving settlement recovering 15 percent of potential amount).

In other words, the negotiated relief readily satisfies Rule 23's fairness, reasonableness, and adequacy requirements. And on an absolute basis, the settlement returns millions of dollars to the Class, in a case that was fiercely contested, and where there was concrete risk, as proven by the Court's dismissal of the claims. Even upon a showing of liability, Plaintiffs faced many hurdles, including proving the quantum of monetary recovery. Under these circumstances, Plaintiffs and

---

or omitted information." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015).

[16] Similar to the restitution available for Plaintiffs' UCL and FAL claims, "'[t]he difference between price paid for a product and value received' is … the main measure of contract damages." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 652 (N.D. Cal. 2021).

their counsel wholeheartedly endorse the negotiated resolution of this action. Larry Decl. ¶ 25; Neiman Decl. ¶ 7; Fruchter Decl. ¶ 4; Lurie Decl. ¶ 12.

> **2.** **The costs, risk, and delay of continued appeal and any trial weigh in favor of approval.**

The Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), reflects the high levels of cost, risk, and lengthy duration that accompany all class actions. Here, those risks are heightened, given the Court's dismissal of Plaintiffs' claims prior to settlement.

As to the merits of the case, while Plaintiffs believe they had a strong case on liability, they recognize that they lost on a motion to dismiss before this Court, and would have had to win in the Ninth Circuit to revive their claims. Plaintiffs believe their arguments on appeal were correct, but the reality is that only 14% of private civil litigants obtain reversals on appeal in the federal courts.[17] Additionally, the primary roadblock to Plaintiffs' claims, the Ninth Circuit's *Sonner* decision, is still controlling, despite many cases seeking establish a basis for narrowing or avoiding its import. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300 (9th Cir. 2022); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308 (9th Cir. 2022); *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023); *Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022).

Even if Plaintiff had succeeded on appeal, recovery was still uncertain and potentially years away. To start, a ruling from the Ninth Circuit would likely not issue until months after oral argument. Even then, on remand, the parties would have to engage in months of discovery before class certification briefing. Adversarial class certification proceedings would present another risk, *see dotStrategy Co. v. Facebook*, 2021 WL 2550391 (denying class certification in similar class action), and would take months to resolve (or longer, in the event of appellate proceedings under

---

[17] *Just the Facts: U.S. Courts of Appeals*, United States Courts (Dec. 20, 2016), https://www.uscourts.gov/news/2016/12/20/just-facts-us-courts-appeals#table2

Rule 23(f)). Next would come the class-notice process, followed by summary-judgment proceedings. Summary judgment would prevent a further risk of non-recovery, *see, e.g.*, *id.*, and would have incurred substantial costs—likely in the high six figures, at least—on expert testimony relating to the appropriate measure of damages and/or restitution. Finally, if Plaintiffs' claims survived summary judgment, trial would follow, where success would be uncertain. If Plaintiffs were to prevail, an appeal would follow, presenting another set of hurdles and in all likelihood taking at least two years more to resolve. Thus, absent settlement, a recovery would be unlikely before 2027 at the earliest.

On the other hand, if LinkedIn were to prevail at all—on appeal from the dismissal order, at class certification, on a Rule 23(f) appeal from a class certification order, on summary judgment, at trial, or on appeal after trial—the Class would get nothing. In light of those multiple, real risks, and the time and expense that would go into overcoming them, the $6.625 million class recovery provided by the Settlement offers an excellent bargain.

### 3. The distribution method will ensure the fund is automatically distributed, weighing in favor of approval.

The next factor for the Court to consider is "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Parties have done all that was practicable to ensure that relief is distributed to the Class members as seamlessly as possible. Each class member will receive a payment equal to the portion of the settlement fund proportionate to the class members' spending on LinkedIn advertising during the class period. *See* Agreement ¶ V.3.[18]

The payment methods are also intended to ensure maximum distribution of funds with minimal action required by the Class members. Class members entitled to receive more than $5 would receive payments by check mailed to the address on file with LinkedIn (or any updated address provided to the Settlement Administrator), unless the Class member opted to instead receive a virtual payment or ad credit. *See* Ex. B ("Addendum"), §4 (a)(i). All checks will expire

---

[18] Any class member whose *pro rata* payment would be less than $0.01 will be rounded up to $0.01.

if uncashed after 180 days, and virtual payments will expire if the card is not activated within 180 days.[19] Addendum § 4.

Any uncashed funds will then be redistributed to those Class members who received ad credit, or did timely cash their checks or activate their virtual payment cards in the form of a second round of distributions. *Id.* § 4(c). Those second-round distributions will be calculated based on each entitled class member's *pro rata* share of the remaining amount, and will be issued in the same form in which the original payment was made. *Id.* The second-round distributions would expire if not activated within 90 days, and further distribution rounds with 30-day expiration periods would follow until the cost of administration exceeds the amount to be distributed, at which point the remaining funds will be donated to the proposed *cy pres* recipient, the Consumer Federation of America. *Id.*; Agreement § II.10.

For Class members who are entitled to receive less than $5 from the fund, who advertised on LinkedIn on or after February 27, 2023, and for whom LinkedIn has active billing information (referred to as "Active Advertisers"), the default payment form will be LinkedIn ad credit, automatically applied to their accounts, although those Class members could elect to instead receive payment by check (if the amount is more than $1) or by virtual payment. *Id.* §4(b)(ii). Finally, Class members entitled to less than $5 but who are not Active Advertisers, the default payment will be virtual, but they may elect to receive payment by check (if more than $1) or by ad credit instead. . *Id.* §4(a)(i). Class members who wish to modify their payment method may request to do so at any point prior to the Objection/Exclusion Deadline. *Id.* §§ 4(a), (b).

Through this process, if the Settlement is approved, millions of dollars will be distributed to Class members who will have to do nothing more than cash a check or activate a virtual payment card.[20] Accordingly, this factor favors approval.

---

[19] Once activated, the virtual payments do not expire.
[20] When activating the digital payment, the recipients will be required to confirm that they are doing so on behalf of the entity that placed advertisements with LinkedIn (i.e., the class member).

### 4. The proposed fee award is in line with the Circuit benchmark.

The next factor—"the terms of any proposed award of attorneys' fees, including timing of payment," Fed. R. Civ. P. 23(e)(2)(C)(iii)—likewise favors approval. As noted, Plaintiffs' counsel seek compensation from the settlement fund, which necessarily entails a fee award that is proportional to the Class's recovery. Here, the fee would compensate counsel at a multiplier of 0.65 (which will decrease as proceedings continue), *See* Larry Decl. ¶ 21; Neiman Decl. ¶ 6; Fruchter Decl. ¶ 3; Lurie Decl. ¶ 11, which is more than reasonable in case like this, where protracted litigation led to a strong recovery for the class. *See Sadowska v. Volkswagen Grp. Of Am.*, No. CV 11-00665-BRO (AGRx), 2013 WL 9600948, at *9 (C.D. Cal. Sept. 25, 2013) ("Multipliers can range from 2 to 4 or even higher"); *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving 6.85 multiplier and stating that it "still falls well within the range of multipliers that courts have allowed") (collecting cases). The proposed award is therefore appropriate, and further supports preliminary approval.

### 5. There are no additional agreements requiring disclosure under Rule 23(e)(3).

Rule 23 also requires consideration of "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), which includes "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Here, the Settlement, the Addendum, and LinkedIn's updates to its Ads Agreement are the only agreements relating to the resolution of this case. Larry Decl. ¶ 18.  Accordingly, this factor also favors settlement.

### D. The settlement treats all settlement class members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among the class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note, 2018 amendments.

Here, the settlement treats all Class members the same, paying them an amount proportionate to the amount they spent on LinkedIn advertising during the class period, and therefore proportional to any recovery they could have obtained at trial. *See, e.g. Altamirano v. Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (no preferential treatment where settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct").

Finally, though Plaintiffs seek to receive additional money in the form of service awards, the extra payments are in recognition for the service they performed on behalf of the Class, and the Ninth Circuit has approved such awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 ("[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'") (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)). The proposed awards here are commensurate with the substantial discovery responded to by Plaintiffs, and their direct participation in the mediation that led to the Settlement.

### III.   The Court should set a schedule for settlement administration and final approval.

If the Court preliminarily approves the Settlement, notice must issue, and a final approval hearing must be scheduled. Accordingly, Plaintiffs propose the following schedule:

| Event | Deadline |
|---|---|
| Dissemination of class notice | 21 days after preliminary approval |
| Plaintiff to move for attorneys' fees and incentive award | 21 days after preliminary approval |
| Deadline for class members to object to or request exclusion from the settlement | 56 days after preliminary approval |
| Plaintiff to move for final approval | 70 days after preliminary approval |
| Deadline for filing affidavit attesting to notice | 14 days prior to final approval hearing |
| Final approval hearing | At least 100 days after preliminary approval |

## CONCLUSION

For the forgoing reasons, Plaintiffs respectfully request that the Court certify the proposed Class for settlement purposes, appoint Keller Postman LLC and Romanucci & Blandin, LLC as Class Counsel, preliminarily approve the Settlement, approve the notice plan, and set a final approval hearing.

Dated: July 25, 2024

Respectfully submitted,

s/ *J. Dominick Larry*

Warren Postman (#330869)
wdp@kellerpostman.com
**KELLER POSTMAN LLC**
1101 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
Phone: (202) 918-1123
Facsimile: (312) 971-3502

Antonio Romanucci (*pro hac vice*)
aromanucci@rblaw.net
David Neiman (*pro hac vice*)
dneiman@rblaw.net
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Phone: (312) 458-1000
Facsimile: (312) 458-1004

*Attorneys for Plaintiffs TopDevz, LLC, and Noirefy, Inc.*

J. Dominick Larry (*pro hac vice*)
nl@kellerpostman.com
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Phone: (312) 948-8472
Facsimile: (312) 971-3502

Keith Custis (#218818)
kcustis@custislawpc.com
**CUSTIS LAW, P.C.**
1875 Century Park East, Suite 700
Los Angeles, CA 90067
Phone: (213) 863-4276
Facsimile: (213) 863-4277

1

## **PROOF OF SERVICE**

2

The undersigned certified and declared as follows:

3

I am a citizen of the United States and employed in Cook County, State of Illinois. I am

4

over the age of eighteen years and not a party to the within-entitled action. My business address is

5

150 N. Riverside Plaza, Suite 4100, Chicago, IL 60606. On the date set forth below, I served a

6

copy of the following document(s):

7

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

8

On the interested parties in the subject actions by placing a true copy thereof as indicated

9

below, and as addressed as follows:

10

$\boxed{\text{X}}$  **BY ECF:** by electronic service on the parties to this action pursuant to Local Rule 5-1. I hereby certify that the above documents were uploaded to the ECF Website and the ECF Webmaster will give email notification to all registered parties in this action.

11

12

13

I declare under penalty of perjury under the laws of the State of California and the United States that the above is true and correct.

14

15

Dated: July 25, 2024                    _s/ J. Dominick Larry_____

16

17

18

19

20

21

22

23

24

25

26

27

28