J. Dominick Larry (*pro hac vice*)
nl@kellerpostman.com
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Phone: (312) 948-8472

*Settlement Class Counsel*

(Additional counsel listed on signature page)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

|  |  |
|---|---|
| *In Re LinkedIn Advertising Metrics Litigation* | Case No.:   5:20-cv-08324-SVK <br><br> **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** <br><br> Date: January 28, 2025 <br> Time: 10:00 a.m. <br> Dept: Courtroom 6 – 4th Floor <br> Judge: Hon. Susan van Keulen |

# NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT on January 28, 2024, at 10:00 a.m., or as soon thereafter as this matter may be heard, Plaintiffs TopDevz, LLC and Noirefy Inc. will appear through counsel before the Honorable Susan van Keulen, Courtroom 6, 4th Floor of the United States District Court for the Northern District of California, located at 280 South 1st Street, San Jose, CA 95113.

At that time, Plaintiffs will move the Court for an order confirming certification of the Settlement Class, granting final approval of the proposed class action settlement, and awarding attorneys' fees in the amount of $1,656,250, reimbursement of $154,874.94 in litigation costs, and service awards of $25,000 to each of the Class Representatives.

This motion is based on the notice of motion and motion for final approval of class-action settlement; Plaintiffs' previously filed motion for attorneys' fees, costs, and incentive award, ECF No. 122; the following memorandum of points and authorities; the attached declarations and exhibits; the arguments of counsel; and any other matters in the record or that properly come before the Court.

Dated: November 19, 2024

Respectfully submitted,

*s/ J. Dominick Larry*

Warren Postman (#330869)
 wdp@kellerpostman.com
**KELLER POSTMAN LLC**
1101 Connecticut Ave., N.W., Suite 1100
Washington, DC 20036
Phone: (202) 918-1123
Facsimile: (312) 971-3502

Antonio Romanucci (*pro hac vice*)
 aromanucci@rblaw.net
David Neiman (*pro hac vice*)
 dneiman@rblaw.net
**ROMANUCCI & BLANDIN, LLC**
321 N. Clark Street, Suite 900
Chicago, IL 60654
Phone: (312) 458-1000
Facsimile: (312) 458-1004

*Settlement Class Counsel*

J. Dominick Larry (*pro hac vice*)
 nl@kellerpostman.com
**KELLER POSTMAN LLC**
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606
Phone: (312) 948-8472
Facsimile: (312) 971-3502

Keith Custis (#218818)
 kcustis@custislawpc.com
**CUSTIS LAW, P.C.**
1875 Century Park East, Suite 700
Los Angeles, CA 90067
Phone: (213) 863-4276
Facsimile: (213) 863-4277

# TABLE OF CONTENTS

STATEMENT OF ISSUES TO BE DECIDED ................................................................. 1

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

SETTLEMENT TERMS ................................................................................................... 4

I.      The proposed Settlement Class. ........................................................................... 4

II.     The settlement fund. ............................................................................................. 4

III.    Non-monetary relief. ............................................................................................ 5

IV.     The release of the Class members' claims. .......................................................... 5

V.      Attorneys' fees, costs, and service awards. ......................................................... 6

ARGUMENT .................................................................................................................... 6

I.      The settlement provided the best notice practicable. ........................................... 6

II.     The Court should grant final settlement approval. ............................................... 9

        A.      Plaintiffs and their counsel have adequately represented the Class. .............. 9

        B.      The settlement was the result of arm's-length negotiations, facilitated by
                the Ninth Circuit Mediator and a private mediator, over a lengthy time
                period. ........................................................................................................... 10

        C.      The relief provided by the settlement is supports final approval. .................. 12

                1.      The settlement provides substantial relief to the Class. .................... 12

                2.      The costs, risk, and delay of continued appeal and any trial
                        weigh in favor of approval. ............................................................... 15

                3.      The distribution method will ensure the fund is automatically
                        distributed, weighing in favor of approval. ...................................... 16

                4.      The proposed fee and awards are in line with the Circuit
                        benchmark. ........................................................................................ 18

                5.      There are no additional agreements requiring disclosure
                        under Rule 23(e)(3). .......................................................................... 18

        D.      The settlement treats all Settlement Class Members equitably. ..................... 18

III.    The Class's reaction further supports final approval. ......................................... 19

IV.     The Settlement Class should remain certified. ................................................... 20

**A.**    **The Class is too numerous for individual joinder.** ................................... 21

**B.**    **The Class presents common questions of law and fact.** ............................ 21

**C.**    **Plaintiffs' claims are typical of the Class Members' claims.** ....................... 21

**D.**    **Plaintiffs and their counsel have and will continue to adequately represent the Class.** ................................................................................. 22

**E.**    **Common issues predominate.** ..................................................................... 23

**F.**    **Class proceedings are superior.** ................................................................... 23

**CONCLUSION** ......................................................................................................... 24

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.: 5:20-cv-08324-SVK

# TABLE OF AUTHORITIES

**Cases**

*Altamirano v. Shaw Indus., Inc.*,
No. 13-cv-00939, 2015 WL 4512372 (N.D. Cal. July 24, 2015) .................................... 19

*Amchem Prod. v. Windsor*,
521 U.S. 591 (1997) ........................................................................................................ 23

*Arroyo v. Int'l Paper Co.*,
No. 17-cv-6211, 2019 WL 1508457 (N.D. Cal. Apr. 4, 2019) ........................................ 21

*Bostick v. Herbalife Int'l of Am., Inc.*,
No. 13-cv-2488, 2015 WL 12745798 (C.D. Cal. Aug. 18, 2015) .................................... 8

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................................................................. 20

*Churchill Vill., LLC v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................................................ 7

*Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*,
553 F. Supp. 3d 881 (N.D. Cal. 2020) .............................................................................. 20

*dotStrategy Co. v. Facebook Inc.*,
No. C 20-00170 WHA, 2021 WL 2550391 (N.D. Cal. June 22, 2021) ..................... 12, 16

*dotStrategy Co. v. Facebook Inc.*,
No. C 20-00170 WHA, 2021 WL 5415265 (N.D. Cal. Nov. 20, 2021),
*aff'd sub nom. dotStrategy Co. v. Meta Platforms, Inc.*,
No. 21-17056, 2022 WL 17248983 (9th Cir. Nov. 28, 2022) ........................................ 12

*dotStrategy Co. v. Twitter, Inc.*
476 F. Supp. 3d 978 (N.D. Cal. 2020) .............................................................................. 12

*dotStrategy Co. v. Twitter, Inc.*,
No. 19-cv-6176, ECF No. 105 (N.D. Cal. Dec. 21, 2021) ............................................... 13

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) .......................................................................................... 21

*Garcia v. Schlumberger Lift Sols.*,
No. 118CV01261DADJLT, 2020 WL 6886383 (E.D. Cal. Nov. 24, 2020),
report and recommendation adopted, No. 118CV01261DADJLT,
2020 WL 7364769 (E.D. Cal. Dec. 15, 2020) .................................................................. 11

*Garner v. State Farm Mut. Auto. Ins. Co.*,
No. 08-cv-1365, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ...................................... 20

iv

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022) ........................................................ 15

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) .............................................. 6, 7, 23

*Haralson v. U.S. Aviation Servs. Corp.*,
    383 F. Supp. 3d 959 (N.D. Cal. 2019) ............................................ 11

*Hayes v. MagnaChip Semiconductor Corp.*,
    No. 14-cv-1160, 2016 WL 6902856 (N.D. Cal. July 18, 2016) ...................... 15

*Hesse v. Sprint Corp.*,
    598 F.3d 581 (9th Cir. 2010) ....................................................... 5

*Hodges v. Akeena Solar, Inc.*,
    274 F.R.D. 259 (N.D. Cal. 2011) .................................................. 24

*In re Apple Processor Litig.*,
    No. 22-16164, 2023 WL 5950622 (9th Cir. Sept. 13, 2023) ........................ 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) .................................................. 10, 11

*In re Hyundai and Kia Fuel Economy Litig.*,
    926 F.3d 539 (9th Cir. 2019) ......................................... 7, 20, 21, 23

*In re Mego Fin. Corp. Secs. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ..................................................... 22

*In re MyFord Touch Consumer Litig.*,
    No. 13-cv-03072-EMC, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ................ 11

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ............................................ 14

*In re Online-DVD Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .................................................. 8, 19

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
    895 F.3d 597, 611 (9th Cir. 2018) ............................................... 12

*In re: Cathode Ray Tube (Crt) Antitrust Litig.*,
    No. 07-cv-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016),
    *appeal dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017).............................. 8

IntegrityMessageBoards.com v. Facebook, Inc.,
    No. 18-CV-05286-PJH, 2021 WL 3771785 (N.D. Cal. Aug. 24, 2021) ................. 13

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.: 5:20-cv-08324-SVK

*Johnson v. Nextel Commc'ns Inc.*,
    780 F.3d 128 (2d Cir. 2015)...................................................................................... 23

*Juris v. Inamed Grp.*,
    685 F.3d 1294 (11th Cir. 2012) .................................................................................. 7

*Just Film, Inc. v. Buono*,
    847 F.3d 1108 (9th Cir. 2017) .................................................................................. 22

*Klaehn v. Cali Bamboo LLC*,
    No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022)........................................ 15

*Kulesa v. PC Cleaner, Inc.*,
    No. 12-cv-725, 2014 WL 12581770 (C.D. Cal. Aug. 26, 2014) ................................. 8

*Lane v. Facebook, Inc.*,
    696 F.3d 811 (9th Cir. 2012) ...................................................................................... 6

*Letizia v. Facebook Inc.*,
    267 F. Supp. 3d 1235 (N.D. Cal. 2017) .................................................................... 13

*Lewis v. Silvertree Mohave Homeowners' Ass'n, Inc.*,
    No. 16-03581, 2017 WL 549816 (N.D. Cal. Nov. 16, 2017) ..................................... 11

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) .................................................................................. 15

*Lusk v. Five Guys Enterps LLC*,
    No. 117CV00762AWIEPG, 2022 WL 4791923 (E.D. Cal. Sept. 30, 2022)................... 11

*McKnight v. Uber Techs., Inc.*,
    No. 14-cv-5615, 2017 WL 3427985 (N.D. Cal. Aug. 7, 2017) .................................... 6

*Mullins v. Direct Digital LLC*,
    795 F.3d 654 (7th Cir. 2015) ...................................................................................... 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004)............................................................................... 19

*Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ...................................................................................... 7

*Pulaski & Middleman, LLC v. Google, Inc.*,
    802 F.3d 979 (9th Cir. 2015) .................................................................................... 14

*Rihn v. Acadia Pharm. Inc.*,
    No. 15-CV-00575 BTM-DHD, 2018 WL 513448 (S.D. Cal. Jan. 22, 2018).................. 14

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .................................................................................. 22

vi

*Rodriguez v. W. Publ'g Corp.*,
        563 F.3d 948 (9th Cir. 2009) ........................................................................ 7, 19, 22

*Sali v. Corona Regional Medical Center*,
        909 F.3d 996 (9th Cir. 2018) ................................................................................ 22

*Schneider v. Chipotle Mexican Grill, Inc.*,
        336 F.R.D. 588 (N.D. Cal. 2020) .......................................................................... 19

*Schuchardt v. Law Office of Rory W. Clark*,
        314 F.R.D. 673 (N.D. Cal. 2016) .......................................................................... 10

Singh v. Google LLC,
        No. 16-CV-03734-BLF, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022) ............................. 13

*Sonner v. Premier Nutrition Corp.*,
        49 F.4th 1300 (9th Cir. 2022) ............................................................................... 15

*Sonner v. Premier Nutrition Corp.*,
        971 F.3d 834 (9th Cir. 2020) ............................................................................... 13

*Staton v. Boeing Co.*,
        327 F.3d 938 (9th Cir. 2003) ................................................................................... 6

*Stovall-Gusman v. W.W. Granger, Inc.*,
        No. 13-CV-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ........................ 14

*Uschold v. NSMG Shared Services, LLC*,
        No. 18-cv-1039, 2020 WL 3035776 (N.D. Cal. June 5, 2020) ...................................... 16

*Wal-Mart Stores v. Dukes*,
        564 U.S. 338 (2011) .............................................................................................. 21

**Statutes and Rules**

28 U.S.C. § 1715 .............................................................................................................. 9

Fed. R. Civ. P. 23 .................................................................................................... *passim*

**Other Authorities**

*Annual advertising revenue generated by LinkedIn worldwide from 2017 to 2027*,
        Statista, https://www.statista.com/statistics/275933/linkedins-advertising-revenue/ ....... 13

*Consumer Complaint Survey Report*, Consumer Federation of America,
        https://consumerfed.org/wp-content/uploads/2023/05/2022-Consumer-Complaint-
        Survey-Report.pdf................................................................................................... 5

*Facebook Reports Fourth Quarter and Full Year 2019 Results*, Meta (Jan 29, 2020), https://investor.fb.com/investor-news/press-release-details/2020/Facebook-Reports-Fourth-Quarter-and-Full-Year-2019-Results/default.aspx ............................................... 13

Fed. R. Civ. P. 23(e)(2)(A) and (B) advisory committee's note to 2018 amendments ........... 9, 11

Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendments............................ 12

Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note to 2018 amendments ........................... 19

Federal Judicial Center, Judges' Class Action Notice & Claims Process Checklist and Plain Language Guide (2010) ........................................................................................................ 7

*Nation's Top Consumer Complaints*, Consumer Federation of America, https://consumerfed.org/press_release/nations-top-consumer-complaints-2019/.............. 5

*Overview*, Consumer Federation of America, https://consumerfed.org/overview/ ........................ 4

*We discovered two measurement issues. Here's how we're making it right*, LinkedIn Marketing Solutions Blog (Nov. 12, 2020) at https://business.linkedin.com/marketing-solutions/blog/linkedin-news/2020/how-we-re-working-to-improve .............................. 14

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.: 5:20-cv-08324-SVK

## **STATEMENT OF ISSUES TO BE DECIDED**

1.     Whether the notice provided to the Class satisfies Rule 23 and due process.

2.     Whether the proposed Settlement is fair, reasonable, and adequate.

3.     Whether the Court should confirm certification of the Class.

## **INTRODUCTION**

The class settlement reached between Plaintiffs TopDevz, LLC and Noirefy Inc and Defendant LinkedIn Corp. secured the recovery of $6.625 million despite the dismissal of Plaintiffs' claims with prejudice in December 2021. Provided with notice of such an improbably strong recovery, the Class has responded favorably, with not a single member objecting and only two requests for exclusion (representing five LinkedIn advertising accounts). The Class's overwhelmingly positive reaction to the settlement confirms what this Court preliminarily found in September: that the Settlement—reached after years of litigation and extended negotiations with the assistance of the Ninth Circuit mediator and a private mediator—is more than fair, reasonable, and adequate. *See* ECF No. 119.

The proposed Settlement is not only strong generally by comparison to the risks of nonrecovery, the specifics justify final approval as well. The $6.625 million settlement fund is non-reversionary, and Class Members do not need to make any claims to recover funds, instead receiving their payments automatically in *pro rata* amounts based on the amount they spent on LinkedIn advertising. The default payment methods are intended to maximize payout and reduce administrative cost as well, with the largest Class Members receiving their payments by check, smaller Class Members who recently advertised with LinkedIn receiving LinkedIn ad credits, the remainder receiving digital payments. Class Members were also able to choose to instead receive payment by one of the other methods subject to their preferences.[1] Inevitably, some of the payments will go unused, and here the Settlement provides comprehensively again: upon expiration, unclaimed funds will be redistributed to those Class Members who did timely utilize their payment method, with the process repeating until the administrative cost of further

---

[1] If a class member's *pro rata* entitlement is less than $1, they cannot obtain payment by check.

distribution outweighs the amount remaining, at which point the money will go to a *cy pres* recipient.

Beyond the terms of the Settlement itself, notice has been disseminated without a hitch. CAFA notice was effectuated, and no attorney general opposed the settlement. Class notice was distributed in accordance with the preliminary approval order and delivered directly to 98.3% of the Class, and no Class Member objected. Accordingly, for the reasons set forth herein and in Plaintiffs' motion for attorneys' fees, costs, and incentive award, Plaintiffs respectfully request that the Court enter an order: (1) confirming certification of the Settlement Class: (2) finding that the notice complied with Rule 23 and due process; (3) finally approving the Settlement as fair, reasonable, and adequate; (4) approving the parties' proposed *cy pres* recipient; (5) and approving Plaintiffs' request for attorneys' fees, costs, and incentive award.

## **BACKGROUND**

Plaintiffs filed their initial class action complaint on November 25, 2020. ECF No. 1. After LinkedIn moved to dismiss, Plaintiffs amended their complaint on February 17, 2021. ECF No. 49. On February 24, 2021, Plaintiffs' claims were consolidated with similar claims filed by another plaintiff, Synergy RX PBM LLC, *see* ECF No. 52, and an amended consolidated complaint was filed on March 17, 2021. ECF No. 55. LinkedIn again moved to dismiss, ECF No. 65, and the Court granted the motion in part, without prejudice on August 3, 2021. ECF No. 85. Plaintiffs filed a second amended complaint on August 17, 2021,[2] ECF No. 89, which LinkedIn moved to dismiss on August 31, 2021, ECF No. 97. The Court granted LinkedIn's motion with prejudice and entered a judgment in LinkedIn's favor on December 27, 2021. ECF Nos. 104, 105.

Plaintiffs timely appealed on January 26, 2022. ECF No. 106. The parties held a settlement conference with the Ninth Circuit mediator on March 4, 2022, but were unable to make meaningful progress toward a resolution at that time, and the case was released from the mediation program on June 6, 2022. *See TopDevz, LLC et al. v. LinkedIn Corp.*, No. 22-15118, ECF Nos. ("App. ECF. Nos.") 5, 11 (9th Cir.); ECF No. 115-2, ¶ 12. The parties completed briefing the appeal on October

---

[2] Synergy RX PBM LLC voluntarily dismissed its claims on July 4, 2021. ECF No. 84.

25, 2022, App. ECF No. 29, and the case was set for oral argument on April 17, 2023, App. ECF No. 34.

Following the scheduling of oral argument, the parties resumed their settlement discussions, and scheduled a private mediation with Randall W. Wulff, of Wulff Quinby Sochynsky, on March 31, 2023. App. ECF No. 39; ECF No. 115-2, ¶ 13. With mediation scheduled, the parties moved to vacate oral argument, and the Ninth Circuit granted the motion on March 27, 2023. App. ECF No. 40. The parties engaged in a full-day mediation on March 31, 2023, and the session ended with the parties both accepting a mediator's proposal and reaching an agreement in principle on the terms of a class-wide settlement. ECF No. 115-2, ¶¶ 13–15.

Following the mediation, the parties engaged the assigned Circuit Mediator to inform him of the agreement in principle, and to obtain guidance on resolving the outstanding settlement issues while the case remained off the Ninth Circuit's oral argument calendar. ECF No. 115-2, ¶ 15. Over the following year, with the Circuit Mediator's assistance, the parties worked through a variety of issues as part of the finalization of the settlement agreement, including complex analysis of the underlying advertising data, the process by which Class Members will obtain payment if the settlement is approved, and the methods by which payment will occur. *Id.*, ¶ 16. Now, the parties have finalized the settlement agreement, the notices, and the payment distribution plan, and stipulated to the dismissal of the appeal for settlement purposes.

The Court granted Plaintiffs' motion for preliminary approval on September 10, 2024, ECF No. 118, amended the order on September 23, 2024, ECF No. 119, and set a new final approval hearing date. ECF Nos. 121. Since then, the Settlement Administrator has disseminated the class notice as directed by the Settlement Agreement and Preliminary Approval Order, resulting in direct notice to 98.3% of the Class. *See* Declaration of Eric Schachter Regarding Notice ("Schachter Decl.") ¶¶ 6–15. Additionally, on October 1, 2024, Plaintiffs' fee petition was posted to the Settlement Website. *Id.* ¶ 16 n.3.

**SETTLEMENT TERMS**

**I.   The proposed Settlement Class.**

In its Preliminary Approval Order, the Court certified following class ("the Class"), for settlement purposes only:

> All U.S. advertisers[3] who purchased LinkedIn Advertising[4] during the Class Period.[5] Excluded from the Settlement Class are LinkedIn; any entity in which LinkedIn has a controlling interest; LinkedIn's officers, directors, legal representatives, successors, subsidiaries, and assigns; any advertiser who timely files a request for exclusion; and any judge to whom this case is assigned, his or her spouse, and all persons with the third degree of relationship to either of them, as well as the spouses of such persons.

ECF No. 119, ¶ 5.

**II.   The settlement fund.**

The settlement will establish a fund of $6,625,000.00. Ex. A, Settlement, ¶¶ II.18, V.1.[6] That money will be distributed to the Class Members on a *pro rata* basis, proportionate to the amount each member spent on LinkedIn advertising during the class period. *Id.* ¶ V.2. The fund will also cover all costs associated with notice and administration, attorneys' fees and costs, and incentive awards. Settlement, ¶¶ IV, V.7, X. The Settlement Fund is non-reversionary, meaning that LinkedIn will not be entitled to retain any part of the Settlement fund for any reason. *Id.* ¶ V.6. Instead, unclaimed funds will be redistributed to those Class members who received ad credits, or timely cashed their checks or activated their digital payments, repeatedly, until the administrative cost exceeds the reclaimed amount, at which point the remaining funds will go to a *cy pres* recipient.[7]

---

[3] LinkedIn has identified "U.S. advertisers" for the purposes of this Settlement as advertisers whose billing data currently on file with LinkedIn reflects that the advertiser is based in the United States.

[4] "LinkedIn Advertising" means "advertising offered or purchased through LinkedIn Marketing Solutions." Settlement, ¶ II. 18.

[5] The Class Period is January 1, 2015 through May 31, 2023.

[6] All citations to exhibits refer to the exhibits to the declaration of J. Dominick Larry, filed contemporaneously herewith.

[7] The parties have agreed, subject to Court approval, that the *cy pres* recipient shall be the Consumer Federation of America. Settlement ¶ II.10. The Consumer Federation of America is an

Since preliminary approval, the Settlement Administrator and the parties established the settlement website and disseminated class notice. *See* Schachter Decl., ¶¶ 6–18. The deadline for Class Members to request exclusion or object to the settlement was November 5, 2024, *see* ECF No. 119, ¶¶ 12, 16. No Class member objected, and only two requests for exclusion were received, on behalf of five LinkedIn advertising accounts. Schachter Decl. ¶¶ 19, 20.

## III. Non-monetary relief.

Plaintiffs secured two forms of non-monetary relief for the Class. First, LinkedIn modified its Ads Agreement with advertisers in a manner agreed upon by the parties, addressing the issues noted by Plaintiff in the operative complaint. *See* ECF No. 115-2, ¶ 17. Second, in the Settlement Agreement itself, LinkedIn agreed to use commercially reasonable efforts to engage a reputable third party to audit certain click and impression metrics, for at least two years after the Final Approval Order. *See* Settlement ¶ V.1.

## IV. The release of the Class members' claims.

In exchange for the monetary and injunctive relief, Plaintiffs and the Class members will provide a release of claims against LinkedIn, its officers, directors, legal representatives, successors, subsidiaries, and assigns. Settlement, ¶¶ 1.19, XIV.1–2. The release is limited to claims "that arise from or relate to the facts, activities or circumstances alleged in the Action." *Id.*, ¶ XIV.1.

Here, the parties seek to release only those claims that were or could have been pleaded based on the facts alleged by Plaintiffs. In short, the settlement release has the same scope that *res judicata* principles would have applied in the event of a judgment on the merits concerning a

---

association of non-profits that, among other things, performs research used to assist consumer advocates and policymakers in matters including the remediation of false-advertising practices. *See Overview*, Consumer Federation of America, https://consumerfed.org/overview/ (last accessed Nov. 19, 2024); *Consumer Complaint Survey Report*, Consumer Federation of America, https://consumerfed.org/wp-content/uploads/2023/05/2022-Consumer-Complaint-Survey-Report.pdf (last accessed Nov. 19, 2024); *Nation's Top Consumer Complaints*, Consumer Federation of America, https://consumerfed.org/press_release/nations-top-consumer-complaints-2019/ (last accessed Nov. 19, 2024). Neither Keller Postman nor Romanucci & Blandin has any pre-existing relationship with the *cy pres* recipient.

certified class. Such a release is appropriate and typical. *See Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).

**V.    Attorneys' fees, costs, and service awards.**

Class counsel have litigated this case for just under four years and have advanced hundreds of thousands of dollars in litigation expenses, but have yet to be compensated for their efforts. As detailed in Plaintiffs' petition for attorneys' fees and incentive awards, ECF No. 122-1, Class Counsel request reimbursement of their $154,874.94 in litigation expenses, an award of $1,656,750 in attorneys' fees, and service awards of $25,000 each to Plaintiffs as class representatives. *Id.* These amounts were included in the notice disseminated to the class. *See* Schachter Decl., Exs. B–D.

## ARGUMENT

"The Ninth Circuit maintains a strong judicial policy that favors the settlement of class actions." *McKnight v. Uber Techs., Inc.*, No. 14-cv-5615, 2017 WL 3427985, at *2 (N.D. Cal. Aug. 7, 2017). The Court must, however, "determine whether a proposed settlement is fundamentally fair, adequate and reasonable" pursuant to Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003). "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class." *See id.* (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)). "Whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court." *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012). And separately from the adequacy of the settlement itself, class members must receive adequate notice of the settlement, with an opportunity to object or request exclusion. *See* Fed. R. Civ. P. 23(e)(1); Fed. R. Civ. P. 23(b)(3).

Here, notice was extraordinarily effective, reaching 98.3% of the Class directly, and the settlement warrants final approval, a fact implicitly recognized by the absence of *any* objection from the Class Members.

1    **I.      The settlement provided the best notice practicable.**

2           "Before the district court approves a class action settlement under Rule 23(e), it is 'critical'

3    that class members receive adequate notice." *In re Hyundai and Kia Fuel Economy Litig.*, 926

4    F.3d 539, 567 (9th Cir. 2019) (quoting *Hanlon*, 150 F.3d at 1025). "To satisfy Rule 23(e)(1),

5    settlement notices must 'present information about a proposed settlement neutrally, simply, and

6    understandably.'" *Id.* (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009)).

7    "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to

8    alert those with adverse viewpoints to investigate and to come forward and be heard,'" *id.* (quoting

9    *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)), and if the class is "notified

10   of a proposed settlement in a manner that does not systematically leave any group without notice."

11   *Officers for Justice v. Civil Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 624 (9th Cir.

12   1982) (citation omitted).

13          "The rule does not insist on actual notice to all class members in all cases." *Mullins v.*

14   *Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015). Rather, it only requires the "best notice

15   that is practicable under the circumstances, including individual notice to all members who can be

16   identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Juris v. Inamed Grp.*,

17   685 F.3d 1294, 1321 (11th Cir. 2012) ("[E]ven in Rule 23(b)(3) class actions, due process does

18   not require that class members actually receive notice") (collecting cases). Generally, a notice

19   campaign that reaches 70% or more of a class is considered reasonable. *See* Federal Judicial

20   Center, Judges' Class Action Notice & Claims Process Checklist and Plain Language Guide, at 3

21   (2010).

22          In addition to reaching the class, notice must describe the settlement and "clearly and

23   concisely state in plain, easily understood language:

24          (i)      the nature of the action;

25          (ii)     the definition of the class certified;

26          (iii)    the class claims, issues, or defenses;

27

28

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.: 5:20-cv-08324-SVK

1

2

3

4

5

6

     (iv)    that a class member may enter an appearance through an attorney if the member so desires;

     (v)    that the court will exclude from the class any member who requests exclusion;

     (vi)    the time and manner for requesting exclusion; and

     (vii)    the binding effect of a class judgment on members under Rule 23(c)(3).

7

8

Fed. R. Civ. P. 23(c)(2)(B); Fed. R. Civ. P. 23(e)(1)(1); *In re Online-DVD Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015).

9

10

11

12

13

14

15

     Here, as detailed in Plaintiffs' preliminary approval motion and approved by the Court, the best method for reaching this Class of digital advertisers was by email. *See* ECF No. 115-8, ¶ 10; ECF No. 119, ¶ 9. To that end, the parties and settlement administrator developed a plan providing for direct notice to the account email addresses on file with LinkedIn. *See* ECF No. 115-8; Schachter Decl. ¶¶ 8–15. For those Class Members for whom LinkedIn lacked an email address, or whose email addresses were invalid or resulted in bouncebacks, notice was disseminated by U.S.P.S. first-class mail for accounts that LinkedIn had a physical address on file. *Id.*

16

17

18

19

20

21

22

23

24

25

26

     That notice plan resulted in delivery of 245,766 email notices and 42,620 mail notices, reaching 98.3% of the Class. *See* Schachter Decl., ¶¶ 10, 14, 15. The Settlement Administrator also maintained the Settlement Website, which had 2,971 unique visitors and 3,450 page visits, and toll-free phone number, which received 254 calls. *Id.* ¶¶ 16–18. All told, the notice plan reached an estimated 98.3% of the 293,272 Class Members. *Id.* ¶ 10. This number far exceeds the 70% threshold identified by the Federal Judicial Center, and the notice rates in other similar class actions. *See In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. 07-cv-5944, 2016 WL 3648478, at *6 (N.D. Cal. July 7, 2016), *appeal dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017) (finally approving settlement with notice reach of 83%); *Bostick v. Herbalife Int'l of Am., Inc.*, No. 13-cv-2488, 2015 WL 12745798, at *6 (C.D. Cal. Aug. 18, 2015) (denying motion to reconsider final approval where 93% of class

27

28

received notice); *Kulesa v. PC Cleaner, Inc.*, No. 12-cv-725, 2014 WL 12581770, at *5 (C.D. Cal. Aug. 26, 2014) (finally approving settlement where 94.4% of class received notice).

Finally, the Settlement Administrator, on LinkedIn's behalf, provided notice to the Attorney General of the United States and the appropriate state officials as required by the Class Action Fairness Act, 28 U.S.C. § 1715. *See* Schachter Decl., ¶¶ 4–5. Neither Class Counsel nor the Settlement Administrator have been contacted by any government official in response to the CAFA notices. *Id.*, ¶ 5; Larry Decl. ¶ 3.

## II.     The Court should grant final settlement approval.

As with preliminary approval, Rule 23(e)(2) governs final approval of a class-action settlement. The rule instructs the Court to consider whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)   the costs, risks, and delay of trial and appeal;

    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv)  any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). On preliminary approval, the Court found these requirements satisfied, and they continue to weigh in favor of final approval, as discussed below.

### A.     Plaintiffs and their counsel have adequately represented the Class.

Rule 23(e)(2)(A) requires the assessment of the adequacy of the representation by the class representatives and attorneys, including by analyzing "the nature and amount of discovery" undertaken in the litigation. Fed. R. Civ. P. 23(e)(2)(A) and (B) advisory committee's note to 2018 amendments.

Here, as the Court found on preliminary approval, *see* ECF No. 119, ¶ 6, the class representatives have diligently represented the Class. In addition to working with counsel to craft four complaints—including by providing details and screenshots for their specific ad purchases—the plaintiffs each responded to a dozen interrogatories and 21 requests for production and conducted detailed ESI searches. ECF No. 122-2, ¶¶ 20–23. The class representatives were also active participants in the mediation process. They reviewed and approved of all settlement positions, and Noirefy's CEO traveled from Chicago to California to participate in the full-day mediation with Mr. Wulff, while TopDevz's former CEO participated throughout the mediation by telephone. ECF No. 122-2, ¶ 24.

Class Counsel have also adequately represented the Class. They vigorously litigated this case, drafting four complaints, opposing two motions to dismiss, engaging in substantial discovery efforts, and fully briefing the appeal. *See* ECF No. 115-2, ¶ 9. They also engaged multiple experts to assist in pursuing recovery, including source-code experts to analyze LinkedIn's auction system and anti-fraud measures, data analysts and auditors to review and analyze LinkedIn's advertising data, and an economics expert to develop and implement a damages model. *Id.* ¶ 10. And since preliminary approval, Class Counsel have continued their diligent work on the Class's behalf, working with the Settlement Administrator to ensure timely dissemination of notice, reviewing the Settlement Administrator's weekly notice reports, and following up for confirmatory information regarding the same. Larry Decl. ¶ 2.

Class Counsel's support of the Settlement can also be considered and favors approval. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). Here, Class Counsel have years of experience successfully litigating prior class actions involving consumer protection and fraud claims, and it is their considered judgment that the Settlement represents an outstanding result for the Class. ECF No. 115-2, ¶¶ 2–6; ECF No. 115-7, ¶¶ 3–5. "Given Class Counsel's extensive experience in this field, and their assertion that the settlement is fair, adequate, and reasonable, this factor supports final approval of the Settlement Agreement." *Schuchardt v. Law Office of Rory W. Clark*, 314 F.R.D. 673, 685 (N.D. Cal. 2016).

1

**B.    The Settlement was the result of arm's-length negotiations, facilitated by the Ninth Circuit Mediator and a private mediator, over a lengthy time period.**

2

3    The second Rule 23(e)(2) factor requires that the proposed settlement was negotiated at

4    arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as

5    [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading

6    up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) and (B) advisory committee's note to

7    2018 amendments. Where, as here, the settlement was negotiated before class certification, the

8    Court should also scrutinize the settlement "not only for explicit collusion, but also for more subtle

9    signs that class counsel have allowed pursuit of their own self-interests and that of certain class

10    members to infect the negotiations." *Haralson v. U.S. Aviation Servs. Corp.*, 383 F. Supp. 3d 959,

10    966 (N.D. Cal. 2019) (citing *In re Bluetooth*, 654 F.3d at 947).

11    Here, the Court already held that the Settlement "was negotiated at arm's length with the

12    assistance of the Ninth Circuit Mediator and the assistance of Randall Wulff of Wulff Quinby

13    Sochynsky." ECF No. 119, ¶ 4. The facts confirm the Court's prior finding. To start, the parties

14    did not begin settlement negotiations until after this Court dismissed plaintiffs' claims, plaintiffs

15    appealed the dismissal, and the parties were assigned to the Ninth Circuit mediation panel, all of

16    which was "after … a year of litigation during which time the parties had ample opportunity to

17    take discovery and assess the merits of this action." *Lewis v. Silvertree Mohave Homeowners'*

18    *Ass'n, Inc.*, No. 16-03581, 2017 WL 549816, at *3 (N.D. Cal. Nov. 16, 2017); ECF No. 115-2,

19    ¶¶ 9–13. Those initial efforts failed, and the parties did not revisit settlement again until appellate

20    briefing was complete. *Id.*

21    Second, the Settlement was the result of a full-day private mediation, and the fact that "the

22    Settlement is based on a mediator's proposal further supports a finding that the settlement

23    agreement is not the product of collusion." *Lusk v. Five Guys Enterps LLC*, No.

24    117CV00762AWIEPG, 2022 WL 4791923, at *9 (E.D. Cal. Sept. 30, 2022); *Garcia v.*

25    *Schlumberger Lift Sols.*, No. 118CV01261DADJLT, 2020 WL 6886383, at *13 (E.D. Cal. Nov.

26    24, 2020), report and recommendation adopted, No. 118CV01261DADJLT, 2020 WL 7364769

27    (E.D. Cal. Dec. 15, 2020); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2019

28

WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) (settlement being based on mediator's proposal supported finding that settlement resulted from arm's-length negotiations).

Third, and finally, the Settlement bears no signs of collusion: the requested fees are in line with the circuit benchmark, there is no "clear sailing" arrangement whereby LinkedIn has agreed not to contest the fee motion, and no unawarded money will revert to LinkedIn. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 611 n.19 (9th Cir. 2018). In sum, to the extent heightened scrutiny is applied to this settlement because it was reached prior to certification, that scrutiny reveals that the Settlement was the result of arm's-length negotiations.

## C.    The relief provided by the settlement is supports final approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note to 2018 amendments.

Here, each Rule 23(e)(2)(C) factor favors approval.

### 1.    The settlement provides substantial relief to the Class.

The relief to be provided to the Settlement Class is significant. First, the recovery compares favorably relative to other class actions involving similar claims, which have often resulted in nonrecovery. For example, *dotStrategy Co. v. Facebook Inc.* involved comparable claims that advertisers on Facebook would not charge for ad engagement with fake or fraudulent accounts. *See dotStrategy Co. v. Facebook Inc.*, No. C 20-00170 WHA, 2021 WL 5415265, at *3 (N.D. Cal. Nov. 20, 2021), *aff'd sub nom. dotStrategy Co. v. Meta Platforms, Inc.*, No. 21-17056, 2022 WL 17248983 (9th Cir. Nov. 28, 2022). In that case, Judge Alsup denied class certification, *see dotStrategy Co. v. Facebook Inc.*, No. C 20-00170 WHA, 2021 WL 2550391 (N.D. Cal. June 22,

2021), before granting summary judgment for the defendant. *See dotStrategy Co.*, 2021 WL 5415265. The Ninth Circuit then affirmed that summary judgment finding. *dotStrategy Co.*, 2022 WL 17248983. The plaintiff pursued similar claims in *dotStrategy Co. v. Twitter, Inc.* 476 F. Supp. 3d 978 (N.D. Cal. 2020). That case, however, achieved no recovery for the proposed class, as it was dismissed voluntarily in discovery shortly after the denial of class certification by Judge Alsup in the other *dotStrategy* case. *dotStrategy Co. v. Twitter, Inc.*, No. 19-cv-6176, ECF No. 105 (N.D. Cal. Dec. 21, 2021).[8]

This case, too, involves significant, contested legal issues, which resulted in this Court dismissing the Second Amended Complaint with prejudice. Although the outcome of Plaintiffs' appeal in this case was uncertain, the fact that LinkedIn prevailed in the trial court, and that other class actions asserting similar claims have resulted in no recovery for Class Members, provides strong evidence that the settlement's benefits to Class Members—including a $6.625 million settlement fund, and a stipulation for third-party auditing of metrics—are significant.

Another comparable for this settlement is the $40 million recovery in a class action alleging that Facebook misrepresented video advertising metrics over a multi-year period. *See Letizia v. Facebook Inc.*, 267 F. Supp. 3d 1235, 1239–41 (N.D. Cal. 2017). That case, which was resolved prior to the Ninth Circuit issuing its opinion in *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 838 (9th Cir. 2020), involved a defendant with yearly ad revenue (at the time of settlement, in 2019) of over $69 billion,[9] compared to LinkedIn's 2019 ad revenue of over $2.5 billion.[10]

The relief obtained by the Settlement also compares favorably to the potential recovery at trial. In their Second Amended Complaint, Plaintiffs asserted claims under the FAL and UCL, as

---

[8] Other comparable cases have met a similar fate. *See, e.g., Singh v. Google LLC*, No. 16-CV-03734-BLF, 2022 WL 94985 (N.D. Cal. Jan. 10, 2022) (denying class certification); *IntegrityMessageBoards.com v. Facebook, Inc.*, No. 18-CV-05286-PJH, 2021 WL 3771785, at *1 (N.D. Cal. Aug. 24, 2021) (same).

[9] *Facebook Reports Fourth Quarter and Full Year 2019 Results*, Meta (Jan 29, 2020), https://investor.fb.com/investor-news/press-release-details/2020/Facebook-Reports-Fourth-Quarter-and-Full-Year-2019-Results/default.aspx.

[10] *Annual advertising revenue generated by LinkedIn worldwide from 2017 to 2027*, Statista, https://www.statista.com/statistics/275933/linkedins-advertising-revenue/ (last accessed Nov. 19, 2024).

well as claims for breach of the implied duty of reasonable care and breach of the implied covenant of good faith and fair dealing. ECF No. 89. In connection with its accreditation by a third-party review body (Media Rating Council), LinkedIn has estimated that roughly 0.5% of ad impressions and 0.2% of ad clicks were the product of potentially fraudulent accounts.[11] Even assuming $12 billion of U.S. advertising revenue during the Class period—a number that is consistent with Plaintiffs' estimates and data provided by LinkedIn—these rates would lead to a total potential recovery ranging from $24 million and $60 million, or a midpoint of $42 million.[12] That estimate applies whether the recovery is viewed as restitution[13]—"[t]he only form[] of [monetary] relief that a private individual may pursue under the UCL and FAL," *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 951 (N.D. Cal. 2018)—or damages for breach of the implied duty or the implied covenant.[14]

The Settlement, therefore, represents a sizeable percentage (15.77%) of the estimated trial recovery available under any of Plaintiff's claims. Of course, that hypothetical recovery is subject to substantial downward pressure due to the continued litigation risks remaining: Plaintiffs' appeal, LinkedIn's opposition to class certification, summary judgment, trial, and further appeal, any of which could result in no recovery at all.

In other cases, courts have recognized that a recovery of 15% of what could be potentially recovered at trial easily justifies resolution through settlement, rather than bearing additional risk through continued litigation. *See, e.g.*, *Rihn v. Acadia Pharm. Inc.*, No. 15-CV-00575 BTM-DHD,

---

[11] *See* ECF No. 115-1 at 24 n.13.

[12] Such a potential recovery does not take into account LinkedIn's contention that any recovery in this case would have to be reduced by the value of makegoods LinkedIn has issued for technical issues during the class period. *See, e.g.*, *We discovered two measurement issues. Here's how we're making it right*, LinkedIn Marketing Solutions Blog (Nov. 12, 2020) at https://business.linkedin.com/marketing-solutions/blog/linkedin-news/2020/how-we-re-working-to-improve.

[13] The restitution available to Plaintiffs would be equal to the "difference between what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015).

[14] Similar to the restitution available for Plaintiffs' UCL and FAL claims, "'[t]he difference between price paid for a product and value received' is … the main measure of contract damages." *Williams v. Apple, Inc.*, 338 F.R.D. 629, 652 (N.D. Cal. 2021).

2018 WL 513448, at *4 (S.D. Cal. Jan. 22, 2018) (finding recovery of approximately 15% of potential damages "substantial"); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-CV-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement where gross fund represented 10% of potential recovery, and net fund (after fees, costs, notice and administration expenses, and incentive award) was 7.3% of potential recovery)); *Hayes v. MagnaChip Semiconductor Corp.*, No. 14-cv-1160, 2016 WL 6902856, at *2 (N.D. Cal. July 18, 2016) (finally approving settlement recovering 15 percent of potential amount).

In other words, the negotiated relief readily satisfies Rule 23's fairness, reasonableness, and adequacy requirements. And on an absolute basis, the Settlement returns millions of dollars to the Class, in a case that was dismissed with prejudice. Even upon a showing of liability, Plaintiffs faced many hurdles, including proving the quantum of monetary recovery. Under these circumstances, Plaintiffs and their counsel wholeheartedly endorse the negotiated resolution of this action. Larry Decl. ¶ 6; ECF No. 115-6, ¶ 12; ECF No. 115-7, ¶ 7; ECF No. 115-8, ¶ 4.

## 2.    The costs, risk, and delay of continued appeal and any trial weigh in favor of approval.

The Ninth Circuit's "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned," *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998), reflects the high levels of cost, risk, and lengthy duration that accompany all class actions. Here, those risks are heightened as to Plaintiffs and the Class, given the Court's dismissal of Plaintiffs' claims prior to settlement.

As to the merits of the case, while Plaintiffs believe they had a strong case on liability, they recognize that they lost on a motion to dismiss before this Court, and would have had to win in the Ninth Circuit to revive their claims. Plaintiffs believe their arguments on appeal were correct, but the reality is that only 14% of private civil litigants obtain reversals on appeal in the federal courts.[15] Additionally, the primary roadblock to Plaintiffs' claims, the Ninth Circuit's *Sonner*

---

[15] *Just the Facts: U.S. Courts of Appeals*, United States Courts (Dec. 20, 2016), https://www.uscourts.gov/news/2016/12/20/just-facts-us-courts-appeals#table2

decision, is still controlling, despite many cases seeking to establish a basis for narrowing or avoiding its import. *See, e.g.*, *Sonner v. Premier Nutrition Corp.*, 49 F.4th 1300 (9th Cir. 2022); *Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308 (9th Cir. 2022); *In re Apple Processor Litig.*, No. 22-16164, 2023 WL 5950622, at *2 (9th Cir. Sept. 13, 2023); *Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022).

Even if Plaintiffs prevailed on appeal, recovery would still be uncertain and potentially years away. To start, a ruling from the Ninth Circuit would likely not issue until months after oral argument. Even then, on remand, the parties would have to engage in months of discovery before class-certification briefing. Adversarial class-certification proceedings would present another risk, *see dotStrategy Co. v. Facebook*, 2021 WL 2550391 (denying class certification in similar class action), and would take months to resolve (or longer, in the event of appellate proceedings under Rule 23(f)). Next would come the class-notice process, followed by summary judgment, which would present another risk of non-recovery. *See, e.g.*, *id.* And Plaintiffs would have incurred substantial costs—likely in the high six figures, at least—on expert testimony relating to the appropriate measure of damages and/or restitution. Finally, if Plaintiffs' claims survived summary judgment, trial would follow, where success would be uncertain. If Plaintiffs won at trial, an appeal would follow, presenting another set of hurdles and in all likelihood taking at least two years more to resolve. Thus, absent settlement, a recovery would be unlikely before 2028 at the earliest.

On the other hand, if LinkedIn were to prevail at all—on appeal from the dismissal order, at class certification, on a Rule 23(f) appeal from a class-certification order, on summary judgment, at trial, or on appeal after trial—the Class would get nothing. In light of those multiple, real risks, and the time and expense that would go into overcoming them, the $6.625 million class recovery provided by the Settlement offers an excellent bargain. *See, e.g.*, *Uschold v. NSMG Shared Services, LLC*, No. 18-cv-1039, 2020 WL 3035776, at *8 (N.D. Cal. June 5, 2020) ("The challenges Plaintiffs would face should this case move forward instead of settling, in contrast to the finality and speed of recovery under the parties' agreement, weighs in favor of approving the settlement.").

### 3.    The distribution method will ensure the fund is automatically distributed, weighing in favor of approval.

The next factor for the Court to consider is "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, the Parties have done all that was practicable to ensure seamless distribution to the Class. Each Class member's *pro rata* share of the net settlement fund will be equal to share of U.S. advertising spending on LinkedIn during the Class period. *See* Agreement ¶ V.3.[16]

The payment methods are also intended to ensure maximum distribution of funds with minimal action required by the Class members. Class members entitled to receive more than $5 will receive payments by check mailed to the address on file with LinkedIn (or any updated address provided to the Settlement Administrator), unless the Class member opted to instead receive a virtual payment or ad credit. *See* Ex. B ("Addendum"), §4 (a)(i). All checks will expire if uncashed after 180 days, and virtual payments will expire if the card is not activated within 180 days.[17] Addendum § 4.

Any uncashed funds will then be redistributed to those Class members who received ad credit, or did timely cash their checks or activate their virtual payment cards in the form of a second round of distributions. *Id.* § 4(c). Those second-round distributions will be calculated based on each entitled Class Member's *pro rata* share of the remaining amount, and will be issued in the same form in which the original payment was made. *Id.* The second-round distributions would expire if not activated within 90 days, and further distribution rounds with 30-day expiration periods would follow until the cost of administration exceeds the amount to be distributed, at which point the remaining funds will be donated to the proposed *cy pres* recipient, the Consumer Federation of America. *Id.*; Agreement § II.10.

For Class members who are entitled to receive less than $5 from the fund, who advertised on LinkedIn on or after February 27, 2023, and for whom LinkedIn has active billing information

---

[16] Any class member whose *pro rata* payment would be less than $0.01 will be rounded up to $0.01.

[17] Once activated, the virtual payments do not expire.

(referred to as "Active Advertisers"), the default payment form will be LinkedIn ad credit, automatically applied to their accounts, although those Class members could elect to instead receive payment by check (if the amount is more than $1) or by virtual payment. *Id.* §4(b)(ii). Finally, Class members entitled to less than $5 but who are not Active Advertisers, the default payment will be virtual, but they may elect to receive payment by check (if more than $1) or by ad credit instead. *Id.* § 4(a)(i). Class members who wished to modify their payment method were able to request to do so at any point prior to the Objection/Exclusion Deadline. *Id.* §§ 4(a), (b).

Through this process, if the Settlement is approved, millions of dollars will be distributed to Class members who will have to do nothing more than cash a check or activate a virtual payment card.[18] Accordingly, this factor favors approval.

### 4. The proposed fee and awards are in line with the Circuit benchmark.

The next factor—"the terms of any proposed award of attorneys' fees, including timing of payment," Fed. R. Civ. P. 23(e)(2)(C)(iii)—likewise favors approval. As detailed in Plaintiffs' fee petition, and in the class notices, Plaintiffs' counsel seek compensation from the settlement fund, which necessarily entails a fee award that is proportional to the Class's recovery. Here, lodestar multiplier on the fee has dropped to 0.63, *See* Larry Decl. ¶ 4; ECF No. 122-3, ¶ 6; ECF No. 122-4, ¶ 3; ECF No. 122-5, ¶ 11, which is more than reasonable in a case like this, where protracted litigation led to a strong recovery for the Class. *See* ECF No. 122.

### 5. There are no additional agreements requiring disclosure under Rule 23(e)(3).

Rule 23 also requires consideration of "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), which includes "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Here, the Settlement, the Addendum, and LinkedIn's updates to its Ads Agreement are the only agreements relating to the resolution of this case. ECF No. 115-2, ¶ 18. Accordingly, this factor also favors settlement.

---

[18] When activating the digital payment, the recipients will be required to confirm that they are doing so on behalf of the entity that placed advertisements with LinkedIn (i.e., the class member).

1  **D.      The settlement treats all Settlement Class Members equitably.**

2    The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class

3  members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could

4  include whether the apportionment of relief among the class members takes appropriate account

5  of differences among their claims, and whether the scope of the release may affect class members

6  in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory

7  committee's note to 2018 amendments.

8    Here, the settlement treats all Class members the same, paying them an amount

9  proportionate to the amount they spent on LinkedIn advertising during the Class period, and

10  therefore proportional to any recovery they could have obtained at trial. *See, e.g. Altamirano v.*

11  *Shaw Indus., Inc.*, No. 13-cv-00939, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (no

12  preferential treatment where settlement "compensates class members in a manner generally

13  proportionate to the harm they suffered on account of [the] alleged misconduct").

14    Finally, though Plaintiffs seek to receive additional money in the form of service awards,

15  the extra payments are in recognition for the service they performed on behalf of the Class, and

16  the Ninth Circuit has approved such awards. *See In re Online DVD-Rental Antitrust Litig.*, 779

17  F.3d at 943 ("[I]ncentive awards that are intended to compensate class representatives for work

18  undertaken on behalf of a class 'are fairly typical in class action cases.'") (quoting *Rodriguez*, 563

19  F.3d at 958). The proposed awards here are commensurate with the substantial discovery

20  responded to by Plaintiffs, and their direct participation in the mediation that led to the Settlement.

21  *See* ECF No. 122-1, at ¶¶ 19–21.

22  **III.    The Class's reaction further supports final approval.**

23    The reaction of the Class members further supports final approval. "The absence of a large

24  number of objections to a proposed class action settlement raises a strong presumption that the

25  terms of a proposed class settlement action are favorable to the class members." *Schneider v.*

26  *Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 598 (N.D. Cal. 2020) (quoting *Nat'l Rural*

27  *Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528–29 (C.D. Cal. 2004)).

28

Here, out of a Class of 293,272 members, none objected, and only two requests for exclusion, representing five LinkedIn Marketing Services accounts, were received. *See* Schachter Decl. ¶ 19. This uniform approval of the Class is unsurprising, given the strong relief, the prior dismissal of the case, and the risks accompanying further appeals and litigation. This "'absence of a negative reaction' weighs in favor of approval." *Cmty. Res. for Indep. Living v. Mobility Works of California, LLC*, 553 F. Supp. 3d 881, 889–90 (N.D. Cal. 2020) (quoting *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010)); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. 08-cv-1365, 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010) ("The Court may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.") (internal quotations omitted); *Chun-Hoon*, 716 F. Supp. 2d at 852 (finding that zero objections and exclusions by 4.86% of the class "strongly support[ed] settlement.").

**IV.  The Settlement Class should remain certified.**

In granting preliminary approval, the Court determined that the Settlement Class satisfied Rules 23(a) and 23(b)(3). ECF No. 119, ¶¶ 5, 6. That remains true, and the Court's final approval order should confirm certification of the Class.

For certification to be appropriate, the proposed class must satisfy all four of Rule 23(a)'s prerequisites—numerosity, commonality, typicality, and adequacy—and one of Rule 23(b)'s prongs. Fed. R. Civ. P. 23. Though the same rules apply, the certification factors are given different weights when assessing settlement classes as opposed to litigation classes. *See In re Hyundai*, 926 F.3d at 556. For example, when deciding to certify a settlement class, "manageability is not a concern," since the settlement will eliminate the need for a trial. *Id.* at 557. On the other hand, "[t]he aspects of Rule 23(a) and (b) that are … designed to protect absent [class members] by blocking unwarranted or overbroad class definitions" require "heightened attention by the district court." *Id.* at 558 (quotation omitted). The focus is "on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.* (quotation omitted).

Here, the Settlement Class is composed only of those U.S.-based advertisers who advertised on LinkedIn from January 1, 2015 through May 31, 2023. ECF No. 119, ¶ 5. That class definition is narrower than the definition proposed in Plaintiffs' complaints, both in terms of time period (going back only to January 1, 2015, rather than to when advertising started on LinkedIn) and geography (covering only U.S.-based advertisers, rather than global). Thus, there is no risk that the Settlement expands the class's scope improperly. *See In re Hyundai*, 926 F.3d at 558. As set forth below, and as the Court held on preliminary approval, the proposed Settlement Class satisfies the requirements of Rules 23(a) and (b)(3).

**A.    The Class is too numerous for individual joinder.**

Rule 23(a) requires that the proposed class be so numerous that joinder of all members is impracticable. Fed. R. Civ. P. 23(a)(1). Typically, classes of at least 40 members are presumed to meet this requirement. *Arroyo v. Int'l Paper Co.*, No. 17-cv-6211, 2019 WL 1508457, at *2 (N.D. Cal. Apr. 4, 2019). Here, the Settlement Class has 293,272 members, according to the records provided by LinkedIn. Schachter Decl. ¶ 6. The numerosity requirement is easily satisfied.

**B.    The Class presents common questions of law and fact.**

All class actions must have "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires that the class members' claims "depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores v. Dukes*, 564 U.S. 338, 350 (2011). Here, the Class Members' claims raise a number of common issues, including whether: (a) the Class Members had to establish the absence of an adequate remedy at law; (b) Class Members could establish the absence of an adequate remedy at law; (c) LinkedIn breached the implied covenant of good faith and fair dealing; (d) LinkedIn breached the implied duty of reasonable care; and (e) LinkedIn made misrepresentations likely to deceive a reasonable person. The "circumstances of each particular class member" therefore "retain a common core of factual or legal issues with the rest of the class." *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1029 (9th Cir. 2012).

1    **C.     Plaintiffs' claims are typical of the Class Members' claims.**

2    "[T]he claims or defenses of the representative parties" must be "typical of the claims or

3    defenses of the class" to warrant certification. Fed. R. Civ. P. 23(a)(3). "[T]he typicality

4    requirement is permissive and requires only that the representative's claims are reasonably co-

5    extensive with those of absent class members; they need not be substantially identical." *Rodriguez*

6    *v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010). Plaintiffs assert the same claims with the same

7    underlying factual allegations as all other Class Members: that LinkedIn promised advertisers

8    would only pay when someone engaged with their advertisements, but they were in fact charged

9    for non-genuine activity, which persisted on LinkedIn's platform due to ineffective auditing and

10   verification measures, and raised prices to advertise on the platform across the board. *See* ECF No.

11   89, ¶¶ 49–80, 148–223. This common course of conduct gives rise to the same "reasonably co-

12   extensive" claims for all class members for purposes of settlement. *Rodriguez v. West*, 591 F.3d at

13   1124; *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017) (Plaintiff's "claim is

14   reasonably coextensive with that of the class because she alleges [the relevant defendants]

15   committed the *same* overall course of misconduct against other members of the class … and the

16   class's alleged injuries also resulted from that course of misconduct.").

17   **D.     Plaintiffs and their counsel have and will continue to adequately represent**
18            **the Class.**

19   The final Rule 23(a) requirement is that "the representative parties will fairly and

20   adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Determining whether

21   representation is adequate requires the court to consider two questions: '(a) do the named plaintiffs

22   and their counsel have any conflicts of interest with other class members and (b) will the named

23   plaintiffs and their counsel prosecute the action vigorously on behalf of the class.'" *Sali v. Corona*

24   *Regional Medical Center*, 909 F.3d 996, 1007 (9th Cir. 2018) (quoting *In re Mego Fin. Corp. Secs.*

25   *Litig.*, 213 F.3d 454, 462 (9th Cir. 2000)). Here, neither Plaintiffs nor their counsel have any

26   conflicts of interest with absent Class Members. Rather, their interests are aligned: Plaintiffs

27

28

UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.: 5:20-cv-08324-SVK

purchased advertising on LinkedIn just like every Class Member, and they share those members' interest in recovering for their overpayments.

Plaintiffs and their counsel have also demonstrated their commitment to the Class. As detailed in Plaintiffs' fee petition, Plaintiffs' counsel have spent thousands of hours and incurred hundreds of thousands of dollars in expenses litigating this case over the four years since filing, and the case was hard fought, including lengthy contested briefing before this Court and the Ninth Circuit. *See* ECF No. 122-1. Class Counsel are well-versed in complex class litigation, and devoted substantial time and expertise for the benefit of the Class. ECF No. 115-2, ¶¶ 2–6; ECF No. 115-7, ¶¶ 3–5. There is no reason to doubt the adequacy of the Class's representation.

### E.    Common issues predominate.

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3)." *Hanlon*, 150 F.3d at 1022. The Settlement Class was certified under Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Whether "a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement." *In re Hyundai*, 926 F.3d at 558. In the settlement context, "predominance is 'readily met' in cases alleging consumer fraud." *Id.* at 559 (quoting *Amchem Prod. v. Windsor*, 521 U.S. 591, 625 (1997)). Class treatment is especially appropriate where, as here, a choice-of-law clause "require[s] the application of only one state's laws to the entire class, then the representation of multiple states within the class does not pose a barrier to class certification." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 141 (2d Cir. 2015). Here, the Class Members' claims are defined primarily by LinkedIn's conduct: whether LinkedIn misrepresented that users would be charged only for genuine engagement, whether that representation was false, and whether LinkedIn took reasonable and adequate measures to ensure that advertisers were not charged for non-genuine engagement. *See generally* ECF No. 89.

**F.    Class proceedings are superior.**

Similarly, it is superior to resolve all Class Members' claims through a single class action rather than a series of individual lawsuits. "The matters pertinent" to the superiority inquiry include:

> (A)    the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B)    the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C)    the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D)    the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Generally speaking, "[f]rom either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery. Here, to Plaintiffs' knowledge, there are no other active individual lawsuits filed against LinkedIn by any Class Member concerning the same conduct; the only other litigation has been other putative class actions that were voluntarily dismissed and/or consolidated with this action. *See Krisco v. LinkedIn Corp.*, No. 20-cv-8204 (N.D. Cal.) (voluntarily dismissed Dec. 28, 2020); *Synergy RX PBM LLC v. LinkedIn Corp.*, No. 21-cv-513 (N.D. Cal.) (consolidated with this action on Feb. 24, 2021; voluntarily dismissed on July 4, 2021). As to the desirability of concentrating litigation in this forum, "[w]here thousands of identical complaints would have to be filed, it is superior to concentrate claims through a class action in a single form." *Hodges v. Akeena Solar, Inc.*, 274 F.R.D. 259, 271 (N.D. Cal. 2011).

Accordingly, class certification for settlement purposes remains appropriate under Rule 23(b)(3).

1

## **CONCLUSION**

2

For the forgoing reasons, Plaintiffs respectfully request that the Court enter an order: (1)

3

confirming certification of the Settlement Class: (2) finding the settlement to be fair, reasonable,

4

and adequate, and deserving of final approval; (3) finding that the notice complied with Rule 23

5

and due process; (4) approving the parties' proposed *cy pres* recipient; (5) and approving

6

Plaintiffs' request for attorneys' fees, costs, and incentive award.

7

8

Dated: November 19, 2024                    Respectfully submitted,

9

s/ *J. Dominick Larry*

10

Warren Postman (#330869)                     J. Dominick Larry (*pro hac vice*)
wdp@kellerpostman.com                         nl@kellerpostman.com

11

**KELLER POSTMAN LLC**                        **KELLER POSTMAN LLC**
1101 Connecticut Ave., N.W., Suite 1100        150 N. Riverside Plaza, Suite 4100

12

Washington, DC 20036                          Chicago, IL 60606
Phone: (202) 918-1123                         Phone: (312) 948-8472

13

Facsimile: (312) 971-3502                     Facsimile: (312) 971-3502

14

Antonio Romanucci (*pro hac vice*)            Keith Custis (#218818)

15

aromanucci@rblaw.net                           kcustis@custislawpc.com
David Neiman (*pro hac vice*)                 **CUSTIS LAW, P.C.**

16

dneiman@rblaw.net                             1875 Century Park East, Suite 700
**ROMANUCCI & BLANDIN, LLC**                  Los Angeles, CA 90067

17

321 N. Clark Street, Suite 900                Phone: (213) 863-4276
Chicago, IL 60654                             Facsimile: (213) 863-4277

18

Phone: (312) 458-1000

19

Facsimile: (312) 458-1004

20

*Settlement Class Counsel*

21

22

23

24

25

26

27

28

1

## **PROOF OF SERVICE**

2      The undersigned certified and declared as follows:

3      I am a citizen of the United States and employed in Cook County, State of Illinois. I am

4  over the age of eighteen years and not a party to the within-entitled action. My business address is

5  150 N. Riverside Plaza, Suite 4100, Chicago, IL 60606. On the date set forth below, I served a

6  copy of the following document(s):

7  **NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL
   OF CLASS ACTION SETTLEMENT**

8      On the interested parties in the subject actions by placing a true copy thereof as indicated

9  below, and as addressed as follows:

10  **[X]**  **BY ECF:** by electronic service on the parties to this action pursuant to Local Rule 5-1. I
       hereby certify that the above documents were uploaded to the ECF Website and the ECF
11      Webmaster will give email notification to all registered parties in this action.

12

13      I declare under penalty of perjury under the laws of the State of California and the United
   States that the above is true and correct.

14

15  Dated: November 19, 2024                    *s/ J. Dominick Larry*_____

16

17

18

19

20

21

22

23

24

25

26

27

28